1   Joseph C. Faucher, No. 137353
    TRUCKER ✦ HUSS, APC
2   633 W. 5th Street, 26th Floor
    Los Angeles, CA  90071
3   Telephone:   (213) 537-1016
    Facsimile:   (213) 537-1020
4   E-mail:      jfaucher@truckerhuss.com

5   Dylan D. Rudolph, No. 278707
    TRUCKER ✦ HUSS, APC
6   One Embarcadero Center, 12th Floor
    San Francisco, CA  94111
7   Telephone:   (415) 788-3111
    Facsimile:   (415) 421-2017
8   E-mail:      drudolph@truckerhuss.com

9   Attorneys for Defendant
    GREATBANC TRUST COMPANY

10

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                 SOUTHERN DIVISION

14

15  ANTONIO HURTADO,                    Case No.  8:17-cv-01605-JLS-DFM
    CHRISTOPHER ORTEGA, JOSE
16  QUINTERO, MARITZA QUINTERO,         **NOTICE OF MOTION AND MOTION
    JORGE URQUIZA, and MARIA            BY DEFENDANT GREATBANC TRUST
16  VALADEZ, individually and on behalf COMPANY TO DISMISS PLAINTIFFS'
    of a class of all others similarly  "AMENDED COMPLAINT FOR
17  situated,                           VIOLATIONS OF ERISA";
                                        MEMORANDUM OF POINTS AND
18                                      AUTHORITIES IN SUPPORT
                  Plaintiffs,           THEREOF**
19
        vs.                             **Fed. R. Civ. Pro. 12(b)(6)**
20
    RAINBOW DISPOSAL CO., INC.
21  EMPLOYEE STOCK OWNERSHIP            **DATE:** July 6, 2018
    PLAN COMMITTEE, GERALD              **TIME:** 2:30 p.m.
22  MOFFATT, JEFF SNOW, GREGORY         **CTRM:** 10A
    RANGE, JON BLACK, CATHARINE
23  ELLINGSEN, BILL EGGLESTON,
    MARK R. CLATT, BRIAN M.
24  DELGHIACCIO, STEVEN H.
    EDDLEBLUTE, BRIAN A. GOEBEL,
25  GREATBANC TRUST COMPANY,
    RAINBOW DISPOSAL, CO. INC.,
26  REPUBLIC SERVICES, INC.,

27                Defendants.

28

Trucker ✦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on July 6, 2018, at 2:30 p.m. or as soon

4 thereafter as the matter may be heard in the United States District Court, Central

5 District California, located in Courtroom 10A, 10th Floor at 411 W. Fourth Street,

6 Santa Ana, California 92701, Defendant GreatBanc Trust Company ("GreatBanc")

7 will, and hereby does, move pursuant to Fed. R. Civ. Pro. 12(b)(6) for dismissal of

8 the "Amended Complaint for Violations of ERISA" filed by Plaintiffs Antonio

9 Hurtado, Christopher Ortega, Jose Quintero, Maritza Quintero, Jorge Urquiza, and

10 Maria Valdez, individually and on behalf of a purported class of all others similarly

11 situated (collectively, "Plaintiffs").

12

GreatBanc's motion will be based on this Notice of Motion and Motion, the

13 accompanying Memorandum of Points and Authorities, the Declaration of James E.

14 Staruck and Request for Judicial Notice filed concurrently herewith, on all of the files

15 and records in this action, and on such further any argument as may be offered at the

16 hearing of this motion.

17

This motion is made following the conference of counsel pursuant to Civil

18 Local Rule 7-3, which took place on March 14, 2018.

19

20 DATED: March 21, 2018          TRUCKER ✦ HUSS, APC

21

22                                By:   /s/ Joseph C. Faucher

23                                      Joseph C. Faucher
                                        Dylan D. Rudolph
24                                      Attorneys for Defendant
                                        GREATBANC TRUST COMPANY
25

26

27

28

Trucker ✦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...............................1

II.   STATEMENT OF RELEVANT FACTS AND ALLEGATIONS ...........................................5

    A.    The ESOP ....................................................................................................................5

    B.    GreatBanc's appointment as the ESOP's trustee........................................................5

    C.    The October 2014 purchase of the ESOP's Rainbow stock by Republic....................6

    D.    The Distribution of the sale proceeds to ESOP participants. .....................................7

III.  LEGAL STANDARD ......................................................................................................... 8

IV.   ARGUMENT ........................................................................................................................9

    A.    Count I fails to state a plausible claim for breach of fiduciary duty against
        GreatBanc ...................................................................................................................9

        1.    Reliance on the June 30, 2014 valuation was consistent with the provisions
             of the ESOP plan document ...........................................................................9

        2.    Plaintiffs' reliance on IRC §401 is misplaced..............................................11

        3.    The allegation that the price paid was less than the June 30, 2014 valuation
             of the shares is implausible...........................................................................12

    B.    Count II should be dismissed because participants have no "pass through" voting
        rights in stock sale transactions ..............................................................................12

        1.    The Plan Document, which borrows from IRC §409(e), does not require
             that Plan participants vote on the stock-sale..................................................12

        2.    The California Corporations Code does not provide the ESOP participants
             a right to vote on the stock sale ....................................................................14

        3.    Plaintiffs lack standing to pursue their voting rights claims ........................14

    C.    Count IV should be dismissed because GreatBanc had no duty to disclose
        anything to Plaintiffs ................................................................................................16

    D.    Count VI should be dismissed, because the alleged transactions with Moffatt and
        Snow did not violate ERISA §406(a)(1)(D)............................................................17

    E.    GreatBanc had no power to bring a shareholder derivative action absent direction
        by the Committee, and did not breach its fiduciary duties by not bringing an
        action against Moffatt and Shuman...........................................................................18

    F.    GreatBanc invested the proceeds of the transaction as it was required to by
        the Plan ....................................................................................................................20

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

---

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

i

G.   Plaintiffs' co-fiduciary claims against GreatBanc should be dismissed ......................21

H.   Count XIV must be dismissed, because the indemnification provision at issue does not violate ERISA, and because indemnifying GreatBanc will have no impact on the ESOP ...............................................................................................22

V.   CONCLUSION ...............................................................................................................25

Trucker ✦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009)......................................................................................6, 8,

*Becker v. Williams,* 777 F.3d 1035, 1039
(9th Cir. 2015) ...........................................................................17

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127
S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..........................................6

*DeFazio v. Hollister, Inc.*, 636 F. Supp.
2d 1045, 1072 (E.D. Cal. 2009) ................................................15

*Donovan v. Cunningham*, 716 F.2d 1455
(5th Cir. 1983) ...........................................................................10

*Donovan v. Mazzola*, 716 F.2d 1226, 1232
(9th Cir. 1983) ...........................................................................20

*Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657
(4th Cir. 1996) ...........................................................................17

*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct.
2459, 2467, 2470-71 (2014) ..................................................8, 20

*Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct.
936, 943 (2016) ..........................................................................14

*Harris v. GreatBanc Tr. Co.*, No. EDCV12-1648-R DTBX, 2013
(C.D. Cal. Mar. 15, 2013)………………………………………….23

*In re Calpine Corp. ERISA Litig.,*
No. 3-1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005)...................22

*In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055
(9th Cir. 2008) .............................................................................8

*In re Lehman Brothers Sec. and ERISA Litigation,*
113 F. Supp. 3d 745, 765 (S.D. N.Y. 2015).....................................22

*In Re Stac Electronics*, 89 F.3d 1399, 1405 n.4
(9th Cir. 1996) .............................................................................5

*In re Witwer,* 148 B.R. 930, 937
(C.D. Cal. Bankr. 1992) ..............................................................11

*Iqbal,* 556 U.S. at 679 ..................................................................8

*Johnson v. Couturier*, 572 F.3d 1067, 1081
(9th Cir. 2009) ......................................................................22, 23

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

*Knieval v. ESPN*, 393 F.3d 1068, 1076
  (9th Cir. 2005) ................................................................................ 5

*Leigh v. Engle*, 858 F.2d 361, 369
  (7th Cir. 1988) .............................................................................. 25

*Lockheed Corp. v. Spink,* 517 U.S. 882, 888
  (2007)............................................................................................ 18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61
  (1992).................................................................................... 15, 23

*Macedo v. Deutsche Bank Nat. Tr. Co.*, No. 13-CV-3068-W
  BGS, 2014 ...................................................................................... 1

*Martinez v. Barasch*, 01 Civ. 2289 (MBM)(JCF),
  2006 (S.D.N.Y. Feb. 22, 2006) .................................................. 22

*McHenry v. Renne*, 84 F.3d 1172, 1177–79
  (9th Cir. 1996) ................................................................................ 1

*Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74
  (9th Cir. 1981) ................................................................................ 1

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.
  Co.*, 514 U.S. 645, 650 (1995) .................................................... 14

*Packer Engineering, Inc. v. Kratville*, 956 F.2d 174, 176
  (7th Cir. 1992) .............................................................................. 24

*Reich v. Compton*, 57 F.3d 270, 278
  (3d Cir. 1995) ............................................................................... 18

*Romero v. Nokia, Inc.,* No. 12–6260,2013 WL 5692324 at *5
  (N.D. Cal. Oct. 15, 2013) ............................................................ 12

*Somers v. Apple, Inc.*, 729 F.3d 953, 959
  (9th Cir. 2013) ................................................................................ 8

*Touche Ross & Co. v. Reddington,* 442 U.S. 560
  (1979)............................................................................................ 11

*Twombly,* 550 U.S. at 555 ................................................................. 10

*Warth v. Seldin,* 422 U.S. 490, 508
  (1975)............................................................................................ 15

*White v. Chevron Corp.*, No. 16-CV-0793-PJH,
  2016 (N.D. Cal. Aug. 29, 2016).................................................. 12

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097, 1101, 1102
  (9th Cir. 2004) ................................................................. 18, 20, 21

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

## Statutes

Fed. R. Civ Pro. 12(b)(6) ................................................................................. 1

Fed. R. Civ. Pro. §406(a)(1)(D) ................................................................... 3, 18

Fed. Code.  Civ. Pro.§1106.............................................................................. 18

Fed. R. Civ. Pro. 8 ............................................................................................ 1

## Other Authorities

Cal. Corp. Code §§ 902, 1001, 1101, 1111, and 1201 ................................... 14

ERISA §3(2)(A), 29 U.S.C. §1002(2)(A) § 1144(a)…………………………......14

ERISA § 3(18), 29 U.S.C. § 1002(18)............................................................. 10

ERISA §104, §104(b)(4), 29 U.S.C. §1029(b)(4) …………………………......6,17

ERISA § 404(a)(1)(A) (a)(1)(B) & (D) ................................................. 12,17,20

ERISA § 406(a)(1)(D) ................................................................................. 17,18

ERISA § 410(a) ...........................................................................................22,23

ERISA §502(a)(2) & (3)……………………………………………………......15

ERISA § 514(a), 29 U.S.C ............................................................................... 14

IRC § IRC §§401(a) and (a)(28)(C),170 ..................................................... 2,11

IRC § 409(e) 26 U.S.C. § 409(e) .............................................................. 12,13

IRC §409(e), ............................................................................................... 12,13

## Rules

26 C.F.R. § 1.170A-13............................................................................... 11

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Preliminary Statement and Summary of Argument.

In a transaction occurring on October 1, 2014, Republic Services, Inc. ("Republic") purchased all of the shares of stock of Rainbow Disposal Co., Inc. from the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan (the "ESOP"). GreatBanc Trust Company ("GreatBanc") was the ESOP's Trustee, and approved the transaction on behalf of the ESOP. Plaintiffs claim that GreatBanc and others breached their fiduciary duties and engaged in transactions prohibited by ERISA in connection with the transaction. But the 124 page Amended Complaint ("Complaint") – the furthest thing from the "short and plain statement of the claim" required by Fed. R. Civ. Pro. 8 – fails to allege facts supporting any of their claims for relief against GreatBanc.[1] Their claims fail for the following reasons:

**Count I:** In Count I, Plaintiffs contend that the June 30, 2014 valuation that they assume GreatBanc considered in approving the sale of the ESOP's Rainbow stock to Republic just three months later was "stale."[2] But their claim is baseless.

---

[1]  "Where the allegations in a complaint are 'argumentative, prolix, replete with redundancy and largely irrelevant,' the complaint is properly dismissed for failure to comply with Rule 8(a)." *Macedo v. Deutsche Bank Nat. Tr. Co.*, No. 13-CV-3068-W BGS, 2014 WL 1600497, at *3 (S.D. Cal. Apr. 17, 2014)(citing *McHenry v. Renne*, 84 F.3d 1172, 1177–79 (9th Cir. 1996); *see also Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74 (9th Cir. 1981) ("affirming dismissal of complaint that was 'verbose, confusing and almost entirely conclusory.'")). The Amended Complaint in the instant case goes well beyond mere verbosity. It forces the Court to sift through 386 paragraphs – not including the prayer for relief – many of which are entirely irrelevant to their claims. For example, the Amended Complaint spends nearly 4 pages (pp. 36-40) describing unrelated litigation between GreatBanc and the Department of Labor and a settlement agreement entered into between them, without directly alleging that GreatBanc violated the terms of that settlement agreement in its conduct here (or why it would matter if it did).

[2]  Plaintiffs' allegations regarding the valuation that GreatBanc relied upon in approving the transaction are factually incorrect, but since they have not referred in their Complaint to that valuation report, GreatBanc is constrained from presenting it to the Court in connection with a motion under Rule 12(b)(6). Moreover, such documents include confidential information. Should the Court request the valuation documents actually reviewed by GreatBanc in connection with the transaction, GreatBanc will provide them to the Court and the parties upon entry of an appropriate protective order. In any event, Plaintiffs' allegations about the report that GreatBanc did consider are also not credible for reasons discussed in more detail below.

---

First, they assume that because the 2014 Form 5500 refers to a June 30, 2014 valuation, there were no valuations closer to the date of the October 1 transaction. The assumption is unreasonable. Since the plan year ended on June 30, 2014, it makes perfect sense that the June 30 valuation was referred to in the 2014 Form 5500. It does not logically follow, however, that no subsequent valuation was prepared relative to the transaction. Second, they make a convoluted claim that pursuant to Internal Revenue Code ("IRC") §401, the valuation had to be conducted as of a date no later than 60 days before the October 1, 2014 transaction. But IRC §401 relates to the requirements for an ESOP to meet IRS *tax qualification* requirements. It provides no substantive rights to participants. And, the Complaint does not even allege that Rainbow's stock value increased between June 30 and October 1, 2014. So even if the Court assumes on this motion that GreatBanc relied on a purportedly outdated valuation, there are no facts alleged to indicate that the ESOP was damaged as a result. Accordingly, Count I should be dismissed.

**Count II**: Plaintiffs contend that GreatBanc and others committed breaches of ERISA's fiduciary duties of loyalty and prudence, and violated the terms of the plan document, by failing to allow the ESOP's participants the right of "pass through" voting on the Republic transaction. But the ESOP's "voting right" provisions are not applicable to stock sales, such as the transaction at issue here. And, even if the Court granted a judicial declaration that Plaintiffs were entitled to vote on the transaction, it would be for naught. The transaction has already occurred. No such order would benefit the Plaintiffs, so Plaintiffs have no constitutional standing to pursue this relief.

**Count IV**: Plaintiffs alleged GreatBanc failed to disclose information to them in communications following the stock purchase. But GreatBanc was not under any duty to disclose anything to Plaintiffs. Its purported failure to disclose does not subject GreatBanc to provide an "accounting" with respect to information it had no duty to disclose in the first place.

///

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

---

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

**Count VI**: Defendants Gerald Moffatt ("Moffatt") and Jeff Snow ("Snow") were executives employed by Rainbow before Republic purchased its stock. Count VI alleges that GreatBanc engaged in a transaction prohibited by ERISA §406(a)(1)(D) in allowing them to secure employment with Republic following the sale. But that section prohibits a plan fiduciary from causing the plan to engage in a transaction if he knows that doing so constitutes a direct or indirect transfer *of plan assets* to a party in interest. Compensation that Moffatt and Snow may have received from Republic in connection with the transaction did not constitute a transfer of *plan assets* to them. And, the allegation that the amount that Republic paid in exchange for the Rainbow ESOP's Rainbow stock *declined* because of any compensation that Republic agreed to pay to Moffatt and Snow makes no sense. Indeed, the value of Rainbow stock would certainly have been *less* if Moffatt and Snow had been free to compete with Republic post-transaction.

**Count VIII**: Plaintiffs claim that from 2010 to 2012, Moffatt and former Rainbow CEO Bruce Shuman breached their fiduciary duties to Rainbow under California corporate law when they entered into certain out-of-state joint venture arrangements along with Rainbow and obtained equity interests in those joint ventures. They allege that GreatBanc and the "prior ESOP Committee Defendants" should have pursued a shareholder derivative action to redress those alleged violations, and that in not doing so, they violated their fiduciary duties of loyalty and prudence under ERISA. The claim fails for several reasons. First, Plaintiffs allege that GreatBanc had the power under the Trust Agreement to pursue a shareholder derivative action. However, it only had that power *if directed to do so by the ESOP Committee.* Plaintiffs do not and cannot allege that GreatBanc received any such direction. Moreover, Plaintiffs have not credibly alleged that the price that Republic paid for Rainbow's stock was adversely affected by the joint ventures, which by that time were no longer operating. Their own allegations show that the June 30, 2014 valuation that Plaintiffs think GreatBanc relied upon reflected a dramatically higher

stock value than prior valuations. It is also counterintuitive to think that GreatBanc – an outside, independent trustee – breached its fiduciary duty in not pursuing shareholder derivative actions against Moffatt and Shuman (which would have been subject to the business judgment rule defense), when it would have had to use ESOP trust assets to do so. If anything, a shareholder derivative action – given its attendant risks – would have surely subjected GreatBanc to criticism for wasting plan assets and causing damage to the company, and the ESOP.

**Count X**: Plaintiffs allege that GreatBanc breached its fiduciary duty by investing the proceeds of the ESOP's sale of Rainbow stock in short-term vehicles following the stock purchase. The claim is spurious. The Trust Agreement, as amended, *required* that GreatBanc invest in short term investments post-transaction. As a directed trustee, GreatBanc was compelled to follow that direction.

**Count XII**: Plaintiffs contend that GreatBanc engaged in co-fiduciary liability in connection with the claims against Moffatt and Snow in Counts V, VI and VII of the Complaint. Counts V and VI allege that Moffatt and Snow engaged in prohibited transactions when they negotiated covenants not to compete and post-transaction employment agreements with Republic (Counts V and VI). Count VII alleges that Defendant Greg Range, a member of Rainbow's Board of Directors, engaged in a prohibited transaction when his employer acted as Rainbow's investment advisor for the transaction. As discussed below with respect to Count VI, and in the briefs of co-defendants regarding Counts V and VII, none of those issues give rise to prohibited transactions, and GreatBanc cannot be liable as a result.

**Count XIV**: Plaintiffs seek an order declaring that any agreement by Rainbow to indemnify GreatBanc is void. However, the engagement agreement between Rainbow and GreatBanc contains language identical to an agreement that another court in this district has upheld, and refused to void. Moreover, the ESOP's participants – including Plaintiffs – have not sustained and will not sustain any damage as a result of the agreement to indemnify GreatBanc in this action. They have

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

already received distributions of their benefits, and the value of those benefits cannot be adversely affected by the advance of legal expenses by Rainbow, which is now a division of Republic. They therefore lack constitutional standing to pursue this relief.

## II.    Statement of Relevant Facts and Allegations.

### A.    The ESOP.

Rainbow originally adopted the ESOP effective July 1, 1995. It was subsequently amended and restated on January 1, 1999 and July 1, 2004. (Amended Complaint, Dkt. 57 ["Complaint"], ¶ 53.) The primary purpose of the ESOP was to enable its participants to acquire stock ownership interests in Rainbow. (Declaration of James E. Staruck filed herewith ["Staruck Dec."], Exh. 1, Plan Document, p. 1.) [3] The ESOP identified the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan Committee (the "Committee") as the ESOP's administrator. (Complaint, ¶ 16.) In a series of leveraged transactions, Rainbow loaned money to the ESOP to acquire 100% of Rainbow's stock. (*Id.,* ¶ 55.) The plan document was amended effective August 8, 2014 to provide that GreatBanc, as Trustee, could – without direction from the Committee or the Rainbow Board – sell all or substantially all of the shares of Rainbow Stock to a third party.  (Staruck Dec., Exh. 5, Amendment No. 4.)

### B.    GreatBanc's appointment as the ESOP's trustee.

The Rainbow Board of Directors appointed GreatBanc as successor Trustee to the ESOP Trust in a Successor Trust Agreement dated October 7, 2002. (*Id.*, ¶ 114.) The parties also entered into a Successor Trustee Engagement Agreement dated that same day. (Staruck Dec., Exh. 7.) The Trust Agreement was amended effective June 22, 2004. (*Id.,* Exh. 10.) Rainbow and GreatBanc entered into Amendment No. 2 to

---

[3] A true and correct copy of Plan Document is attached to the concurrently filed Staruck Dec. In deciding whether the Complaint fails to state a claim for which relief can be granted, the Court may properly consider the full text of documents that are attached to or referenced in the Complaint, and whose authenticity no party questions, without converting the motion to dismiss to a motion for summary judgment. *See Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *In Re Stac Electronics*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). Plaintiffs cannot reasonably dispute the provisions of the Plan Document, it is referred to throughout the Complaint.

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

the Trust Agreement effective July 1, 2014. (*Id.*, Exh. 11.)   Pursuant to that amendment, GreatBanc had discretionary authority without direction of the Rainbow ESOP Committee or the Board of Directors to sell the ESOP's shares of Rainbow to a third party. (Complaint, ¶ 125.)[4]   Rainbow and GreatBanc then entered into an Amendment to Successor Trustee Engagement Agreement dated July 10, 2014, regarding GreatBanc's proposed review of a sale of Rainbow stock to Republic Services, Inc. ("Republic"). (Complaint, ¶ 132; Staruck Dec., Exh. 8, Amendment to Successor Trustee Engagement Agreement.) That document described the services GreatBanc would provide regarding the transaction and the compensation it would receive in exchange for its services. And while the Complaint acknowledges the Amendment to GreatBanc's engagement agreement, it does not address the change that Amendment made to the language of the original engagement regarding Rainbow's obligation to indemnify GreatBanc. That language is discussed in more detail below in the section entitled **ARGUMENT**.

### C.   The October 2014 purchase of the ESOP's Rainbow stock by Republic.

Republic acquired all of the shares of stock of Rainbow on October 1, 2014 for

---

[4] Plaintiffs incorrectly allege that Amendment No. 2 does not indicate when it was signed by Jerry Moffatt. (Complaint, ¶ 125.) But Amendment No. 2 states, immediately above Mr. Moffatt's signature, that "… the Company has caused its duly authorized officer to execute this document the 1st day of July, 2014." *See* Staruck Dec., Exh. 11, Amendment No. 2 to the Trust Agreement. Plaintiffs also contend that because "[n]othing in Amendment No. 2 states that the amendment has been approved by the Board of Directors as required by Paragraph K of the Trust Agreement," the Amendment was not effective. (Complaint, ¶ 125). But nothing in paragraph K of the Trust Agreement requires that an amendment state, on its face, that it was approved by the Board of Directors. It simply states that "[t]he Company (through its Board of Directors) shall have the right at any time, by an instrument in writing, duly executed and delivered to the Trustee, to modify, alter or amend this Agreement …" *See* Staruck Dec., Exh. 10, Trust Agreement. In any event, the Court need not accept Plaintiffs' conclusions that the Amendment was not effective. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

$112 million. (Complaint, ¶¶ 6, 138, 156.)[5] With respect to the investment of the transaction proceeds paid to the ESOP, GreatBanc took on the role of:

> a directed trustee, with the discretion of the Trustee to be made by the fiduciary committee established by [Rainbow] in all matters, except . . . with respect to matters related to, or claims, against, the funds held in the escrow account created under the [Stock Purchase Agreement] and the terms and conditions whereby such funds may either be released to the Trust.[6]

(Staruck Dec., Exh. 12, Amendment 3 to Trust Agreement, § 2.) After the close of the transaction, Rainbow became a division of Republic. (Complaint, ¶ 17.)

The "escrow account" referred to in that Amendment relates to a $16.8 million "holdback arrangement" between Republic and Rainbow. (*Id.,* ¶ 138.) The total amount that ESOP participants ultimately received was necessarily dependent, in part, on how much of the indemnity holdback would be distributed to the ESOP, and how much would be retained by Republic. (Complaint, ¶ 151.) Any amounts deposited into the escrow were *not* assets of the ESOP until they were disbursed and released the Trustee. (*Id.* at ¶ 142; Amendment No. 5 to Plan Document, Staruck Dec., Exh. 6.)  Plaintiffs acknowledge that the ESOP was amended to provide that after the close, "… Trust Assets will be invested primarily in investments designed to preserve principal …" (Complaint, ¶ 143.) Shortly after the transaction closed, Republic notified interested parties - including Plaintiffs - of its intention to terminate the ESOP. (*Id.,* ¶¶ 158-160.) The IRS subsequently issued a favorable determination letter regarding the ESOP's termination. (*Id.,* ¶ 173.)

**D.    The distribution of the sale proceeds to ESOP participants.**

On October 17, 2014, the ESOP's participants were advised about the cash equivalents that they would receive in exchange for the stock allocated to their

---

[5] The net amount paid to the ESOP was less than that amount.

[6] In other words, GreatBanc was to act on the ESOP's behalf in resolving disputes with Republic regarding the indemnity holdback, and the funds that were deposited into escrow in connection with that holdback.

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

accounts. First, in November 2014, they would receive a payment equivalent to $9.97 per share of stock allocated to their accounts. Second, they would receive a payment within 12-18 months in an amount *up to* $3.37 per share, reduced by an amount to be determined by GreatBanc for ESOP expenses. And finally, they would receive a payment of *up to* $4.37 per share that was subject to the indemnity holdback. (Complaint, ¶ 151.) In November 2016, GreatBanc advised ESOP participants that of the $16.8 million indemnity holdback held in escrow, $4,475,000 was distributed to the ESOP as its final payment. (*Id.*, ¶ 174.) The 2015 Form 5500 filed with the Department of Labor, and the June 30, 2016 and June 30, 2017 Summary Annual Reports reflected the expenses that had been incurred by the ESOP post-transaction, which were for legal fees and mediator fees. (*Id.,* ¶¶ 177-178.)[7]

## III.   LEGAL STANDARD

District Courts are charged with carefully reviewing complaints in ERISA cases to separate the "plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459, 2470-71 (2014).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 ; *see also In re Gilead Scis. Secs. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal,* 556 U.S. at 679.

///

///

---

[7] It is reasonable to infer that those legal fees and mediator fees relate to how the division of funds held in escrow subject to the indemnity holdback would be distributed, and in fact, that is the case.

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

## IV.    ARGUMENT

### A.    Count I fails to state a plausible claim for breach of fiduciary duty against GreatBanc.

Count I of the Complaint purports to state a claim for breach of fiduciary duty under ERISA §404(a)(1)(A), (B) and (D) (29 U.S.C. 1104).[8] The primary basis for their claim is that the 2014 Form 5500 relating to the ESOP refers to a valuation as of June 30, 2014, that June 30 report is "the only valuation report offered to be provided in response" to a request for documents by Plaintiff Chris Ortega, and that "[b]ased on these facts, there was no more recent valuation report performed for the October 1, 2014 sale." (Complaint, ¶ 218.)[9] But even if it were true that GreatBanc relied upon the June 30, 2014 valuation in approving the Republic transaction (it is not), that would not render the valuation stale, and it would not have been a *per se* breach of fiduciary duty to rely upon it. Plaintiffs' arguments depend upon a convoluted interpretation of the Internal Revenue Code. And, Plaintiffs do not allege that Rainbow stock was actually worth more than what was stated in that valuation.

### 1.    Reliance on the June 30, 2014 valuation was consistent with the provisions of the ESOP plan document.

The ESOP was terminated at the close of the transaction. (Staruck Dec., Exh. 6, Plan Document, § 15.) Where "Company Stock is sold in connection with the termination of the Plan or the amendment of the Plan to become a qualified employee

---

[8] These are the duties to act for the exclusive purpose of providing benefits and defraying reasonable expenses of the plan, the general duty of prudence, and the duty to act in accordance with the documents and instruments governing the plan, respectively.

[9] There is a flaw in Plaintiffs' logic. The ESOP's plan year ended on June 30. *See* Plan Document, Staruck Dec., Exh. 1, p. 2. The valuation as of that June 30 date is precisely the valuation that one would expect to be referred to in the Plan's Form 5500 for the June 30, 2014 Plan year end. It does not logically follow, however, that "... there was no more recent valuation report performed for the October 1, 2014 sale." And Mr. Ortega's request for documents was directed not to GreatBanc, but to the ESOP Plan Administrator. (Complaint, ¶ 183.) If the ESOP Plan Administrator elected not to provide a particular valuation to Mr. Ortega, it does not mean that such a valuation does not exist. (It does.)

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

plan that is not a stock bonus plan, all Capital Accumulation will be distributed in cash." (*Id.*) And any cash distributions from the ESOP were to be based upon the "Fair Market Value of Company Stock as of the Accounting Date immediately preceding the date of distribution."   (*Id.* at Section 14(a)). The Plan defines "Accounting Date" as "June 30th of each year (the last day of each Plan Year)." (*Id.* at p. 2.) Under ERISA, "adequate consideration" is to be paid for a purchase of the ESOP's assets as follows:

> [I]n the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary *pursuant to the terms of the plan* and in accordance with regulations promulgated by the Secretary.

ERISA § 3(18), 29 U.S.C. § 1002(18) (emphasis added). Plaintiffs' allegation that GreatBanc breached its fiduciary duty by allowing the transaction to proceed based on an appraisal conducted June 30, 2014 is not only factually incorrect, it ignores the plan requirement that cash disbursements be valued as of the Accounting Date. Moreover, the Complaint does not allege that the actual value of Rainbow stock at the time of the transaction was greater than the value stated in the June 30, 2014 appraisal report.  It is simply not plausible that the ESOP sustained any damages even if it were true that GreatBanc relied on the June 30, 2014 valuation.[10]

GreatBanc has not located any authorities that would stand for the principle that a three-month old stock appraisal is untimely as a matter of law, or that there is any maximum time between a valuation and sale that would render an appraisal "stale."  The only case that appears to be closely on point is *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983). In *Donovan*, at the time of ESOP formation, the ESOP

---

[10] Plaintiffs allege that Amendment No. 4 to the Plan document, which provided that GreatBanc was authorized to proceed with the stock-sale without the Committee's or Rainbow Board's consent, was invalid because the text of the Amendment itself does not say that it was amended in conformance with Section 20 of the Plan Document. (Complaint ¶ 136.) From this, Plaintiffs conclude that "… Amendment No. 4 did not properly amend the terms of the Plan Document …" (*Id.,* ¶ 223.) The claim puts form over substance, and in any event, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

trustees relied on a valuation that was more than a year old. *Id.* at 1469-70. The Fifth Circuit ruled that the fiduciaries breached their duty of prudence under ERISA § 404 when they "fail[ed] to identify the facts and assumptions underlying the ... appraisal and to consider whether they remained valid at the time of the ESOP transactions." *Id.* But this conclusion was based on a finding that the plan fiduciaries failed to investigate the validity of the appraisal at the time of the transaction. *Id.* Plaintiffs make no such allegations here, and would be hard pressed to do so with a valuation that was merely three months old at the time the stock purchase was completed.

## 2.    Plaintiffs' reliance on IRC § 401 is misplaced.

Plaintiffs make a circuitous claim that pursuant to IRC §§401(a) and 170, and Treasury regulations interpreting §170, a valuation over 60 days old is stale as a matter of law. First, they point to IRC §401(a)(28)(C). That section dictates that in order for an ESOP that holds non-publicly traded stock to constitute a "qualified" plan, all valuations should be performed by an *independent appraiser*. To define independent appraiser, the statute borrows language from IRC §170, which sets forth the requirements for deductibility of charitable donations. From there, Plaintiffs jump to IRC regulations defining a qualified *appraisal* (26 C.F.R. § 1.170A-13). That regulation states that for charitable contribution purposes, a qualified appraisal must be made not earlier than 60 days before the contribution. But these authorities do not dictate the maximum time that may pass between the date of an ESOP's stock valuation and a sale transaction in order not to be "stale." And even more to the point, IRC § 401 – upon which Plaintiffs' claim is based – is only concerned with plan qualification for IRS purposes. "The provisions of I.R.C. §401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code … absent the most compelling evidence of affirmative Congressional intent a federal court should not infer a private cause of action under I.R.C. §401(a)." *In re Witwer,* 148 B.R. 930, 937 (C.D. Cal. Bankr. 1992) (citing *Touche Ross & Co. v. Reddington,* 442 U.S. 560

(1979)). Accordingly, to the extent Count I is based on a purported "violation" of IRC § 401, it should be dismissed.

### 3. The allegation that the price paid was less than the June 30, 2014 valuation of the shares is implausible.

Finally, Plaintiffs complain that the amount they received for their shares was less than the per share price arrived at in the June 30, 2014 valuation. (Complaint, ¶ 224.) But their allegation ignores their own acknowledgment that the amount the ESOP received would ultimately be less than the full valuation amount, since it was subject to expenses and the indemnity holdback. (*Id.,* ¶ 151.) Their claim that GreatBanc breached its fiduciary duty because the ESOP received less than the per share value stated in the June 30 valuation is therefore implausible on its face.[11]

### B. Count II should be dismissed because participants have no "pass through" voting rights in stock sale transactions.

### 1. The Plan Document, which borrows from IRC § 409(e), does not require that Plan participants vote on the stock-sale.

Plaintiffs rely on Section 8 of the ESOP plan document for the proposition that the participants were required to vote on the stock-sale. But neither the Plan Document nor the law provides any such right. The ESOP plan document tracks the language of IRC §409(e), 26 U.S.C. § 409(e), providing that participants be permitted to vote on,

> [A]ny corporate matter which involves the voting of such shares at a shareholder meeting and which constitutes a merger, consolidation, recapitalization, reclassification, liquidation, dissolution, sale of

---

[11] To the extent any of Plaintiffs' claims, including Count I, are premised on an alleged breach of ERISA's duty of loyalty (ERISA §404(a)(1)(A)), they should be dismissed. In order to prevail on a theory of a breach of the duty of loyalty, Plaintiffs must allege facts "… sufficient to raise a plausible inference that defendants took any of the actions alleged for the purpose of benefitting themselves or a third-party entity with connections to [the defendant], at the expense of the Plan participants, or that they acted under any actual or perceived conflict of interest in administering the Plan." *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016). *See also Romero v. Nokia, Inc.*, No. 12–6260,2013 WL 5692324 at *5 (N.D. Cal. Oct. 15, 2013). No such facts are alleged in the Complaint as against GreatBanc. Counts I, II, IV, VIII and X should therefore be dismissed to the extent they are based on an alleged breach of ERISA § 404(a)(1)(A).

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

1   substantially all assets of a trade or business or a similar transaction
2   specified in regulations under Section 409(e)(3) of the [Internal Revenue] Code.

3   (Staruck Dec., Exh. 1, ESOP Plan Document, § 8.  A sale of stock, like the sale at

4   issue here, does not fall within this language and therefore does not require a

5   participant vote.   And the ESOP plan document further provides that, except as

6   expressly provided, GreatBanc was required to vote the shares of Company Stock as

7   directed by the Committee.  (*Id.*)  The ESOP participants were not the shareholders of

8   the Company Stock; the ESOP was, and GreatBanc was Trustee to the ESOP Trust,

9   so it had the power to vote as titleholder. No case law addresses this issue,

10  presumably for the simple reason that it is self-evident that pass-through voting is not

11  required in the context of a stock sale. The most authoritative discussion of the

12  subject appears in an article entitled *ESOPs in Corporate Acquisitions: What Every*

13  *Buyer Should Know About the Target Company's ESOP.* In that article, the author

14  addressed employee participant voting in corporate acquisitions involving ESOPs.

15  *See* Benefits Law Journal, Vol. 14, No. 1, Spring 2001.  In acquisitions targeting

16  private companies, "ESOP participants have a right to direct the ESOP trustee with

17  respect to the voting of the shares of the target company's stock allocated to their

18  ESOP accounts."  *Id.* at 12.  However, *"[n]othing in the Internal Revenue Code or*

19  *ERISA requires a pass-through in a stock sale."  Id.* at 13, emphasis added. IRC §

20  409(e), from which § 8 of the ESOP is derived, "does not require the participation of

21  ESOP participants in the approval or disapproval of a sale of the target company's

22  stock because the stock sale does not require a shareholder vote under state law," and

23  "even if it did, a stock sale is not among the events listed in Section 409(e) for which

24  a pass-through is required." *Id.* So, the ESOP participants here had no right to vote on

25  this stock purchase under either the ESOP or the Code, and this claim necessarily

26  fails.

27  ///

28  ///

### 2. The California Corporations Code does not provide the ESOP participants a right to vote on the stock sale.

Plaintiffs also allege that California law requires pass through voting, citing Cal. Corp. Code §§ 902, 1001, 1101, 1111, and 1201.[12] (Complaint, ¶¶ 235, 238.) Cal. Corp. Code § 902 is inapplicable. It relates to amendments to a corporation's articles, and provides, "[a]fter any shares have been issued, amendments may be adopted if approved by the board and approved by the outstanding shares, either before or after the approval by the board." Sections 1101 and 1111 apply to mergers, and § 1201 applies to reorganizations. The October 1, 2014 stock sale was not a merger or reorganization.  These provisions, too, are inapplicable. This leaves only Corp. Code § 1001. That statute provides "[a] corporation may sell, lease, convey, exchange, transfer, or otherwise dispose of *all or substantially all of its assets* when the principal terms are approved by the board, and, unless the transaction is in the usual and regular course of its business, approved by the outstanding shares." (Emphasis added.) Again, the stock sale here does not trigger the right to pass-through voting. Thus, Plaintiffs had no right to vote on the transaction.

### 3. Plaintiffs lack standing to pursue their voting rights claims.

Plaintiffs lack Article III standing to pursue their "voting rights" claim, because they cannot show that any alleged injury resulting from not being given this right to vote "will be addressed by a favorable decision." *DeFazio v. Hollister, Inc.*, 636 F.

---

[12] To the extent Plaintiffs' claim that they were entitled to "pass-through" voting based on the California Corporations Code, the claim is preempted by ERISA. The ESOP – an employee pension benefit plan as defined by ERISA §3(2)(A), 29 U.S.C. §1002(2)(A), was and is subject to "ERISA's comprehensive regulation." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650 (1995). ERISA pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). State laws are preempted by ERISA if they have a "reference to" ERISA plans, or that have an impermissible connection with such a plan. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943 (2016). The "connection with" test turns on whether the state law at issue "governs … a central matter of plan administration" or "interferes with nationally uniform plan administration." *Id.* Here, to the extent Plaintiffs claim that the participants had voting rights pursuant to state law, the law on which that claim is based would have an impermissible connection with the plan, and therefore be preempted by ERISA.

---

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

1   Supp. 2d 1045, 1072 (E.D. Cal. 2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S.

2   555, 560–61 (1992). In order to have Article III standing, Plaintiffs must show that

3   they "…'would benefit in a tangible way from the court's intervention.'" *Id.* (citing

4   *Warth v. Seldin,* 422 U.S. 490, 508 (1975)). That is, "[w]hen a plaintiff seeks

5   prospective relief, redressability requires 'that prospective relief will remove the

6   harm.'" *Id.* In *DeFazio*, the plaintiffs claimed that the value of their shares would

7   have increased had the transaction at issue there not occurred. *Id.* 1072-73. The

8   plaintiffs sought relief for alleged losses to their shares under ERISA § 502(a)(2), and

9   equitable relief under ERISA § 502(a)(3). The court concluded that the plaintiffs

10  lacked standing with respect to their §502(a)(2) claim because their "theory relies on

11  conjecture regarding what independent third parties might have done," and because

12  "it is of course impossible to prove exactly what would have happened if [the

13  company's] fiduciaries had not approved the [] Transaction." *Id.* at 1075-76. The

14  Court therefore found that "plaintiffs … have not demonstrated that it is likely, and

15  not merely speculative, that their injury will be redressed by a favorable decision

16  from this court." *Id.* at 1076. With respect to their equitable claims, the court

17  concluded that any relief "would only provide benefits to [] beneficiaries

18  prospectively. Because none of the plaintiffs still have an account with [the

19  company], they could not possibly benefit from an order affecting [the company's]

20  current or future voting power." *Id.* The same is true for Plaintiffs here. Plaintiffs

21  cannot credibly allege that if the Court were to grant them relief on Count II, it is

22  "likely, and not merely speculative" that the value of their shares would have

23  increased if the October 1, 2014 transaction had not gone forward. Their theory

24  depends on a potential third party buyer being willing to pay more for their shares

25  than Republic did, or that if the stock was not sold their shares would have increased

26  in value. Both claims are too speculative to satisfy the redressability requirement.

27  ///

28  ///

---

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

### C.      Count IV should be dismissed because GreatBanc had no duty to disclose anything to Plaintiffs.

Plaintiffs claim GreatBanc failed to disclose to them certain information regarding the Republic transaction. The facts that they claim GreatBanc failed to disclose include: details about the consideration paid in the sale (Complaint, ¶258a.); "prior interpretation of the terms of the Plan and … that the Articles of Incorporation required employee ownership" (*Id.,* ¶258b.); the terms of the stock purchase agreement with Republic (¶258c.); that the terms of the Republic transaction included employment agreements with Moffatt and Snow (¶258d.); the terms of the payments and holdbacks (¶258e.); why Rainbow participants have received payments that amount to different prices per share (¶258g.); why the amount received by the ESOP differed from amounts referred to in the October 17, 2014 letter from the ESOP Committee or the amount referred to in the 2014 Form 5500 (¶258h.); the name of a person at GreatBanc who could respond to participants' questions about benefits (¶ 258k.); and that the ESOP had been terminated and converted to a profit sharing plan (¶258l.). Plaintiffs seek an order "… compel[ling] the trustee and other fiduciaries of the Plan to provide such financial information." (*Id.* at ¶260.)

ERISA itself does not impose a specific disclosure obligation upon plan trustees. Rather, it only imposes a disclosure obligation upon *plan administrators*, and that obligation is limited to certain specified documents such as the summary plan description, trust agreement, latest annual report (i.e., Form 5500) and "other instruments under which the plan is established or operated." *See* ERISA § 104(b)(4), 29 U.S.C. § 1029(b)(4). Plaintiffs acknowledge that they were not entitled to request the information described in ¶ 258 from GreatBanc, who was not the plan administrator. Instead, the Complaint alleges that Plaintiff Chris Ortega sent a detailed request for information of the type described in the paragraph above to the "Rainbow ESOP Plan Administrator" on November 6, 2014. (Complaint, ¶ 183.) The Complaint does not allege that Plaintiffs ever requested that information or documents from GreatBanc. To the extent Count IV is premised upon any alleged

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

failure by GreatBanc to produce documents in response to a request Plaintiffs made under ERISA § 104(b)(4), it must be dismissed.

Moreover, ERISA's general fiduciary duty provision (ERISA § 404) does not require GreatBanc to disclose any more than it already has. In *Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir. 1996), the Fourth Circuit held that ERISA § 404 does not impose upon fiduciaries a duty to disclose a broader universe of documents than ERISA § 104 specifically requires *plan administrators* to provide. To hold otherwise "… would conflict with the principle that specific statutes govern general statutes." *Id.* at 657.[13] The Court further held that the defendants in that case had no duty to disclose "all appraisal reports or valuation reports of the [defendant's] stock" and "any and all documents concerning [the defendant's] financial status and operations supplied to the person or entity that prepared each appraisal or valuation report" because "the ESOP is not set up or managed under these documents." *Id.* at 655; *see also Becker v. Williams,* 777 F.3d 1035, 1039 (9th Cir. 2015)). Count IV should therefore be dismissed as against GreatBanc without leave to amend.

**D.   Count VI should be dismissed, because the alleged transactions with Moffatt and Snow did not violate ERISA § 406(a)(1)(D)**

Plaintiffs allege in Count VI that GreatBanc allowed the stock sale to proceed even though GreatBanc knew or should have known that Defendants Gerald Moffatt and Jeff Snow secured agreements not to compete and employment positions with Republic, and that in doing so, it violated ERISA §406(a)(1)(D). That section provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or

---

[13]"As the Supreme Court has noted, ERISA's reporting and disclosure scheme, which includes § 104(b)(4), "may not be a foolproof informational scheme, although it is quite thorough. Either way, it is the scheme that Congress devised. And we do not think Congress intended it to be supplemented by a far-away provision in another part of [ERISA.]" *Id.* at 657 (citing *Curtiss–Wright Corp. v. Schoonejongen*, 115 S.Ct. 1223, 1231).

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

indirect … transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Plaintiffs claim that "[a]ny difference between what Republic … would have paid … if … Moffatt and Snow not received the benefits of these agreements … constitutes a [prohibited transaction in violation of §406(a)(1)(D)]." (Complaint, ¶ 278.) The claim simply makes no sense. To state a valid claim under ERISA § 406(a)(1)(D), Plaintiffs must plausibly allege:

> (1) the person or entity is a fiduciary with respect to the plan; (2) the fiduciary causes the plan to engage in the transaction at issue; (3) the transaction uses plan assets; (4) the transaction's use of the assets is for the benefit of a party in interest; and (5) the fiduciary knows or should know that elements three and four are satisfied.

*Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995) (internal quotations marks omitted). Plaintiffs do not allege, nor can they, that GreatBanc "caused" any transaction that benefited Defendants Moffatt and Snow. "[T]o establish liability under §1106, a party must prove that 'a fiduciary caused the plan to engage in the allegedly unlawful transaction.'" *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (citing *Lockheed Corp. v. Spink,* 517 U.S. 882, 888 (2007)). Nor have they alleged Republic's agreement to pay them resulted in Moffatt and Snow receiving any assets of the ESOP. Any money that would be used to pay Moffatt and Snow was Republic's money – not ESOP assets. And Plaintiff's assumption that Republic would have paid *more* to the ESOP had it not entered into these arrangements with Moffatt and Snow is so counterintuitive as to be implausible. If anything, the Rainbow stock would have been worth *less* in that circumstance, because Moffatt and Snow would have been free to compete with Republic once the transaction was closed.

**E.    GreatBanc had no power to bring a shareholder derivative action absent direction by the Committee, and did not breach its fiduciary duties by not bringing an action against Moffatt and Shuman.**

Count VIII alleges that Moffatt and non-defendant Bruce Shuman breached their corporate (i.e., state law) fiduciary duties to Rainbow by engaging in the

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12ᵗʰ Floor
San Francisco, California 94111

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

Southeast Renewables and West Florida Recycling ventures, and that Rainbow was damaged as a result. (Complaint, ¶¶ 296-298.) Plaintiffs assert "… the ESOP through its fiduciaries could have taken action or exercised its authority to remove and replace the self-dealing Board members, the entire board or require the Board to take action on behalf of Rainbow Disposal to pursue any claims under California corporate law." (*Id.,* ¶ 301.)[14] They go on to allege that neither the Prior ESOP Committee nor GreatBanc "… took any action, including any legal action … with respect to these claims" and that had they "… pursu[ed] these claims or rais[ed] them so they would have required to be [sic] considered by an appraiser in considering the fair value of stock of Rainbow Disposal, it would have increased the value of Rainbow Disposal or the price in the sale." (*Id.,* ¶¶ 302-303. ) Nonsense.

First, GreatBanc did not have the power that Plaintiffs claim it did. The Complaint alleges that, pursuant to ¶ C of the Trust Agreement, GreatBanc had the power to "sue, defend, compromise, arbitrate or settle any suit or legal proceeding or any claim due it on which it may be liable." (*Id.,* ¶ 291.) But Plaintiffs ignore that pursuant to that same provision, GreatBanc only had that power "[a]s directed by the [ESOP Committee]." (Staruck Dec., Exh. 9, Trust Agreement, ¶ C.)  Plaintiffs do not and cannot allege that GreatBanc was ever directed by the Committee to bring a derivative action against Moffatt and/or Shuman.

Second, there is no plausible allegation that the *transaction price* suffered in any way due to the Southeast Renewables and West Florida Recycling ventures. Plaintiffs' own Complaint indicates that the per share value of Rainbow stock rose from $11.43 per share in 2011 (when those ventures were underway) to $16.67 per share as of the June 30, 2014 valuation date. (Complaint, ¶¶ 53, 83.)

---

[14] Suspiciously, Plaintiffs ignore their own allegations that non-Defendant Shuman was *terminated* from Rainbow in September 2013, the period of time that it became clear that Southeast Renewables and West Florida Recycling were not viable. (Complaint, ¶¶ 35, 62.)

Finally, Plaintiffs are suggesting that GreatBanc breached its fiduciary duty on the basis of the bare allegation that it failed to bring a shareholder derivative action against Moffatt and/or Shuman. Alternatively, they claim that if they had "raised" these claims without filing them, an appraiser would have concluded that Rainbow was worth more at the time of the Republic transaction. (*Id.,* ¶ 303.) The claim seems to suggest that GreatBanc is subject to some sort of strict liability since it did not bring a shareholder derivative action. But that is not the case.[15] Even if GreatBanc could have brought an action against Moffatt and/or Shuman without Committee direction, it would have made no sense whatsoever for GreatBanc to do so. The only funds that would have been available to GreatBanc to pursue a derivative action would be any liquid assets of the ESOP. Had GreatBanc expended any such funds on a shareholder derivative action, the participants would surely have had more to complain about, given all the risks attendant to such a claim. And it is entirely unclear how or why any appraiser would think that Rainbow's share value would have been greater if the corporation owned completely speculative claims against Moffatt and Shuman. If anything, had GreatBanc publicly aired some purported "dirty laundry" of Rainbow in a derivative suit, it would more likely have *decreased* the value of its shares.

### F.   GreatBanc invested the proceeds of the transaction as it was required to by the Plan.

Plaintiffs allege that GreatBanc breached its fiduciary duty of prudence under ERISA §404(a)(1) by investing assets remaining in the Trust following the stock sale

---

[15] Even if a plan sustains a loss, fiduciaries are not liable if they engage in a prudent process of evaluating an appropriate course of action. ERISA § 404(a)(1)(B) "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Dudenhoeffer*, 134 S. Ct. at 2467 . A court's task in evaluating a fiduciary's compliance with this standard is to inquire "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Wright*, 360 F.3d at 1097  (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983)).

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

in short-term treasury obligations. (Complaint, ¶¶ 321, 334.) To support this claim, Plaintiffs cite Section 5(a) of the ESOP plan document, which provides that the Trust assets not invested in Company Stock should be invested in "prudent investments as the Committee deems to be desirable for the Trust, or the Trust Assets may be held temporarily in cash." (*Id.*, ¶ 321.) Plaintiffs further allege that by investing the Trust assets in a single type of asset left the Trust undiversified. (*Id.*, ¶ 324.) These allegations, however, completely ignore Amendment No. 5 to the Plan Document which provided that after the close of the Republic transaction, trust assets were to be "…invested primarily in investments designed to preserve principal …" (Staruck Dec., Exh. 6, § 8; *see also* Complaint, ¶ 143.) Consistent with this Amendment, GreatBanc invested the proceeds in short-term Goldman Sachs Financial Square Treasury Obligations. (Complaint, ¶179.) This was the *only* course of action available to GreatBanc, because following the stock sale, GreatBanc's role became "that of a ***directed trustee***, with the discretion of the Trustee to be made by the fiduciary committee established by [Rainbow] in all matters, except . . . with respect to matters related to … the funds held in the [indemnity holdback] escrow account." (Staruck Dec., Ex. 12, Amendment No. 3 to Trust Agreement, § 2) (emphasis added).[16] By investing the trust assets as it was directed to do, GreatBanc cannot be held liable for breaching its fiduciary duty. Count X should be dismissed without leave to amend.

### G.   Plaintiffs' co-fiduciary claims against GreatBanc should be dismissed.

As against GreatBanc, Count XII - for breach of "co-fiduciary liability" under ERISA § 405 – is entirely derivative of Counts V, VI and VII. For the reasons set forth above (with respect to Counts V and VI, which relates to purported prohibited

---

[16] ERISA, "relieves a trustee from fiduciary obligations regarding the management and control of a plan's assets when the trustee is 'directed' by the plan's designated fiduciaries." *Wright,* 360 F.3d at 1102 . "Directed trustees, as a result, cannot be held liable for following the investment instructions provided by a plan's named fiduciaries." *Id.*

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

transactions by Moffatt and Snow in entering into non-compete and employment agreements), and for the reasons set forth in the Motion to Dismiss filed by co-defendant Greg Range (as to Count VII), Count XII must also be dismissed.[17] *See In re Calpine Corp. ERISA Litig.,* No. 3-1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005) (granting motion to dismiss and holding that failed prudence claim mooted plaintiff's monitoring claim because it was derivative), and *In re Lehman Brothers Sec. and ERISA Litigation,* 113 F. Supp. 3d 745, 765 (S.D. N.Y. 2015) (dismissing claim for alleged failure to monitor because the complaint failed to allege any primary breach of fiduciary duty).

### H.   Count XIV must be dismissed, because the indemnification provision at issue does not violate ERISA, and because indemnifying GreatBanc will have no impact on the ESOP.

Plaintiffs seek an order declaring "[t]hat any indemnification agreement between Defendants and the Rainbow ESOP or Rainbow Disposal violated ERISA §410, 29 U.S.C. § 1110 and is therefore null and void." (Complaint, p. 122, Prayer, ¶ L.) Section 410(a) voids "as against public policy" any provision that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" owed to an ERISA plan. 29 U.S.C. § 1110(a); *see Martinez v. Barasch*, 01 Civ. 2289 (MBM)(JCF), 2006 WL 435727, at *4 (S.D. N.Y. Feb. 22, 2006).

Indemnification agreements violate the anti-exculpation prohibitions of §410(a) in two circumstances. First, courts have found indemnification agreements void if, by their terms, they provide for indemnification to fiduciaries for conduct ERISA prohibits. *See, e.g., Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009). Second, indemnification is prohibited where the court has actually determined that the fiduciary breached its fiduciary responsibilities. *Id.* at 1079. Neither of those circumstances exist here. The Complaint alleges that GreatBanc entered into a

---

[17] GreatBanc joins in the Motions of all co-defendants who are moving to dismiss the Amended Complaint.

Successor Trustee Engagement Agreement dated October 7, 2002. (Complaint, ¶ 114.) It also acknowledges that agreement was amended on July 10, 2014 by an "Amendment to Trustee Engagement Agreement." (*Id.*, ¶ 132.) It does not acknowledge, however, that the amendment modified the engagement agreement's provision regarding indemnification. The new language described Rainbow's indemnification obligation, but also limited the extent of that obligation, by providing that Rainbow would indemnify GreatBanc for losses incurred in any legal proceeding related to GreatBanc's role as Trustee except that:

> *[T]he Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees or from the violation or breach of any fiduciary duty imposed under ERISA on any one or more of the Indemnitees.* An Indemnitee who receives an advancement of fees or expenses from the Company pursuant to this paragraph shall make arrangements reasonably satisfactory to the Company to ensure that such Indemnitee will reimburse the Company for such advancements in the event it is determined the Indemnitee is not entitled to retain such amounts hereunder. (Staruck Dec., Exh. 8, § 6) (emphasis added).

This language does not violate ERISA § 410(a) as a matter of law. In *Harris v. GreatBanc Tr. Co*., No. EDCV12-1648-R DTBX, 2013 WL 1136558, at *3 (C.D. Cal. Mar. 15, 2013), the Court held this precise same language did not violate ERISA § 410(a) because it "expressly prohibits indemnification if a court enters a final judgment from which no appeal can be taken finding GreatBanc liable for breach of its fiduciary duties under ERISA." For the same reason that the Court in *Harris* dismissed a claim seeking to invalidate the indemnification language in that case, so too should this Court dismiss Plaintiffs' Count XIV.

Moreover, the Court in *Harris* distinguished the indemnification language at issue in that suit (which is the same here) with the language at issue in *Couturier*. In *Couturier*, the Court found that the proposed indemnification "...could reduce dollar-

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

1   for-dollar the funds to be distributed to the ESOP participants." *Id*. There is no

2   possibility of that occurring in the instant case. Rainbow, now a division of Republic,

3   is currently obligated to honor the indemnification agreement. The ESOP itself has

4   been terminated. Assuming Republic indemnifies GreatBanc subject to the

5   agreement, it will have no effect whatsoever on the now-terminated ESOP, or the

6   amounts that the Plaintiffs will receive from the ESOP. As in *Harris,* there is "no

7   basis under ERISA ... for concluding that the indemnification agreement would harm

8   the ESOP." *Id*.

9        And because an order declaring the indemnification agreement "void" would

10   not result in any benefit to the Plaintiffs, they have no constitutional standing to

11   pursue Count XIV.  The minimum requirements to establish constitutional standing

12   are (1) an "injury in fact" – an invasion of a legally protected interest which is (a)

13   concrete and particularized, and (b) actual or imminent, not conjectural or

14   hypothetical, (2) a causal connection between the injury and the conduct complained

15   of – that is, the injury has to be fairly traceable to the challenged action of the

16   defendant, and not the result of the independent action of some third party not before

17   the court, and (3) it must be "likely," as opposed to merely "speculative," that the

18   injury will be "redressed by a favorable decision." *Lujan, supra,* 504 U.S. at 560.  *See*

19   *also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009). Here, declaring the

20   indemnification provision "null and void" would provide no benefit whatsoever to the

21   Plaintiffs or any other plan participants. Plaintiffs therefore lack constitutional

22   standing to pursue Count XIV.

23        Finally, voiding the indemnification agreement in this case would have a

24   detrimental chilling effect on persons who would otherwise be willing to serve as

25   plan fiduciaries. "How could anyone take seriously the proposition that ERISA

26   forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when

27   ERISA itself allows a court to award fees to the prevailing side?" *Packer*

28   *Engineering, Inc. v. Kratville*, 956 F.2d 174, 176 (7th Cir. 1992) (emphasis in

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

original). "Very few people would become plan administrators if subjected to such unjust, extensive potential costs." *Id.* (quoting *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir. 1988)).

## V.    CONCLUSION

For the foregoing reasons, GreatBanc respectfully requests that the Court dismiss Plaintiffs' Counts I, II, IV, VI, VIII, X, XII, and XIV. Because the flaws in these claims are incurable, GreatBanc requests that they be dismissed without leave to amend.

DATED: March 21, 2018                    TRUCKER ✦ HUSS, APC

By:   /s/ Joseph C. Faucher
      Joseph C. Faucher
      Dylan D. Rudolph
      Attorneys for Defendant
      GREATBANC TRUST COMPANY

Trucker ✦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

DEFENDANT GREATBANC TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; Case No. 8:17-cv-01605-JLS-DFM

25