# EXHIBIT 1

<u>RAINBOW DISPOSAL CO., INC.</u>

<u>EMPLOYEE STOCK OWNERSHIP PLAN</u>

<u>As Amended and Restated</u>
<u>Effective as of July 1, 2004</u>

TABLE OF CONTENTS

SECTION                                                                    PAGE

1.  Nature of the Plan ................................................................. 1

2.  Definitions ............................................................................ 2

3.  Eligibility and Participation .................................................. 7

4.  Employer Contributions ........................................................ 9

5.  Investment of Trust Assets ................................................. 10

6.  Allocations to Participants' Accounts ................................. 13

7.  Allocation Limitations ......................................................... 17

8.  Voting Company Stock ......................................................... 20

9.  Disclosure to Participants .................................................... 21

10.  Vesting and Forfeitures ...................................................... 22

11.  Credited Service and Break in Service .............................. 23

12.  When Capital Accumulation Will Be Distributed ............. 24

13.  Dividend Distributions; Diversification Election .............. 27

14.  How Capital Accumulation Will Be Distributed ............... 29

15.  Rights, Options and Restrictions on Company Stock ........ 32

16.  No Assignment of Benefits .................................................. 34

17.  Administration ..................................................................... 34

18.  Claims Procedure ................................................................ 38

19.  Limitation on Participants' Rights ...................................... 39

20.  Future of the Plan ............................................................... 40

21  "Top-Heavy" Contingency Provisions ............................... 41

22.  Governing Law .................................................................... 44

23.  Execution ............................................................................. 45

RAINBOW DISPOSAL CO., INC.

EMPLOYEE STOCK OWNERSHIP PLAN

Section 1.  Nature of the Plan.

The purpose of the Plan is to enable participating Employees to share in the growth and prosperity of Rainbow Disposal Co., Inc. (the "Company") and to provide Participants with an opportunity to accumulate capital for their future economic security.  The Plan is intended to do this without any deductions from Participants' paychecks and without requiring them to invest their personal savings.  The primary purpose of the Plan is to enable Participants to acquire stock ownership interests in the Company.  Therefore, the Trust established under the Plan is designed to invest primarily in Company Stock.

The Plan, originally adopted effective as of July 1, 1995, as amended and restated, effective as of January 1, 1999, and as amended by Amendments Nos. 1 through 4 thereto, is hereby amended and restated, effective as of July 1, 2004.  The Plan is a stock bonus plan under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and an employee stock ownership plan under Section 4975(e)(7) of the Code.

Effective December 31, 1998, the Rainbow Transfer/Recycling, Inc. Employee Stock Ownership Plan (the "Transfer ESOP") was merged with and into the Plan, the assets held under the Transfer Plan were transferred to the Trust under this Plan, and the liabilities of the Transfer Plan became liabilities of this Plan.  Any optional forms of distribution or other rights with respect to such assets transferred from the Transfer Plan which were required to be preserved under Section 411(d)(6) of the Code were provided under the Plan.

1

The Plan is designed to be available as a technique of corporate finance to the Company. Accordingly, it may be used to accomplish the following objectives:

(a)     To meet general financing requirements of the Company, including capital growth and transfers in the ownership of Company Stock;

(b)     To provide Participants with beneficial ownership of Company Stock, in proportion to their relative Compensation, without requiring any cash outlay, any reduction in pay or other personal investment on the part of Participants; and

(c)     To receive loans (or other extensions of credit) to finance the acquisition of Company Stock, with such loans to be repaid by Employer Contributions to the Trust and dividends received on such Company Stock.

All Trust Assets held under the Plan will be administered, distributed, forfeited and otherwise governed by the provisions of the Plan and the related Trust Agreement.  The Plan is administered by a Committee for the exclusive benefit of Participants (and their Beneficiaries).

The Plan contains certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA").  These EGTRRA provisions are intended as good faith compliance with the requirements of EGTRRA and guidance issued thereunder.


Section 2.  <u>Definitions</u>.

Whenever the context so indicates, the singular or plural number and the masculine, feminine or neuter gender shall be deemed to include the other, the terms "he," "his" and "him" shall refer to a Participant, and the capitalized terms shall have the following meanings:

| | |
|---|---|
| Account ................................ | One of two accounts maintained to record the interest of a Participant under the Plan.  See Section 6. |
| Accounting Date ................. | June 30th of each year (the last day of each Plan Year). |
| Acquisition Loan ................... | A loan (or other extension of credit) used by the Trust to finance the acquisition of Company Stock, |

2

|  |  |
|---|---|
|  | which loan may constitute an extension of credit to the Trust from a party in interest (as defined in ERISA). See Section 5(b). |
| Approved Absence ............... | A leave of absence granted to an Employee by an Employer under its established leave policy, including unpaid leave under the Family and Medical Leave Act of 1993. See Section 3(d). |
| Beneficiary ........................... | The person (or persons) entitled to receive any benefit under the Plan in the event of a Participant's death. See Section 14(c). |
| Board of Directors ............... | The Board of Directors of the Company. |
| Break in Service ................... | A Plan Year in which an Employee is credited with 500 or fewer Hours of Service by reason of his termination of Service. See Section 11(b). |
| Capital Accumulation .......... | A Participant's vested, nonforfeitable interest in his Accounts under the Plan. Each Participant's Capital Accumulation shall be determined in accordance with the provisions of Section 10 and distributed as provided in Sections 12, 13 and 14. |
| Code ..................................... | The Internal Revenue Code of 1986, as amended. |
| Committee ............................ | The Committee appointed by the Board of Directors to administer the Plan. See Section 17. |
| Company .............................. | Rainbow Disposal Co., Inc., a California corporation, which is an S Corporation under Section 1361 of the Code. |
| Company Stock .................... | Shares of Class A or Class B Common Stock of the Company, which shares constitute "employer securities" under Section 409(l) of the Code. |
| Company Stock Account ..... | The Account which reflects each Participant's interest in Company Stock held under the Plan. See Section 6. |
| Compensation ...................... | The total wages and other compensation paid to an Employee by an Employer during the Plan Year, as reportable on the Employee's Wage and Tax Statement (Form W-2), including any elective |

contributions made on his behalf for the Plan Year to a "cash or deferred arrangement" pursuant to Section 401(k) of the Code, any amount withheld pursuant to a "cafeteria plan" under Section 125 of the Code, and any amounts that are not includible in the gross income of a Participant because of an elective contribution in accordance with Section 132(f)(4) of the Code.  Compensation in excess of $205,000, as adjusted after June 30, 2005, for increases in the cost of living pursuant to Section 401(a)(17) of the Code, shall be excluded.

Credited Service ................... The number of Plan Years in which an Employee is credited with at least 1000 Hours of Service.  See Section 11(a).

Disability ............................. Any mental or physical condition which prevents the Participant from engaging in any substantial gainful activity, but only as evidenced by the Participant's eligibility to receive disability benefits under the federal Social Security system.

Employee ............................. Any individual who is treated as a common-law employee by an Employer; provided, however, that an independent contractor (or other individual) who is reclassified as a common-law employee on a retroactive basis shall not be treated as having been an Employee for purposes of the Plan for any period prior to the date that he is so reclassified.  A leased employee is not an Employee for purposes of the Plan. For this purpose, a "leased employee," as described in Section 414(n)(2) of the Code, is any individual who is not treated as a common-law employee by the Company or a Related Company and who provides services to the Company or a Related Company if (A) such services are provided pursuant to an agreement between the Company or a Related Company and a leasing organization, (B) such individual has performed services for the Company or a Related Company on a substantially full-time basis for a period of at least one year, and (C) such services are performed under the primary direction or control of the Company or a Related Company.

Employer ................................ The Company, Rainbow Transfer/Recycling, Inc. and other any Related Company which is designated as an Employer (whose Employees are eligible to participate) by the Board of Directors and which adopts the Plan for the benefit of its Employees.

Employer Contributions ....... Payments made to the Trust by an Employer in amounts determined by the Board of Directors. See Section 4.

ERISA .................................. The Employee Retirement Income Security Act of 1974, as amended.

Fair Market Value ................ The fair market value of Company Stock, as determined by the Trustee for all purposes under the Plan based upon a valuation by an independent appraiser (within the meaning of Section 401(a)(28)(C) of the Code).

Financed Shares ................... Shares of Company Stock acquired by the Trust with the proceeds of an Acquisition Loan.

Forfeiture ............................. Any portion of a Participant's Accounts which does not become a part of his Capital Accumulation and which is forfeited under Section 10(b).

Highly Compensated
Employee ............................. An Employee who (1) was a "5% owner" (as defined in Section 416(i)(l)(B)(i) of the Code) at any time during the Plan Year or the preceding Plan Year, or (2) received Compensation in excess of $90,000 in the preceding Plan Year.  The $90,000 amount shall be adjusted for increases in the cost of living after June 30, 2005, pursuant to Section 414(q)(1) of the Code.

Hour of Service .................... Each hour of Service for which an Employee is credited under the Plan, as described in Section 3(d).

Investment Manager ............ A person (1) registered as an investment adviser under the Investment Advisers Act of 1940, (2) a bank, or (3) an insurance company qualified to manage, acquire or dispose of Trust Assets under

5

the laws of more than one state, who is appointed by the Committee pursuant to Section 402(c)(3) of ERISA to manage the investment of Trust Assets other than Company Stock, provided that such person acknowledges in writing that he is a fiduciary with respect to the Plan.

Other Investments Account ................................

The Account which reflects each Participant's interest under the Plan attributable to any Trust Assets other than Company Stock.  See Section 6.

Participant ............................

Any Employee or former Employee who has met the applicable eligibility requirements of Section 3(a) and who has not yet received a complete distribution of his Capital Accumulation.

Plan .......................................

The Rainbow Disposal Co., Inc. Employee Stock Ownership Plan, which includes the Plan and the related Trust Agreement.

Plan Year ..............................

The 12-month period ending on each Accounting Date and coinciding with the Company's taxable year (which ends on each June 30th), which period shall also be the "limitation year" for purposes of Section 415 of the Code.

Related Company .................

Any corporation or other trade or business that is controlled by or under common control with the Company within the meaning of Sections 414(b), (c), (m) or (o) of the Code.

Retirement ............................

Termination of Service after attaining age 65.

S Corporation ........................

A corporation which has in effect an election to be treated as an S Corporation under Section 1361(a)(1) of the Code.

Service ..................................

Employment with the Company or with any Related Company.

Transfer ESOP .......................

The Rainbow Transfer/Recycling, Inc. Employee Stock Ownership Plan, which was merged into the Plan effective as of December 31, 1998.

6

| | |
|---|---|
| Trust ...................................... | The Rainbow Disposal Co., Inc. Employee Stock Ownership Trust, which is created by the Trust Agreement entered into between the Company and the Trustee. |
| Trust Agreement .................. | The Agreement between the Company and the Trustee establishing the Trust and specifying the duties of the Trustee. |
| Trust Assets .......................... | The Company Stock (and any other assets) held in the Trust for the benefit of Participants.  See Section 5. |
| Trustee ................................ | The Trustee or Trustees (and any successor Trustee) appointed by the Board of Directors to serve as the trustee(s) of the Trust.  See Section 17. |

Section 3.  <u>Eligibility and Participation</u>.

(a)      <u>Eligibility Requirements</u> - Each Employee shall become a Participant in the Plan on the January 1st or July 1st coinciding with or next following the date on which he has attained age 21 and completed at least one year of  Service in which he is credited with at least 1,000 Hours of Service.  The eligibility computation period for determining one year of Service under this Section 3(a) shall initially be the period of 12 consecutive months beginning on the Employee's initial date of Service (the date he is first credited with an Hour of Service) and thereafter shall be each Plan Year beginning after his initial date of Service.

In the event that the terms of Service of any Employee are covered by a collective bargaining agreement, the Employee shall not be eligible to participate in the Plan if the terms of such agreement specifically provide the Employee is not eligible to participate in this Plan.

(b)      <u>Allocation Requirements</u> -

(1)      <u>Employer Contributions and Forfeitures</u> - A Participant is entitled to share in the allocations of Employer Contributions and Forfeitures under Section 6(a) for each Plan Year in which he is credited with at least 1000

7

Hours of Service and is an Employee (or on Approved Absence) on the Accounting Date. Notwithstanding the foregoing, a Participant also is entitled to share in the allocations of Employer Contributions and Forfeitures for the Plan Year of his Retirement, Disability or death (even though he is not an Employee on the Accounting Date or is not credited with 1000 Hours of Service for that Plan Year).

(2) <u>410(b) Fail Safe Provision for Employer Contributions and Forfeitures</u> - If the number of Participants who are eligible to share in Employer Contributions and Forfeitures for a Plan Year fails to satisfy the requirements of either Section 410(b)(1)(A) (the "Ratio Percentage Test") or 410(b)(2) (the "Average Benefit Percentage Test") of the Code, then the group of Participants eligible to share in Employer Contributions and Forfeitures for the Plan Year will be increased to include such minimum number of Participants to enable the Plan to satisfy the requirements of either the Ratio Percentage Test or the Average Benefit Percentage Test, as determined by the Committee. The additional Participants eligible for allocations shall include Participants who are not Highly Compensated Employees, and who are employed on June 30 but failed to complete 1000 Hours of Service. Then, if necessary, include those who terminated during the Plan Year for a reason other than Retirement, Disability or death, starting with such Participants who have completed the most Hours of Service during the Plan Year.

(c) <u>Reemployment</u> - A former Participant who is reemployed by the Company shall become a Participant as of the date of his reemployment. An Employee who is on Approved Absence shall not become a Participant until the end of his Approved Absence and shall become a Participant retroactively in accordance with the provisions of Section 3(a), but a Participant who is on an Approved Absence shall continue as a Participant during the period of the Approved Absence. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

(d) <u>Hours of Service</u> - For purposes of determining the Hours of Service to be credited to an Employee under the Plan, the following rules shall be applied:

(1) Hours of Service shall include each hour of Service for which an Employee is paid (or entitled to payment) for the performance of duties;

8

each hour of Service for which an Employee is paid (or entitled to payment) for a period during which no duties are performed due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or paid leave of absence; and each additional hour of Service for which back pay is either awarded or agreed to (irrespective of mitigation of damages); provided, however, that not more than 501 Hours of Service shall be credited for a single continuous period during which an Employee does not perform any duties.

(2)   The crediting of Hours of Service shall be determined in accordance with the rules set forth in paragraphs (b) and (c) of Section 2530.200b-2 of the regulations prescribed by the Department of Labor, which rules shall be consistently applied with respect to all Employees within the same job classification.

(3)   Hours of Service shall not be credited to an Employee for a period during which no duties are performed if payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws, and Hours of Service shall not be credited on account of any payment made or due an Employee solely in reimbursement of medical or medically-related expenses.

(4)   Each Employee for whom the Employer does not maintain records of actual Hours of Service shall be credited with **[45 Hours of Service for each weekly]** payroll period in which he completes at least one Hour of Service.

Section 4.  <u>Employer Contributions</u>.

(a)   <u>Contribution Amount</u> - Employer Contributions shall be paid to the Trustee for each Plan Year in such amounts (or under such formula) as may be determined by the Board of Directors.

(b)   <u>Payment</u> - Employer Contributions for the Plan Year shall be paid to the Trust not later than the due date (including extensions) for filing the Company's Federal income tax return for that Plan Year.  Employer Contributions may be paid in cash and/or in shares of Company Stock, as determined by the Board of Directors; provided, however, that the Board of

9

Directors may determine that Employer Contributions may be paid as provided in Section 5(c) with notice to the Trustee.  The amount of any Employer Contributions that are paid in the form of shares of Company Stock shall be based upon Fair Market Value as of the date such shares are issued to the Trust.

(c)     Additional Provisions - Employer Contributions shall not be made for any Plan Year in amounts which can be allocated to no Participant's Accounts by reason of the allocation limitation described in Section 7(a) or in amounts which are not deductible under Section 404(a) of the Code.  Any Employer Contributions which are not deductible under Section 404(a) of the Code may be returned to the Company by the Trustee (upon the direction of the Company) within one year after the deduction is disallowed or after it is determined that the deduction is not available.  In the event that Employer Contributions are paid to the Trust by reason of a mistake of fact, such Employer Contributions may be returned to the Company by the Trustee (upon the direction of the Company) within one year after the payment to the Trust.

(d)     Participant Contributions - No Participant shall be permitted to make contributions to the Trust.


Section 5.  Investment of Trust Assets.

(a)     In General - Trust Assets will be invested by the Trustee primarily (or exclusively) in Company Stock in accordance with directions from the Committee.  Employer Contributions (and other Trust Assets) may be used to acquire shares of Company Stock from any Company shareholder or from the Company.  All purchases of Company Stock by the Trustee shall be made only at the direction of the Committee and only at prices which do not exceed Fair Market Value as of the date of the purchase.  The Committee may direct the Trustee

10

to invest and hold up to 100% of the Trust Assets in Company Stock. The Trustee shall invest any Trust Assets that are not invested in Company Stock in such prudent investments as the Committee deems to be desirable for the Trust, or Trust Assets may be held temporarily in cash. The Committee may appoint an Investment Manager to manage the investment of Trust Assets other than Company Stock, which includes the power to acquire and dispose of such Trust Assets and to vote any proxies with respect to Trust Assets (other than Company Stock).

(b)     Acquisition Loans - With the approval of the Board of Directors, the Committee may direct the Trustee to incur Acquisition Loans from time to time to finance the acquisition of Financed Shares or to repay a prior Acquisition Loan. An installment obligation incurred in connection with the purchase of Company Stock shall be treated as an Acquisition Loan, and all indebtedness incurred to acquire Company Stock in a single transaction shall be treated as one Acquisition Loan. An Acquisition Loan shall be for a specific term, shall bear a reasonable rate of interest and shall not be payable on demand except in the event of default. An Acquisition Loan may be secured by a pledge of the Financed Shares so acquired (or acquired with the proceeds of a prior Acquisition Loan which is being refinanced). No other Trust Assets may be pledged as collateral for an Acquisition Loan, and no lender shall have recourse against Trust Assets except for Financed Shares remaining pledged to the lender. Any pledge of Financed Shares must provide for the release of the shares so pledged as payments on the Acquisition Loan are made by the Trustee and such Financed Shares are allocated to Participants' Company Stock Accounts under Section 6(b). If the lender is a party in interest (as defined in ERISA), any pledge of Financed Shares must also provide for a transfer of Trust Assets to the lender on default only upon and to the extent of the failure of the Trust to meet the payment schedule of the Acquisition Loan.

11

(c)     <u>Acquisition Loan Payments</u> - Payments of principal and/or interest on any Acquisition Loan shall be made by the Trustee (as directed by the Committee) only from Employer Contributions paid in cash to enable the Trust to make payments on such Acquisition Loan, from any earnings attributable to such Employer Contributions and from any cash dividends received by the Trust on the Financed Shares (whether allocated or unallocated) purchased with the proceeds of such Acquisition Loan; and the payments made by the Trustee with respect to an Acquisition Loan for a Plan Year must not exceed the sum of such Employer Contributions, earnings and dividends for that Plan Year and prior Plan Years, less the amount of such payments for prior Plan Years.  If an Employer is the lender with respect to an Acquisition Loan, Employer Contributions may be paid in the form of cancellation of indebtedness under the Acquisition Loan (with written notice to the Trustee).  If the Company is not the lender with respect to an Acquisition Loan, the Company may elect (with written notice to the Trustee) to make payments on the Acquisition Loan directly to the lender and to treat such payments as Employer Contributions.

(d)     <u>Sales of Company Stock</u> - Subject to the approval of the Board of Directors, the Committee may direct the Trustee to sell shares of Company Stock to any person (including the Company), provided that any such sale must be made at a price not less than Fair Market Value as of the date of the sale.  Notwithstanding the provisions of Section 5(c), the Committee may direct the Trustee to apply the proceeds from the sale of unallocated Financed Shares (in the Loan Suspense Account described in Section 6(b)) to make payments on the Acquisition Loan (incurred to finance the purchase of such Financed Shares) in the event of a merger, consolidation or sale of all or substantially all of the assets of the Company, or sale of all or substantially all of the stock of the Company or the termination of the Plan or if the Plan ceases

12

to be an employee stock ownership plan under Section 4975(e)(7) of the Code.  Any decision to sell Company Stock under this Section 5(d) must comply with the fiduciary duties applicable under Section 404(a)(1) of ERISA and with the primary benefit rule of Section 408(b)(3)(A) of ERISA and Section 4975(d)(3)(A) of the Code, if applicable.  If the Company is an S Corporation, the Trustee may not sell or transfer any shares of Company Stock in a manner which would cause the requirements of Section 1361(b)(1)(A), (B) or (C) of the Code (relating to eligible shareholders of an S Corporation) to be violated.

Section 6.  <u>Allocations to Participants' Accounts</u>.

A Company Stock Account and an Other Investments Account shall be maintained to reflect the interest of each Participant under the Plan.

<u>Company Stock Account</u> - The Company Stock Account maintained for each Participant will be credited annually with his allocable share of Company Stock (including fractional shares) purchased and paid for by the Trust or contributed in kind to the Trust, with any Forfeitures from Company Stock Accounts and with any stock dividends on Company Stock allocated to his Company Stock Account.

<u>Other Investments Account</u> - The Other Investments Account maintained for each Participant will be credited annually with his allocable share of Employer Contributions that are not in the form of Company Stock, with any Forfeitures from Other Investments Accounts, with any cash dividends on Company Stock allocated to his Company Stock Account (other than currently distributed dividends) and with his share of net income (or loss) of the Trust.  Such Account will be debited for the Participant's share of any cash payments made by the Trustee

13

for the acquisition of Company Stock or for the payment of any principal and/or interest on an Acquisition Loan.

The allocations to Participants' Accounts for each Plan Year will be made as follows:

(a)     <u>Employer Contributions and Forfeitures</u> - Employer Contributions under Section 4(a) and Forfeitures under Section 10(b) for each Plan Year will be allocated as of the Accounting Date among the Accounts of Participants so entitled under Section 3(b) in the ratio that the Compensation of each such Participant bears to the total Compensation of all such Participants, subject to the allocation limitations described in Section 7.

(b)     <u>Financed Shares</u> - Any Financed Shares acquired by the Trust shall initially be credited to a "Loan Suspense Account" and will be allocated to the Company Stock Accounts of Participants only as payments on the Acquisition Loan are made.  The number of Financed Shares to be released from the Loan Suspense Account for allocation to Participants' Company Stock Accounts for each Plan Year shall be determined by the Committee (as of each Accounting Date) as follows:

(1)     <u>Principal/Interest Method</u> - The number of Financed Shares held in the Loan Suspense Account immediately before the release for the current Plan Year shall be multiplied by a fraction.  The numerator of the fraction shall be the amount of principal and/or interest paid on the Acquisition Loan for that Plan Year.  The denominator of the fraction shall be the sum of the numerator plus the total payments of principal and interest on that Acquisition Loan projected to be paid for all future Plan Years.  For this purpose, the interest to be paid in future years is to be computed by using the interest rate in effect as of the current Accounting Date.

(2)     <u>Principal Only Method</u> - The Committee may elect (as to each Acquisition Loan) or the provisions of the Acquisition Loan may provide for the release of Financed Shares from the Loan Suspense Account based solely on the ratio that the payments of principal for each Plan Year bear to the total principal amount of the Acquisition Loan.  This method may be used only to the extent that:  (A) the Acquisition Loan provides for annual payments of principal and interest at a cumulative rate that is not less rapid at any time than level annual payments of such amounts for ten

14

years; (B) interest included in any payment on the Acquisition Loan is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables; and (C) the entire duration of the Acquisition Loan repayment period does not exceed ten years, even in the event of a renewal, extension or refinancing of the Acquisition Loan.

In each Plan Year in which Trust Assets are applied to make payments on an Acquisition Loan, the Financed Shares released from the Loan Suspense Account in accordance with the provisions of this Section 6(b) shall be allocated among the Company Stock Accounts of Participants in the manner determined by the Trustee based upon the source of funds (Employer Contributions, earnings attributable to such Employer Contributions and cash dividends on Financed Shares used to make the payments on the Acquisition Loan. If cash dividends on Financed Shares allocated to a Participant's Company Stock Account are used to make payments on an Acquisition Loan, Financed Shares (whose Fair Market Value is at least equal to the amount of such dividends) released from the Loan Suspense Account shall be allocated to that Participant's Company Stock Account.

(c)     <u>Net Income (or Loss) of the Trust</u> - The net income (or loss) of the Trust for each Plan Year will be determined as of the Accounting Date. Prior to the allocation of Employer Contributions and Forfeitures for the Plan Year, each Participant's share of any net income (or loss) will be allocated to his Other Investments Account in the ratio that the balance of his Other Investments Account on the preceding Accounting Date (reduced by any distribution from such Account during the Plan Year) bears to the sum of such Other Investments Account balances for all Participants as of that date. The net income (or loss) of the Trust includes the increase (or decrease) in the fair market value of Trust Assets (other than Company Stock), interest income, dividends and other income and gains (or losses) attributable to Trust Assets (other than any dividends on Company Stock) since the preceding Accounting Date, reduced by any expenses

15

charged to the Trust Assets for that Plan Year.  The determination of the net income (or loss) of the Trust shall not take into account any interest paid by the Trust under an Acquisition Loan.

(d)      Dividends on Company Stock - Any cash dividends received on shares of Company Stock allocated to Participants' Company Stock Accounts will be allocated to the respective Other Investments Accounts of such Participants.  Any cash dividends received on unallocated shares of Company Stock (including any Financed Shares credited to the Loan Suspense Account) shall be allocated to the Other Investments Accounts of Participants as of the Accounting Date of the Plan Year in which the dividend was received in the ratio that the Compensation of each Participant bears to the total Compensation of all Participants.  Any stock dividends received on Company Stock shall be credited to the Accounts (including the Loan Suspense Account) to which such Company Stock was allocated.  Any cash dividends which are currently distributed to Participants (or their Beneficiaries) under Section 13(a) shall not be credited to their Other Investments Accounts.

(e)      Accounting for Allocations - The Committee shall establish accounting procedures for the purpose of making the allocations to Participants' Accounts provided for in this Section 6.  The Committee shall maintain adequate records of the aggregate cost basis of Company Stock allocated to each Participant's Company Stock Account.  The Committee shall keep separate records of the Financed Shares acquired with the proceeds of each Acquisition Loan and of Employer Contributions (and any earnings thereon) made for the purpose of enabling the Trust to make payments on that Acquisition Loan.  From time to time, the Committee may modify the accounting procedures for the purposes of achieving equitable and nondiscriminatory allocations among the Accounts of Participants in accordance with the

16

general concepts of the Plan, the provisions of this Section 6 and the requirements of the Code

and ERISA.

Section 7.   <u>Allocation Limitations</u>.

   (a)      <u>Limitation on Annual Additions</u> - The Annual Additions for each Plan Year with

respect to any Participant may not, except to the extent permitted under Section 414(v) of the

Code, exceed the lesser of:

   (1)      100% of his Compensation; or

   (2)      $41,000, as may be adjusted for increases in the cost of living pursuant to
            Section 415(d)(1)(C) of the Code.

The Compensation limit referred to in (1) above shall not apply to any contribution for medical

benefits after separation from Service (within the meaning of Section 401(h) or Section

419A(f)(2) of the Code) which is otherwise treated as an annual addition.

   For this purpose, "Annual Additions" shall be the total of the Employer Contributions

and Forfeitures (including any income attributable to Forfeitures) allocated to the Accounts of a

Participant for the Plan Year, except as provided in Section 7(b).  In determining such Annual

Additions, Forfeitures of Company Stock shall be included at Fair Market Value as of the

Accounting Date and Employer Contributions in the form of Company Stock shall be included

at Fair Market Value as of the date such shares are issued to the Trust.

   If the aggregate amount that would be allocated to the Accounts of a Participant in the

absence of these limitations would exceed the amount set forth in these limitations, the Annual

Additions to his Accounts under this Plan shall be reduced and the excess allocations shall be

reallocated to the Accounts of the remaining Participants for such Plan Year in the manner

described in Section 6(a).  Any Forfeitures which can be allocated to no Participant's Accounts

17

by reason of these limitations shall be credited to a "Forfeiture Suspense Account" and allocated as Forfeitures under Section 6(a) for the next succeeding Plan Year (prior to the allocation of Employer Contributions for such succeeding Plan Year).

(b)    Special Acquisition Loan Rules - Any Employer Contributions which are used by the Trust (not later than the due date, including extensions, for filing the Company's Federal income tax return for that Plan Year) to pay interest on an Acquisition Loan, and any Financed Shares which are allocated as Forfeitures, shall not be included as Annual Additions under Section 7(a); provided, however, that the provisions of this paragraph shall be applicable for any Plan Year only if the Company is not an S Corporation and if not more than one-third of the Employer Contributions applied to pay principal and/or interest on an Acquisition Loan are allocated to Participants who are Highly Compensated Employee; and the Trustee may reallocate such Employer Contributions to the extent it is necessary to satisfy this special rule.

The Annual Additions under Section 7(a) with respect to Financed Shares released from the Loan Suspense Account (by reason of Employer Contributions used for payments on an Acquisition Loan) and allocated to Participants' Company Stock Accounts shall be the lesser of (A) the amount of such Employer Contributions (as determined after application of the preceding paragraph); or (B) the Fair Market Value of such allocated Financed Shares (as determined after application of the preceding paragraph) as of the Accounting Date.  Annual Additions shall not include any allocation attributable to any proceeds from the sale of Financed Shares by the Trust or to the appreciation (realized or unrealized) in the Fair Market Value of Company Stock.

(c)    Limitation on Electing Shareholder - If a Company shareholder has sold Company Stock to the Trust and elected (with the consent of the Company) nonrecognition of

18

gain under Section 1042 of the Code, no shares of the Company Stock purchased from such shareholder in such transaction (or any dividends or other income attributable thereto) may be allocated prior to the later of the tenth anniversary of the purchase or the Accounting Date as of which shares are released from the Loan Suspense Account as a result of the final payment on any Acquisition Loan incurred in connection with such purchase to the Accounts of:

    (1)    any Participant who has made an election under Section 1042 of the Code; or

    (2)    any Participant who is such a selling shareholder's spouse, brother or sister (whether by the whole or half blood), ancestor or lineal descendant (except as to certain lineal descendants, to the extent provided in Section 409(n)(3)(A) of the Code), or any other person who bears a relationship to such selling shareholder that is described in Section 267(b) of the Code.

In addition, no portion of the Company Stock purchased in any such transaction (or any dividends or other income attributable thereto) may thereafter be allocated to the Accounts of any Participant owning (as determined under Section 318(a) of the Code, without regard to Section 318(a)(2)(B)(i) of the Code), at any time during the one-year period preceding the purchase or on any Accounting Date, more than 25% of outstanding Company Stock or of the total value of outstanding Company Stock.

To the extent that a Participant is subject to the allocation limitation described in this Section 7(c) for a Plan Year, he shall not share in the allocation of Employer Contributions and Forfeitures.

(d)    <u>Limitation on Disqualified Person</u> - So long as the Company is an S Corporation, in accordance with Section 409(p) of the Code, no shares of Company Stock (or any amounts allocable in lieu of such shares of Company Stock) may be allocated for any "non-allocation year" to the Accounts of any individual who is a "disqualified person" as described in Section

19

409(p)(4) of the Code.  For this purpose, a "non-allocation year" is any Plan Year in which the

Company is an S Corporation and in which 50% or more of the shares of Company Stock are

owned (directly or indirectly for purposes of Section 409(p) of the Code) by disqualified

persons.  In addition, no amounts allocable in lieu of shares of Company Stock may be allocated

to such individual's accounts under any plan maintained by the Company that is intended to be

qualified under Section 401(a) of the Code.


Section 8.  <u>Voting Company Stock</u>.

Except as otherwise provided in this Section 8, shares of Company Stock in the Trust

shall be voted by the Trustee in such manner as the Committee shall direct.

With respect to any corporate matter which involves the voting of such shares at a

shareholder meeting and which constitutes a merger, consolidation, recapitalization,

reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business or a

similar transaction specified in regulations under Section 409(e)(3) of the Code, however, each

Participant (or Beneficiary) will be entitled to give confidential instructions as to the voting of

shares of Company Stock then allocated to his Company Stock Account.  In that event, each

Participant (or Beneficiary) shall be provided with the information statement and other materials

provided to Company shareholders in connection with each shareholder meeting, together with a

form upon which confidential voting directions may be given to the Trustee.  The Trustee shall

vote shares of allocated Company Stock as directed by Participants (or Beneficiaries) and shall

not disclose the confidential voting directions of any individual Participant (or Beneficiary) to

the Company, an Employer or the Committee.  Any allocated Company Stock with respect to

which voting instructions are not received from Participants (or Beneficiaries) and any shares of

Company Stock which are not then allocated to Participants' Company Stock Accounts shall be voted by the Trustee in the manner directed by the Committee.

Section 9.   <u>Disclosure to Participants</u>.

(a)     <u>Summary Plan Description</u> - Each Participant shall be furnished with a summary plan description of the Plan required by Sections 102(a)(1) and 104(b)(1) of ERISA.  Such summary plan description shall be updated from time to time as required under ERISA and U.S. Department of Labor regulations thereunder.

(b)     <u>Summary Annual Report</u> - Within two months after the due date for the filing of the annual return/report (Form 5500) for the Plan with the U.S. Department of Labor, each Participant shall be furnished with the summary annual report of the Plan required by Section 104(b)(3) of ERISA, in the form prescribed in regulations of the U.S. Department of Labor.

(c)     <u>Annual Statement</u> - Following each Accounting Date, each Participant shall be furnished with a statement reflecting the following information:

(1)     The balances (if any) in his Accounts as of the beginning of the Plan Year.

(2)     The amount of Employer Contributions and Forfeitures allocated to his Accounts for that Plan Year.

(3)     The adjustments to his Accounts to reflect his share of dividends (if any) on Company Stock and any net income (or loss) of the Trust for that Plan Year.

(4)     The new balances in his Accounts, including the number of shares of Company Stock allocated to his Company Stock Account and the Fair Market Value as of that Accounting Date.

(5)     His number of years of Credited Service and his vested percentage in his Account balances (under Sections 10 and 11) as of that Accounting Date.

21

(d)     Additional Disclosure - The Company shall make available for examination by any Participant copies of the Plan, the Trust Agreement and the latest annual return/report of the Plan filed (on Form 5500) with the U.S. Department of Labor.  Upon written request of any Participant, the Company shall furnish copies of such documents and may make a reasonable charge to cover the cost of furnishing such copies, as provided in regulations of the U.S. Department of Labor.

Section 10.  Vesting and Forfeitures.

(a)     Vesting - A Participant's interest in his Company Stock Account and Other Investments Account shall become 100% vested and nonforfeitable if he (1) is employed by the Company (or a Related Company) upon his attaining age 65; (2) terminates Service by reason of Disability; (3) dies while employed by the Company (or a Related Company); or (4) completes five years of Credited Service.

(b)     Forfeitures - If a non-vested Participant terminates Service, the balances of his Accounts shall be deemed to have been distributed upon his termination of Service and shall be forfeited as of such date.  If the Accounts of a vested Participant are payable but the Participant (or if payment is due to a beneficiary then such beneficiary) cannot be found by the Committee, his Accounts shall be forfeited.  Forfeitures shall be reallocated to the Accounts of remaining Participants, as provided in Section 6(a), as of the Accounting Date of the Plan Year in which the Participant terminated Service.

(c)     Restoration of Forfeited Amounts - If a non-vested Participant is reemployed prior to the occurrence of a five-consecutive-year Break in Service (or if a claim for benefits is made by a Participant or his beneficiary, as the case may be, whose Accounts were forfeited

22

because he could not be found), the balances of his Accounts (attributable to the prior period of Service) that were forfeited following his termination of Service (or payability of his benefits in the event that he could not be found) shall be restored as if there had been no Forfeiture. Such restoration shall be made out of Forfeitures occurring in the Plan Year of reemployment (or a claim for benefits, if the Forfeiture arose because he could not be found). To the extent such Forfeitures are insufficient, the Company shall make a special contribution to the Participant's Accounts. Any amounts so restored to a Participant shall not constitute Annual Additions under Section 7(a).

Section 11. <u>Credited Service and Break in Service</u>.

      (a)      <u>Credited Service</u> - An Employee's Credited Service shall be the number of Plan Years in which he is credited with at least 1000 Hours of Service.

      (b)      <u>Break in Service</u> - A one-year Break in Service shall occur in a Plan Year in which an Employee is credited with 500 or fewer Hours of Service as a result of his termination of Service. A five-consecutive-year Break in Service shall be five consecutive one-year Breaks in Service.

      For purposes of determining whether a Break in Service has occurred, if an Employee begins a maternity/paternity absence, described in Section 411(a)(6)(E)(i) of the Code, or any unpaid leave covered under the Family and Medical Leave Act of 1993, the computation of his Hours of Service shall include the Hours of Service that would have been credited if he had not been so absent (or eight Hours of Service for each normal work day of such absence if the actual Hours of Service cannot be determined). An Employee shall be credited for such Hours of Service (up to a maximum of 501 Hours of Service) in the Plan Year in which such absence

23

begins (if such crediting will prevent him from incurring a Break in Service in such Plan Year) or in the next following Plan Year. For the purposes of this paragraph, a "maternity/paternity absence" means an Employee's absence (A) by reason of the (i) pregnancy of the Employee, (ii) birth of a child of the Employee or (iii) placement of a child with the individual in connection with the adoption of such child by such Employee, or (B) for purposes of caring for a child described in clause (A) for a period beginning immediately following such birth or placement.

(c)      Reemployment - If a former Employee is reemployed, new Accounts will be established to reflect his interest in the Plan attributable to Service after the Break in Service. Following reemployment, his Credited Service with respect to his new Accounts will include his Credited Service accumulated prior to the Break in Service; provided, however, that in the case of a non-vested Participant who is reemployed after a five-consecutive-year Break in Service, Service prior to the Break in Service shall not be included in determining his Credited Service.

Section 12.  When Capital Accumulation Will Be Distributed.

(a)      Distribution Policy - Except as otherwise provided in Sections 12(c) and 13, a Participant's Capital Accumulation will be distributed only following his termination of Service, but only at the time and in the manner determined by the Committee. The Committee shall establish a written benefit distribution policy which may be modified from time to time and shall be applied to Participants in a nondiscriminatory manner.

(b)      General Rules - In the event of a Participant's Retirement, Disability or death, distribution of his Capital Accumulation shall commence prior to the Accounting Date of the Plan Year following the Plan Year in which his Retirement, Disability or death occurs. If a Participant's Service terminates for any other reason, distribution of his Capital Accumulation

24

shall commence prior to the Accounting Date of the sixth Plan Year following the Plan Year in

which his Service terminates (unless he is reemployed by the Company or a Related Company).

Except as otherwise provided in Section 12(c), if a Participant's Capital Accumulation includes

Financed Shares, the Trustee may elect to defer the distribution of any portion of his Capital

Accumulation attributable to Financed Shares until the Plan Year following the Plan Year in

which the Acquisition Loan (incurred to acquire such Financed Shares) has been fully repaid.

For this purpose, all indebtedness incurred by the Trustee to acquire Company Stock in a single

transaction shall be treated as one Acquisition Loan.

The following alternative modes of distribution may be selected by the Committee (after

considering the available liquid assets of the Company and the Trust):

(1)     Distribution of a Participant's Capital Accumulation in a single lump
        sum; or

(2)     Distribution of a Participant's Capital Accumulation in substantially
        equal, annual installments over a period not exceeding five years
        (provided that the period over which installments may be distributed may
        be extended an additional year (up to an additional five years) for each
        $165,000 or fraction thereof by which his Capital Accumulation exceeds
        $830,000 (as adjusted after June 30, 2005, for increases in the cost of
        living pursuant to Section 409(o)(2) of the Code)); or

(3)     Any combination of the foregoing.

If the value of a Participant's Capital Accumulation at the time a distribution would

otherwise commence under this Section 12 exceeds $1,000, no portion of his Capital

Accumulation may be distributed to him before he attains age 65 without his written consent.

(c)     Special Rules - Distribution of a Participant's Capital Accumulation shall

commence not later than 60 days after the Accounting Date coinciding with or next following

the latest of (1) the date his 65th birthday, (2) the 10th anniversary of the date he became a

Participant, or (3) the date he terminates Service.  The distribution of the Capital Accumulation

of any Participant shall commence not later than the April 1st following the year (1) during which a Participant who is a 5% owner (as defined in Section 416(i)(1)(B)(i) of the Code) attains age 70½, or (2) in which a Participant who is not a 5% owner terminates Service or reaches age 70½, whichever is later.  If the amount of a Participant's Capital Accumulation cannot be determined (by the Committee) by the date on which a distribution is to commence, or if the Participant cannot be located, distribution of his Capital Accumulation shall commence within 60 days after the date on which his Capital Accumulation can be determined or after the date on which the Committee locates the Participant.

Notwithstanding any provision of the Plan to the contrary, the minimum amount that must be distributed to the Participant as a required minimum distribution in accordance with Section 12(c) may not be less than:

(1)     the Participant's Capital Accumulation divided by the applicable distribution period described in Section 1.401(a)(9)-9 of the Treasury Regulations based on the Participant's age as of his birthday in the applicable calendar year; or,

(2)     if the Participant's sole designated beneficiary is his spouse, the Participant's Capital Accumulation divided by the number in the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, based on the Participant's and the spouse's ages as of their birthdays in the applicable calendar year.

(d)     If any part of a Participant's Capital Accumulation is retained in the Trust after his Service terminates, his Accounts will continue to be treated as described in Section 6.  However, except as otherwise provided in Section 3(b), such Accounts shall not be credited with any additional Employer Contributions and Forfeitures.  The Committee may determine (based upon a nondiscriminatory policy) that the Capital Accumulations of former Employees will be diversified and invested in Trust Assets other than Company Stock.

- 26 -

Section 13.  <u>Dividend Distributions; Diversification Election</u>.

(a)      <u>Cash Dividends</u> - If so determined by the Board of Directors, any cash dividends payable on Company Stock allocated to the Company Stock Accounts of Participants and any cash dividends received on unallocated shares of Company Stock (including any Financed Shares credited to the Loan Suspense Account) may be paid currently (or within 90 days after the end of the Plan Year in which the dividends are paid to the Trust) in cash by the Trustee to such Participants (or their Beneficiaries) on a nondiscriminatory basis, or the Company may pay such dividends directly to the Participants (or Beneficiaries).  Such distribution (if any) of cash dividends may be limited to Participants who are still Employees, may be limited to cash dividends on shares of Company Stock which are then vested or may be applicable to cash dividends on all shares allocated to Participants' Company Stock Accounts or may be applicable to cash dividends received on unallocated shares of Company Stock (including any Financed Shares credited to the Loan Suspense Account).  The distribution of cash dividends received on unallocated shares of Company Stock (including any Financed Shares credited to the Loan Suspense Account) will be made to Participants (or Beneficiaries) in accordance with the provisions of Section 6(d).

Notwithstanding the preceding sentence, cash dividends received on unallocated shares of Company Stock (including any Financed Shares credited to the Loan Suspense Account) may, at the election of the Board of Directors: (1) be allocated to the Other Investments Accounts of Participants; or (2) be passed-through directly to Participants, in the ratio that the Compensation of each Participant bears to the Compensation of all Participants, calculated using

- 27 -

a pro-rata amount of the Section 401(a)(17) annual compensation limit based on the immediately preceding month-end year-to-date payroll.

(b)     <u>Diversification</u> - Effective as of July 1, 2005, a Participant who has attained age 55 and completed at least ten Years of Participation in the Plan shall be notified of his right to elect to "diversify" a portion of the balance in his Company Stock Account, as provided in Section 401(a)(28)(B) of the Code.  An election to "diversify" must be made on the prescribed form and filed with the Committee within the 90-day period immediately following the Accounting Date of a Plan Year in the Election Period.  For purposes of this Section 13(b), "Years of Participation" includes only those Plan Years in which the Participant is entitled to receive an allocation of Employer Contributions and Forfeitures under Section 3(b) and any calendar years in which he received an allocation of employer contributions under the Transfer ESOP, and the "Election Period" means the period of six consecutive Plan Years beginning with the Plan Year in which the Participant first becomes eligible to make an election.

For each of the first five Plan Years in the Election Period, the Participant may elect to "diversify" an amount which does not exceed 25% of the number of shares of Company Stock allocated to his Company Stock Account (including for this purpose any shares distributed or withdrawn during the Election Period), less all shares with respect to which an election under this Section 13(b) was previously made.  In the sixth Plan Year in the Election Period, the Participant may elect to "diversify" an amount which does not exceed 50% of the number of shares of Company Stock allocated to his Company Stock Account (including for this purpose any shares distributed or withdrawn during the Election Period), less all shares with respect to which an election under this Section 13(b) was previously made.  No "diversification" election

shall be permitted if the balance in a Participant's Company Stock Account as of the Accounting Date of the first Plan Year in the Election Period has a Fair Market Value of $500 or less, unless and until the balance in his Company Stock Account as of a subsequent Accounting Date in the Election Period exceeds $500.

The Committee shall determine whether "diversification" will be effected by transferring cash (representing that portion of a Participant's Company Stock Account with respect to which a "diversification" election is made) to investment funds within the Plan (other than Company Stock) for his benefit (so long as at least three investment funds (other than Company Stock) are made available for investment by Participants under the Plan) or by distributing to Participants in Company Stock or in cash (as determined by the Committee) the portion of their respective Company Stock Accounts with respect to which a "diversification" election is made. Any distribution under this Section 13(b) shall be made within 90 days after the 90-day period in which the election may be made and shall be subject to the provisions of Sections 14(c), (d) and (e). Any distribution made in the form of Company Stock shall be subject to the provisions of Sections 14(b) and 15.

Section 14. How Capital Accumulation Will Be Distributed.

(a)     Form of Distribution - Distribution of a Participant's Capital Accumulation will be made in shares of Company Stock, cash or a combination of both, as determined by the Committee; provided, however, that the Committee shall notify the Participant of his right to demand distribution of his Capital Accumulation entirely in whole shares of Company Stock (with only the value of a fractional share paid in cash), except as otherwise provided in Sections

- 29 -

13 and 14(b). Any distribution in cash shall be based upon the Fair Market Value of Company Stock as of the Accounting Date immediately preceding the date of distribution.

(b)   <u>Company Stock Restrictions</u> - So long as the Company is an S Corporation or if the charter or bylaws of the Company restrict the ownership of substantially all outstanding shares of Company Stock to current Employees and the Trust, the distribution of a Participant's Capital Accumulation may be made entirely in cash without granting him the right to demand distribution in Company Stock.

Alternatively, Company Stock may be distributed subject to the requirement that it be immediately resold to the Company under payment terms that comply with Section 15(c); provided, however, that if a Participant (or Beneficiary) would be an ineligible shareholder as described in Section 1361(b)(1)(B) or (C) of the Code such distribution may be made entirely in cash. Distributions of Company Stock under this Section 14(b) may not be made in a manner which would cause the requirements of Section 1361(b)(1)(A) of the Code to be violated.

(c)   <u>Death Benefits</u> - Distribution of a Participant's Capital Accumulation will be made to the Participant if he is living, and if not, to his Beneficiary. In the event of a Participant's death, his Beneficiary shall be his surviving spouse, or if none, his estate. A Participant (with the written consent of his spouse, if any, acknowledging the effect of the consent and witnessed by a notary public or Plan representative) may designate a different Beneficiary or Beneficiaries from time to time by filing a written designation with the Committee. A deceased Participant's entire Capital Accumulation shall be distributed to his Beneficiary on or before the June 30th of the calendar year that includes the fifth anniversary of

- 30 -

his death, except to the extent that distribution has previously commenced in accordance with Section 12(b)(2).

(d)     Special Tax Notice - The Company shall furnish the recipient of a distribution with the tax consequences explanation required by Section 402(f) of the Code and shall comply with the withholding requirements of Section 3405 of the Code and of any applicable state law with respect to distributions of cash from the Trust (other than any dividend distributions under Section 13(a)).  If the Committee so elects for a Plan Year, distributions to Participants may commence less than 30 days after the notice required under Section 1.411(a)-11(c) of the regulations under the Code is given; provided, however, that no such distribution to a Participant shall be made unless (1) the Participant is informed that he has the right for a period of at least 30 days after receiving the notice to consider whether or not to consent to a distribution (or a particular distribution option), and (2) the Participant affirmatively elects to receive a distribution after receiving the notice.

(e)     Eligible Rollover Distributions - If a distribution of some or all of a Participant's Capital Accumulation is an Eligible Rollover Distribution, the Trustee shall notify the Participant (or any spouse or former spouse who is his alternate payee under a "qualified domestic relations order" as defined in Section 414(p) of the Code) of his right to elect to have the Eligible Rollover Distribution paid directly to an Eligible Retirement Plan.  An "Eligible Rollover Distribution" is a distribution that is neither:  (1) one of a series of annual installments over a period of ten years (or more), nor (2) the minimum amount required to be distributed pursuant to Section 401(a)(9) of the Code, nor (3) any amount that is distributed on account of financial hardship.  An "Eligible Retirement Plan" can be any one of the following plans that

- 31 -

accepts Eligible Rollover Distributions:  (1) an individual retirement account described in Section 408(a) of the Code, (2) an individual retirement annuity described in Section 408(b) of the Code, (3) a qualified trust described in Section 401(a) of the Code, (4) a qualified annuity plan described in Section 403(a) of the Code, (5) an annuity contract described under Section 403(b) of the Code, or (6) an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.  The definition of Eligible Retirement Plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code.  Any election under this Section 14(e) shall be made and effected in accordance with rules and procedures established from time to time by the Trustee in order to comply with Section 401(a)(31) of the Code.

Section 15.  <u>Rights, Options and Restrictions on Company Stock</u>.

    (a)    <u>Right of First Refusal</u> - Any shares of Company Stock held or distributed by the Trust shall be subject to a "right of first refusal."  The right of first refusal shall provide that, prior to any subsequent transfer, the shares must first be offered for purchase in writing to the Company, and then to the Trust (unless such shares are owned by the Trust), at the then Fair Market Value.  A bona fide written offer from an independent prospective buyer shall be deemed to be the Fair Market Value for this purpose.  The Company and the Committee (on behalf of the Trust) shall have a total of 14 days to exercise the right of first refusal on the same

- 32 -

terms offered by a prospective buyer.  The Company may require that a Participant entitled to a distribution of Company Stock execute an appropriate stock transfer agreement (evidencing the right of first refusal) prior to receiving a certificate for Company Stock.

(b)     Put Option - Except as provided in Section 14(b), the Company shall provide a "put option" to any Participant (or Beneficiary) who receives a distribution of Company Stock. The put option shall permit the Participant (or Beneficiary) to sell such Company Stock to the Company at any time during two option periods.  The first put option period shall be for at least 60 days beginning on the date of distribution.  The second put option period shall be for at least 60 days beginning after the new determination of Fair Market Value (and notice to the Participant thereof) in the following Plan Year.  Partial exercise of a put option is not permitted. The price to be paid for Company Stock sold pursuant to a put option shall be the Fair Market Value as of the Accounting Date immediately preceding the beginning of each put option period.  The Company may allow the Trustee to purchase shares of Company Stock tendered to the Company under a put option.

(c)     Payment for Company Stock - The payment for any Company Stock sold under a put option or pursuant to Section 14(b) shall be made within 30 days if the shares were distributed as part of an installment distribution.  If the shares were distributed in a lump sum distribution, payment shall commence within 30 days and may be made in a lump sum or in substantially equal, annual installments over a period not exceeding five years, with adequate security provided and interest payable at a reasonable rate pursuant to the promissory note which is issued to evidence the unpaid installment balance (as determined by the Company).

- 33 -

(d)    Legends on Company Stock Certificate - Shares of Company Stock held or distributed by the Trustee may include such legend restrictions on transferability as the Company may reasonably require in order to assure compliance with applicable Federal and state securities laws.  Except as otherwise provided in Section 14(b) and this Section 15, no shares of Company Stock held or distributed by the Trustee may be subject to a put, call or other option, or buy-sell or similar arrangement.  The provisions of this Section 15 shall continue to be applicable to Company Stock even if the Plan ceases to be an employee stock ownership plan under Section 4975(e)(7) of the Code.

Section 16.  No Assignment of Benefits.

A Participant's Capital Accumulation may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process, except in accordance with (i) a "qualified domestic relations order" (as defined in Section 414(p) of the Code); (ii) a federal tax levy or collection by the Internal Revenue Service on a judgment resulting from an unpaid tax assessment; or (iii) a judgment or settlement described in Section 401(a)(13)(C) of the Code.  Distributions made to an alternate payee in accordance with a qualified domestic relations order may commence prior to the date on which the Participant attains his "earliest retirement age" (as defined in Section 414(p)(4)(B) of the Code).

Section 17.  Administration.

- 34 -

(a)     <u>Committee</u> - The Plan will be administered by a Committee composed of one or more individuals appointed by the Board of Directors to serve at its pleasure and without compensation.  The members of the Committee shall be the named fiduciaries with authority to control and manage the operation and administration of the Plan.  Members of the Committee need not be Employees or Participants.  Any member of the Committee may resign by giving notice, in writing, to the Board of Directors.

(b)     <u>Committee Action</u> - Committee action will be by vote of a majority of the members at a meeting or by unanimous written consent without a meeting.  A member of the Committee shall not vote on any matter relating specifically to himself.

The Committee shall choose from its members a Chair and a Secretary.  The Chair or the Secretary of the Committee shall be authorized to execute any certificate or other written direction on behalf of the Committee.  The Secretary shall keep a record of the Committee's proceedings and of all dates, records and documents pertaining to the administration of the Plan.

(c)     <u>Powers and Duties of the Committee</u> - The Committee shall have all powers necessary to enable it to administer the Plan and the Trust Agreement in accordance with their provisions, including without limitation the following:

(1)     resolving all questions relating to the eligibility of Employees to become Participants;

(2)     determining the appropriate allocations to Participants' Accounts pursuant to Section 6;

(3)     determining the amount of benefits payable to a Participant (or Beneficiary), and the time and manner in which such benefits are to be paid;

(4)     authorizing and directing all disbursements of Trust Assets by the Trustee;

- 35 -

(5)    establishing procedures in accordance with Section 414(p) of the Code to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders;

(6)    engaging any administrative, legal, accounting, clerical or other services that it may deem appropriate;

(7)    construing and interpreting the Plan and the Trust Agreement and adopting rules for administration of the Plan that are consistent with the terms of the Plan documents and of ERISA and the Code;

(8)    compiling and maintaining all records it determines to be necessary, appropriate or convenient in connection with the administration of the Plan; and

(9)    reviewing the performance of the Trustee with respect to the Trustee's administrative duties, responsibilities and obligations under the Plan and Trust Agreement.

The Committee shall be responsible for directing the Trustee as to the investment of Trust Assets. The Committee may delegate to the Trustee the responsibility for investing all or any portion of the Trust Assets. The Committee may delegate to an Investment Manager the responsibility for investing Trust Assets other than Company Stock. The Committee shall establish a funding policy and method for directing the Trustee to acquire Company Stock and for otherwise investing the Trust Assets in a manner that is consistent with the objectives of the Plan and the requirements of ERISA.

The Committee shall perform its duties under the Plan and the Trust Agreement solely in the interests of the Participants (and their Beneficiaries). Any discretion granted to the Committee under any of the provisions of the Plan or the Trust Agreement shall be exercised only in accordance with rules and policies established by the Committee which shall be applicable on a nondiscriminatory basis. The Committee shall have sole and exclusive authority

to construe, interpret and apply the terms of the Plan.  The Committee shall be given the greatest possible deference permitted by law in the exercise of such discretionary authority.

(d)     Expenses - All reasonable expenses of administering the Plan and Trust shall be charged to and paid out of the Trust Assets.  The Company may, however, pay all or any portion of such expenses directly, and payment of expenses by the Company shall not be deemed to be Employer Contributions.

(e)     Information to be Submitted to the Committee - To enable the Committee to perform its functions, the Company shall supply full and timely information to the Committee on all matters as the Committee may require, and shall maintain such other records as the Committee may determine are necessary or appropriate in order to determine the benefits due or which may become due to Participants (or Beneficiaries) under the Plan.

(f)     Delegation of Fiduciary Responsibility - The Committee from time to time may allocate to one or more of its members and/or may delegate to any other persons or organizations any of its rights, powers, duties and responsibilities with respect to the operation and administration of the Plan that are permitted to be so delegated under ERISA; provided, however, that responsibility for investment of the Trust Assets may not be delegated other than to the Trustee or Investment Manager.  Notwithstanding the provisions of Section 5, the Board of Directors or the Committee may assign to the Trustee the responsibility for any decision with respect to any transaction involving Company Stock and/or an Acquisition Loan.  Any such allocation or delegation shall be made in writing, shall be reviewed periodically by the Committee and shall be terminable upon such notice as the Committee in its discretion deems reasonable and proper under the circumstances.

(g)   <u>Bonding, Insurance and Indemnity</u> - To the extent required under Section 412 of ERISA, the Company shall secure fidelity bonding for the fiduciaries of the Plan.

The Company (in its discretion) or the Trustee (as directed by the Committee) may obtain a policy or policies of insurance for the Committee (and other fiduciaries of the Plan) to cover liability or loss occurring by reason of the act or omission of a fiduciary.  If such insurance is purchased with Trust Assets, the policy must permit recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary.

The Company hereby agrees to indemnify each member of the Committee (to the extent permitted by law) against any personal liability or expense, including reasonable attorney's fees, resulting from his service on the Committee, except such liability or expense as may result from his own willful misconduct.

(h)   <u>Notices, Statements and Reports</u> - The Company shall be the "Plan Administrator" (as defined in Section 3(16)(A) of ERISA and Section 414(g) of the Code) for purposes of the reporting and disclosure requirements of ERISA and the Code.  The Committee shall assist the Company, as requested, in complying with such reporting and disclosure requirements.  The Committee shall be the designated agent of the Plan for the service of legal process.

Section 18.  <u>Claims Procedure.</u>

A Participant (or Beneficiary) who does not receive a distribution of benefits to which he believes he is entitled may present a claim to the Committee.  The claim for benefits must be in writing and addressed to the Committee or to the Company.  If the claim for benefits is denied,

the Committee shall notify the Participant (or Beneficiary) in writing within 90 days after the Committee initially received the benefit claim.  Any notice of a denial of benefits shall advise the Participant (or Beneficiary) of the basis for the denial, any additional material or information necessary for the Participant (or Beneficiary) to perfect his claim and the steps which the Participant (or Beneficiary) must take to have his claim for benefits reviewed.

Each Participant (or Beneficiary) whose claim for benefits has been denied may file a written request for a review of his claim by the Committee.  The request for review must be filed by the Participant (or Beneficiary) within 60 days after he receives the written notice denying his claim.  The decision of the Committee will be made within 60 days after receipt of a request for review and shall be communicated in writing to the claimant.  Such written notice shall set forth the basis for the Committee's decision.  If there are special circumstances (such as the need to hold a hearing) which require an extension of time for completing the review, the Committee's decision shall be rendered not later than 120 days after receipt of a request for review.  If such an extension of time is required, written notice of the extension shall be provided to the claimant prior to the commencement of the extension.

All decisions and interpretations of the Committee under this Section 18 shall be conclusive and binding upon all persons with an interest in the Plan and shall be given the greatest deference permitted by law.

Section 19.  <u>Limitation on Participants' Rights</u>.

A Participant's Capital Accumulation will be based solely upon his vested interest in his Accounts and will be paid only from the Trust Assets.  Neither the Company, any Employer, the

Committee nor the Trustee shall have any duty or liability to furnish the Trust with any funds, securities or other assets, except as expressly provided in the Plan.

The adoption and maintenance of the Plan shall not be deemed to constitute a contract of employment or otherwise between an Employer and any Employee, or to be a consideration for, or an inducement or condition of, any employment.  Nothing contained in the Plan shall be deemed to give an Employee the right to be retained in the Service of an Employer or to interfere with the right of an Employer to discharge, with or without cause, any Employee at any time.

Section 20.  <u>Future of the Plan</u>.

The Company reserves the right to amend or terminate the Plan (in whole or in part) and the Trust Agreement at any time, by action of the Board of Directors.  Neither amendment nor termination of the Plan shall retroactively reduce the vested rights of Participants or permit any part of the Trust Assets to be diverted to or used for any purpose other than for the exclusive benefit of the Participants (and their Beneficiaries).

The Company specifically reserves the right to amend the Plan and the Trust Agreement retroactively in order to satisfy any applicable requirements of the Code and ERISA.

If the Plan is terminated (or partially terminated), participation of Participants affected by the termination will end.  If Employer Contributions are not replaced by contributions to a comparable plan which satisfies the requirements of Section 401(a) of the Code, the Accounts of those Participants who are Employees on the effective date of the termination will become

nonforfeitable as of that date.  A complete discontinuance of Employer Contributions shall be deemed to be a termination of the Plan for this purpose.

After termination of the Plan, the Trust will be maintained until the Capital Accumulations of all Participants have been distributed.  Capital Accumulations may be distributed following termination of the Plan or distributions may be deferred as provided in Section 12, as the Company shall determine.  In the event that Company Stock is sold in connection with the termination of the Plan or the amendment of the Plan to become a qualified employee plan that is not a stock bonus plan, all Capital Accumulations will be distributed in cash.

In the event of the merger or consolidation of the Plan with another plan, or the transfer of Trust Assets (or liabilities) to another plan, the Account balances of each Participant immediately after such merger, consolidation or transfer must be at least as great as immediately before such merger, consolidation or transfer (as if the Plan had then terminated).

Section 21.  "Top-Heavy" Contingency Provisions.

(a)      In General - The provisions of this Section 21 are included in the Plan pursuant to Section 401(a)(10)(B)(ii) of the Code and shall become applicable only if the Plan becomes a "top-heavy plan" under Section 416(g) of the Code for any Plan Year.

(b)      Top-Heavy Plan - The determination as to whether the Plan becomes "top-heavy" for any Plan Year shall be made as of the Accounting Date of the immediately preceding Plan Year by considering the values of account balances under this Plan and any defined contribution plan of the Company.  The Plan shall be "top-heavy" only if the account balances for "key

- 41 -

employees" as of the determination date exceeds 60% of the total of the account balances for all Participants.  For such purpose, account balances shall be computed and adjusted pursuant to Section 416(g) of the Code.  "Key employee" means any Participant or former Participant (including deceased Participants) who at any time during the Plan Year that includes the determination date was an officer of the Company having annual compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code for Plan Years beginning after June 30, 2005), a five-percent owner of the Company, or a one-percent owner of the Company having annual compensation of more than $150,000.  For this purpose, annual compensation means compensation within the meaning of Section 415(c)(3) of the Code.  The determination of who is a key employee will be made in accordance with Section 416(i)(1) of the Code and applicable regulations and other guidance of general applicability issued thereunder.

(c)     <u>Minimum top-Heavy Contributions</u> - For any Plan Year in which the Plan is "top-heavy," each Participant who is an Employee on the Allocation Date (and who is not a "key employee") shall receive a minimum allocation of Employer Contributions and Forfeitures which is equal to the lesser of:

(1)     3% of his Compensation; or

(2)     the same percentage of his Compensation as the allocation to the "key employee" for whom the percentage is the highest for that Plan Year.  For this purpose, the allocation to the "key employee" shall include any "elective contributions" made by him to a 401(k) plan for that Plan Year.

(d)     <u>Matching Contributions</u> - Matching contributions shall be taken into account for purposes of satisfying the minimum contribution requirements of Section 416(c)(2) of the Code and the Plan.  Matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution

- 42 -

percentage test and other requirements of Section 401(m) of the Code.

    (e)    Top-Heavy Vesting - As of the first day of any Plan Year in which the Plan has become "top-heavy," vesting under Section 10(a)(4) shall be amended (with respect to any Employee who is credited with at least one Hour of Service after the Plan has become "top-heavy") by providing for full vesting after three years of Credited Service.

    If the Plan ceases to be "top-heavy," the Capital Accumulation of a Participant who, at that time, has less than three years of Service shall thereafter be determined under the vesting schedule in Section 10(a)(4), instead of the vesting schedule in this Section 21(e), except that his nonforfeitable percentage shall not be reduced below the nonforfeitable percentage that he had at the time the Plan ceased to be "top-heavy." If the Plan ceases to be "top-heavy," the Capital Accumulation of a Participant who, at that time, has three or more years of Service shall continue to be determined under the vesting schedule in this Section 21(e).

    (f)    Determination of Account Balances - For purposes of determining the Account balances of Participants as of the Allocation Date, Account balances of a Participant shall be increased by distributions made with respect to the Participant under the Plan and any other plan aggregated with the Plan under Section 416(g)(2) of the Code during the one-year period ending on the Allocation Date. The preceding sentence shall also apply to distributions under a terminated plan, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the Code. In the case of distribution made for a reason other than separation from Service, death or Disability, this provision shall be applied by substituting "five-year period" for "one-year period." The Accounts of any individual who has not

performed services for the Company during the one-year period ending on the Allocation Date shall not be taken into account.

Section 22.  <u>Governing Law</u>.

The provisions of the Plan and the Trust Agreement shall be construed, administered and enforced in accordance with the laws of the State of California, to the extent such laws are not superseded by ERISA.

- 44 -

Section 23.  <u>Execution</u>.

To record the amendment and restatement of the Plan, the Company has caused this document to be executed this  27  day of June, 2005.

RAINBOW DISPOSAL CO., INC.

By _____