# EXHIBIT 4

AMENDMENT NO. 3
TO THE
RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN
As Amended and Restated Effective as of July 1, 2004

WHEREAS, Rainbow Disposal Co., Inc. (the "Company") established and maintains the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan, amended and restated effective as of July 1, 2004 (the "Plan") for the benefit of its eligible Employees; and

WHEREAS, the Company desires to amend the Plan in response to the request of the Internal Revenue Service for certain technical amendments as a condition for issuance of a favorable determination letter relating to the qualified status of the Plan under the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

NOW, THEREFORE, the Plan as previously amended, is further amended effective as of July 1, 2004:

**1. Section 2 (Definitions) is amended by replacing the definition of "Compensation" with the following definition:**

The total wages and other compensation paid to an Employee by an Employer during the Plan Year, as reportable as taxable income on the Employee's Wage and Tax Statement (Form W-2), including the amount of any elective contributions made on behalf o the Participant for the Plan Year that are not includible in the gross income of the Participant under Section 402(g) of the Code. Compensation in excess of $205,000, as adjusted after June 30, 2005, for increases in the cost of living pursuant to Section 401(a)(17) of the Code shall be excluded.

**2. Section 2 (Definitions) is amended by adding a new definition of "Qualifying Employer Securities" to read as follows:**

Qualifying Employer Securities        Shares of capital stock issued by the Company.

**3. Section 3 (Eligibility Requirements) is amended by deleting Section 3(b)(2).**

**4. Section 5 (Investment of Trust Assets) is amended by replacing Section 5(b) with the following provision:**

(b)   Acquisition Loans– With the written approval of the Board of Directors, the Committee may direct the Trustee (or the Trustee may act without Committee directions to the extent permitted in Section 5(c)) to incur Acquisition Loans from time to time to finance the acquisition of Company Stock or to repay a prior Acquisition Loan. An installment obligation

incurred in connection with the purchase of Company Stock shall be treated as an Acquisition Loan, and all indebtedness incurred to acquire Company Stock in a single transaction shall be treated as one Acquisition Loan. An Acquisition Loan must be primarily for the benefit of the Participants. An Acquisition Loan shall be for a specific term, shall bear a reasonable rate of interest and shall not be payable on demand except in the event of default. At the time the Acquisition Loan is made, the interest rate for the Acquisition Loan and the price of the Company Stock to be acquired with the loan proceeds should not be such that Plan Assets might be drained off. An Acquisition Loan may be secured by a pledge of the Financed Shares so acquired (or acquired with the proceeds of a prior Acquisition Loan which is being refinanced). No other Trust Assets may be pledged as collateral for an Acquisition Loan, and no person shall have recourse against Trust Assets except for Financed Shares remaining subject to pledge. Any pledge of Financed Shares must provide for the release of the shares so pledged as payments on the Acquisition Loan are made by the Trustee and such Financed Shares are allocated to Participants' Company Stock Accounts under Section 6(b). In the event of a default, the value of Trust Assets transferred in satisfaction of the Acquisition Loan must not exceed the amount of default. If the lender is a party in interest (as defined in ERISA), any pledge of Financed Shares must provide for a transfer of Trust Assets to the lender on default only upon and to the extent of the failure of the Trust to meet the payment schedule of the Acquisition Loan.

5. **Section 5 (Investment of Trust Assets) is amended by deleting the penultimate sentence of Section 5(c).**

6. **Section 5 (Investment of Trust Assets) is amended by deleting the second sentence of Section 5(d).**

7. **Section 7 (Allocation Limitations) is amended by replacing the last paragraph of Section 7(a) with the following provision:**

If the aggregate amount that would be allocated to the Accounts of a Participant in the absence of these limitations would exceed the amount set forth in these limitations, then, the excess annual addition will be corrected pursuant to the Internal Revenue Service's Employee Plans Compliance Resolution System.

8. Section 7 (<u>Allocation Limitations</u>) is amended by replacing the word "may" with the word "shall" in the last clause of the first paragraph of Section 7(b).

9. Section 7 (<u>Allocation Limitations</u>) is amended by deleting the last sentence of the second paragraph of Section 7(b).

10. Section 7 (<u>Allocation Limitations</u>) is amended by adding the following provisions to the end of Section 7(d):

A "prohibited allocation" (as defined above) includes an impermissible allocation (as defined above) or an impermissible accrual. There is an "impermissible accrual" to the extent that shares of Company Stock owned by the ESOP and any assets attributable thereto, including distributions, sales proceeds, and earnings on either, are held under the ESOP for the benefit of a disqualified person during a nonallocation year, whether attributable to the current year or prior years.

In general, a "disqualified person" means a person for whom (1) the aggregate number of deemed-owned shares of such person and the members of such person's family is at least 20 percent of the number of deemed-owned shares of stock in the S Corporation or (2) the number of such deemed-owned shares is at least 10 percent of the number of deemed-owned shares of stock in the S Corporation.

In general, "deemed owned shares" means, with respect to any person, (1) shares of Company Stock allocated to the person under the Plan, and (2) such person's share of the unallocated Company Stock held by the Plan which would be allocated to the person if the unallocated Company Stock were allocated to all Participants in the same proportions on the most recent Allocation Date. In determining ownership, the attribution rules of Section 318(a) of the Code shall apply, with the exception that members of an individual's family shall include the members of the family described in Section 409(p)(4) of the Code.

In general, "synthetic equity" means, any stock option, warrant, restricted stock, deferred issuance stock right, or similar interest or right that gives the holder the right to acquire or receive stock of the S corporation in the future. Except to the extent provided in regulations under Section 409(p) of the Code, synthetic equity also include a stock appreciation right, phantom stock unit, or similar right to a future cash payment based on the value of such stock or appreciation in such value.

11. Section 14 (<u>How Capital Accumulation Will Be Distributed</u>) is amended by adding the following provision to the end the last sentence of Section 14(a):

, provided, however, that if the Participant (or Beneficiary) is a disqualified person under Section 4975(e)(2) of the Code, Fair Market Value shall be determined as of the date of distribution.

12. Section 15 (<u>Rights, Options and Restrictions on Company Stock</u>) is amended by adding the following provision to the end of the penultimate sentence of Section 15(b):

, provided, however, that if the Participant (or Beneficiary) is a disqualified person under Section 4975(e)(2) of the Code, Fair Market Value shall be determined as of the date of distribution.

13. Section 15 (<u>Rights, Options and Restrictions on Company Stock</u>) is amended by adding the following provision to the end of Section 15(d):

The ESOP must not obligate itself to acquire securities from a particular security holder at an indefinite time determined upon the happening of an event such as the death of the holder.

14. Section 21 ("<u>Top-Heavy</u>" <u>Contingency Provisions</u>) is amended by replacing "separation from Service" with "severance of employment" in the last sentence of subsection 21(d)(2)(ii).

To record this Amendment No. 3 of the Plan, the Company has caused it to be executed on this 6th day of August 2010.

RAINBOW DISPOSAL CO., INC.

By _____

Title  CEO  _____