# EXHIBIT 7

# GREATBANC TRUST COMPANY

## SUCCESSOR TRUSTEE ENGAGEMENT AGREEMENT

This Trustee Agreement is made and entered into this 7th day of October, 2002, by and between GreatBanc Trust Company, an Illinois Corporation (the "Trustee"), and Rainbow Disposal Co., Inc., a California corporation (the "Company").

### RECITALS

The Company has established an employee stock ownership plan entitled Rainbow Disposal Co., Inc. Employee Stock Ownership Plan (the "Plan") for the benefit of its employees. All contributions made by the Company to the Plan are and will be held in a trust (the "Trust"), which has been established pursuant to a written agreement, entitled Rainbow Disposal Co., Inc. Employee Stock Ownership Trust (the "Trust Agreement") between the Company and the trustee of the Trust.

The Company desires to retain the Trustee to act as the successor trustee of the Trust, and the Trustee is willing to serve as the trustee of the Trust, on the terms and subject to the conditions set forth in this Agreement and as further set forth in the Trust Agreement itself.

### AGREEMENT

In consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree as follows:

### APPOINTMENT AND DUTIES

1. **Appointment of Trustee.** The Company hereby appoints the Trustee to serve as the trustee of the Trust, and the Trustee hereby accepts this appointment effective as of the date of this Agreement.

2. **Continuing Service.** The Company hereby retains the Trustee to serve as the trustee of the Trust until it resigns or is removed by the Company, subject to the terms of the Trust Agreement, the Trustee may resign at any time by providing 30 days advance written notice to the Company. Subject to the terms of the Trust Agreement, the Company may remove the Trustee by providing the Trustee with 30 days advance written notice, subject to providing the Trustee with satisfactory written evidence of the appointment of a successor trustee and of the acceptance of the appointment by the successor trustee.

3. **Duties of the Trustee.** (a) The Trustee shall hold and manage all contributions made by the Company to the Plan in accordance with the terms of the Plan and of the Trust Agreement to the extent that they are consistent with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Trustee will exercise its independent discretionary

1

judgment in connection with the acquisition and custody of Trust assets in accordance with the requirements of part 4 of Title I of ERISA.

(b) The Trustee will not provide record keeping, accounting, tax or other reporting services for the Plan. These services will be provided by the Plan Administrator or its agent. The Company or the Plan Administrator will provide periodic reports to the Trustee demonstrating that these services are being provided by the Plan Administrator or its agent. If requested by the Company, the Trustee will prepare Internal Revenue Service Form 1099 for delivery to participants in the Plan when their benefits are distributed.

4. Due Diligence Investigation. In order to enable the Trustee to properly perform its duties with respect to the ongoing valuation of the Company, the Company shall deliver to the Trustee all information regarding the finances and operations of the Company that the Trustee shall reasonably request. In addition, the Company shall grant to the Trustee and its advisors reasonable access to the officers and directors of the Company and shall provide to the Trustee all information requested by the Trustee relating to the actions of the Company's Board of Directors relating to past, present, and projected business affairs of the Company.

5. Retention of Financial Advisor. The Trustee will engage the services of a qualified independent financial advisor, who will report directly to the Trustee and not to the Company. The Trustee or the financial advisor shall be entitled to timely periodic payment by the Company of all fees and expenses of the financial advisor.

6. Retention of Legal Counsel. The Trustee will engage its own independent legal counsel. The Trustee or its legal counsel shall be entitled to timely periodic payment by the Company for all reasonable fees and expenses of the Trustee's legal counsel.

7. Confidentiality. The Trustee shall use the information disclosed to it by the Company only for the purposes of evaluating the Company and its ongoing performance. The Trustee shall restrict disclosure of the information that it obtains from the Company to those persons who require knowledge of the information in order to help the Trustee to evaluate the Company (including, but not limited to, officers, directors, employees, and professional advisors of the Trustee). Neither the Trustee nor any of its agents or advisors shall disclose any confidential information regarding the Company to any third parties, except as may be required by ERISA or other laws or as may be requested by the Department of Labor, the Internal Revenue Service, the Securities and Exchange Commission, or any other federal or state agencies. Neither the Trustee nor any of its agents or employees shall be obligated to maintain the confidentiality of any information that is publicly available or that becomes publicly available without violation by the Trustee or any of its agents or employees of the terms of this Section 7. If the Trustee for any reason fails to sign the Trust Agreement or if the Trustee resigns or is removed after signing the Trust Agreement, the Trustee shall remain subject to the confidentiality provisions of this Agreement and shall return to the Company all documents delivered to it by the Company upon request.

## COMPENSATION

8. <u>Annual Fees and Acceptance Fee</u>. (a) In consideration for the Trustee's ongoing service as trustee of the Trust and as custodian of the assets of the Plan, the Company shall pay to the Trustee an annual fee in the amount based on the greater of a minimum fee of $20,000 or as determined in accordance with the attached schedule of fees, based on the greater of (a) the market value of the shares of the Company purchased by the Trustee or contributed by the Company, or (b) the market value of the assets of the Trust at the time the fee is assessed. The fee shall be paid in quarterly installments in advance and shall be subject to modification on January 1 of each year.

(b) In consideration for the Trustee's due diligence investigation in conjunction with the acceptance of the appointment, the Company shall pay to the Trustee a fee of $9,995. This fee shall be paid upon execution of this Agreement.

9. <u>Additional Fees</u>. (a) <u>Fees for Extraordinary Services</u>. In addition to the fees due and payable to the Trustee under Section 8, the Company agrees to pay additional fees to the Trustee for any extraordinary services performed by the Trustee in addition to those provided for in this Agreement. Examples of extraordinary additional services that may be provided by the Trustee from time to time include: providing counsel or testimony in connection with, or involvement in, litigation relating to the Plan; responding to hostile, contested, or unsolicited tender offers for shares of the Company's stock held by the Trustee; and, evaluating and responding to proposed mergers, acquisitions, divestitures, public offerings, reorganizations, or similar transactions involving the Company. The Trustee will charge for its extraordinary services based on a negotiated fee for the particular matter in question. Fees for all other extraordinary additional services as to which a negotiated fee cannot be reached shall be charged at the Trustee's normal hourly rates then in effect. The hourly rate of the officers and employees of the Trustee currently in effect are as follows: senior officers, $200 per hour; other officers, $150.00 per hour; staff, $100 per hour.

(b) <u>Check, Distribution and Voting Tabulation Charges</u>.

- all cash distribution             -$20.00 each
- cash and stock distribution       -$40.00 each
- processing voting or tendering instructions from participants
  - $2.00 per returned instruction, plus out-of-pocket expenses.

10. <u>Reimbursement of Expenses</u>. The Company shall reimburse the Trustee for all expenses reasonably incurred by the Trustee in connection with the performance of its services pursuant to this Agreement. Expenses for which the Trustee shall be entitled to reimbursement shall include charges for reasonable fees and expenses of the Trustee's financial advisors and legal counsel and out-of-pocket expenses incurred by officers or employees of the Trustee, such as charges for copying, postage, facsimile transmissions, private express mail deliveries, and travel expenses.

3

11. **Reimbursement from Trust.** To the extent that the Company shall fail to pay the fees due to the Trustee or to reimburse the Trustee for its expenses on a timely basis, the Company agrees that the Trustee shall be paid the amounts due to it from the Trust. If there is not sufficient cash in the Trust to pay the amounts due to the Trustee, then the Trustee shall have the right to offset the amounts due to it against the assets of the Trust, and the Trustee shall be authorized to sell assets of the Trust to the extent necessary to obtain sufficient cash to pay the amounts due to the Trustee.

## TAX QUALIFICATION OF PLAN

12. **Representations and Warranties of the Company.** The Company hereby represents and warrants to the Trustee as follows:

   (a) The Plan is qualified under Section 401(a) of the Internal Revenue Code of 1986 (the "Code") and has qualified as an "employee stock ownership plan" within the meaning of Section 4975 (e)(7) of the Code and Section 407 (d)(6) of ERISA; and

   (b) The Trust is exempt from taxation under Section 501(a) of the Code.

13. **Tax Ruling.** The Company has applied to the Internal Revenue Service and has obtained within the remedial amendment period prescribed by Section 401(b) of the Code and the regulations interpreting that section of the Code a letter of determination that: (a) the Plan constitutes an "employee stock ownership plan" within the meaning of Section 4975 (e) (7) of the Code; (b) the Plan is qualified under Section 401(a) of the Code; and (c) the Trust is exempt from taxation under Section 501(a) of the Code. The Company will adopt on a timely basis such amendments as are necessary to maintain the qualification of the Plan, the status of the Plan as an employee stock ownership plan, and the Trust as exempt from taxation.

## INDEMNIFICATION

14. **Indemnification.** For purposes of Sections 14, 15, 16, and 17 the term "Indemnitees" shall mean the Trustee and its officers, directors, employees and agents. Subject to the applicable provisions of ERISA, the Company shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including attorneys' fees suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement. The indemnification provided for in this Section 14 shall extend to: (a) any action taken or not taken in good faith by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 14, including reasonable attorney's fees and court costs. However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees.

15. <u>Defense of Actions</u>. (a) <u>Notice</u>. If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to Section 14 (a "Proceeding"), the Indemnitees shall notify the Company of the Proceeding in writing within 30 days of the commencement of the Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees and to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense, unless it shall have been finally determined that the Indemnitees are not entitled to indemnification hereunder.

(b) <u>Reimbursement of Expenses</u>. The Company shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding as to which they are entitled to indemnification hereunder including costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Company or the attorneys for the Company. The Indemnitees shall have the right to employ a single law firm as their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall be paid by the Company as they are incurred, if any one or more of the following conditions are satisfied:

(i) the employment by the Indemnitees of their own counsel shall be authorized by the Company;

(ii) the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(iii) the Company fails to assume the defense of the proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

(iv) the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

16. <u>Governmental Investigations</u>. The provisions of this Section 16 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 16 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ a single law firm as separate counsel to represent them, and the Company shall pay the reasonable fees and expenses

of the Indemnitees' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any investigation.

17. Limitation. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence or willful misconduct, the Company then shall reimburse the affected Indemnitees, as required by Section 14, but taking into account the basis for the denial of full indemnification by the court.

## MISCELLANEOUS

18. Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the Company and of the Trustee. Neither termination nor completion of the engagement of the Trustee or of any of the Indemnitees shall affect the indemnification provisions of this Agreement, which shall remain operative and in full force and effect after the termination or completion of the engagement.

19. Notice. Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by certified or by private express mail, postage prepaid, and properly addressed as follows:

To the Company:          Rainbow Disposal Co., Inc.
                         17121 Nichols Street
                         Huntington Beach, CA  92647
                         Attention: Bruce Shuman, CFO

With a copy to:

To the Trustee:          GreatBanc Trust Company
                         1301 W. 22ND Street, Suite 702
                         Oak Brook, Illinois 60523
                         Attention: Marilyn H. Marchetti, Senior VP

with a copy to:          Gardner, Carton & Douglas
                         Quaker Tower
                         321 North Clark Street Suite 3400
                         Chicago, Illinois  60610
                         Attention: Gregory K. Brown

6

20. _Partial Invalidity._ If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

21. _Waivers._ Either the Company or the Trustee may, by written notice to the other party: (a) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement; or (b) waive or modify performance of any of the obligations of the other party under this Agreement. Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver by that party of compliance with any of the obligations contained in this Agreement. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

22. _Governing Law._ This Agreement shall be interpreted and enforced in accordance with, and governed by, the laws of the State of Illinois.

23. _Entire Agreement._ This Agreement supersedes all prior agreements and understandings between the parties and may not be changed or terminated orally. No attempted change, termination, or waiver of any of the provisions of this Agreement shall be binding, unless in writing and signed by the party against whom the change, termination, or waiver is sought to be enforced.

IN WITNESS WHEREOF, the Company and the Trustee have caused this Agreement to be signed as of the day and year first written above.

GREATBANC TRUST COMPANY

By: _[signature]_
Its: _Senior Vice President_

RAINBOW DISPOSAL CO., INC.

By: _[signature]_
Its: _Co President_

7

GREATBANC TRUST COMPANY

SCHEDULE OF FEES
FOR
EMPLOYEE BENEFIT PLANS CONTAINING EMPLOYER SECURITIES

| MARKET VALUE OF EMPLOYER SECURITIES | | | ANNUAL FEE |
|---|---|---|---|
| First | $ | 3,000,000 | 0.20% of Market Value |
| Next | $ | 2,000,000 | 0.15% of Market Value |
| Next | $ | 10,000,000 | 0.10% of Market Value |
| Balance | | | 0.05% of Market Value |

| MARKET VALUE OF ASSETS OTHER THAN EMPLOYER SECURITIES | | | ANNUAL FEE |
|---|---|---|---|
| First | $ | 5,000,000 | 0.35% of Market Value |
| Balance | $ | | 0.25% of Market Value |