1  Edward Gregory, CSBN 128375
2  Email: egregory@steptoe.com
   STEPTOE & JOHNSON LLP
3  633 West 5th Street, 7th Floor
4  Los Angeles, CA 90071
   Telephone: (213) 439-9433
5  Facsimile: (213) 439-9599

6
7  Attorneys for Defendants Rainbow Disposal
   Co., Inc. Employee Stock Ownership Plan Committee,
8  Jon Black, Catharine Ellingsen, Bill Eggleston, and
   Republic Services, Inc.
9
10 *[Additional Counsel Listed on Signature Page]*

11            **UNITED STATES DISTRICT COURT**
12   **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

13 ANTONIO HURTADO, et al.,          )  Case No.: 8:17-cv-01605-JLS-DFM
14                                   )
                                     )
15        Plaintiffs,                )  *Assigned to Hon. Josephine L. Staton*
                                     )
16 v.                                )
                                     )  **MEMORANDUM OF LAW IN**
17 RAINBOW DISPOSAL CO., INC.        )  **SUPPORT OF MOTION TO**
   EMPLOYEE STOCK OWNERSHIP          )  **DISMISS BY DEFENDANTS**
18 PLAN COMMITTEE, et al.,           )  **RAINBOW DISPOSAL CO., INC.**
                                     )  **EMPLOYEE STOCK OWNERSHIP**
19                                   )  **PLAN COMMITTEE, BLACK,**
20        Defendants.                )  **ELLINGSEN, EGGLESTON, AND**
                                     )  **REPUBLIC SERVICES, INC.**
21                                   )
                                     )
22                                   )
                                     )  **Hearing: July 6, 2018; 2:30 p.m.**
23                                   )  **Courtroom: 10A**
24                                   )

25
26
27
28

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN,
EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................ 1

FACTUAL BACKGROUND .......................................................................... 3

    A.   The Plan .......................................................................................... 3

    B.   The Trust Agreement ..................................................................... 4

    C.   Republic's Purchase of the ESOP's Rainbow Stock ..................... 5

    D.   Investment and Distribution of Trust Assets ................................. 6

    E.   Requests for Documents ................................................................ 6

LEGAL STANDARD ..................................................................................... 7

ARGUMENT .................................................................................................. 8

I.     THE COMMITTEE IS NOT A PROPER PARTY DEFENDANT ......... 8

II.    COUNTS III AND IX FAIL TO STATE A DISCLOSURE CLAIM AGAINST THE COMMITTEE ................................................................ 9

III.   COUNT IV FAILS TO STATE A FIDUCIARY DISCLOSURE CLAIM AGAINST THE REPUBLIC DEFENDANTS .......................... 11

IV.   COUNT X FAILS TO STATE A PLAUSIBLE CLAIM THAT PLAN ASSETS WERE IMPROPERLY INVESTED .......................... 13

V.    COUNTS XI AND XII FAIL TO STATE A DERIVATIVE LIABILITY CLAIM AGAINST ANY REPUBLIC DEFENDANTS ...... 16

    A.   Any Conduct of Individual Republic Defendants Prior to the October 1, 2014 Transaction Is Not Actionable ............................ 16

    B.   Plaintiffs' Post-Transaction Monitoring and Co-Fiduciary Claims Fail with Their Underlying Fiduciary Claims ................... 17

    C.   Counts XI and XII Allege No Facts Demonstrating a Deficient Monitoring Process or a Co-Fiduciary Breach ............................. 19

i

VI.   COUNT XIII FAILS TO STATE A CLAIM AGAINST REPUBLIC FOR
       KNOWING PARTICIPATION IN ANY BREACHES ...........................................20

VII.  COUNT XIV FAILS PLAUSIBLY TO ALLEGE ANY FIDUCIARY BREACH
       REGARDING THE INDEMNIFICATION PROVISIONS ....................................23

CONCLUSION ...........................................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Pac. Ents.*,
950 F.2d 611 (9th Cir. 1992) ...............................................................12

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015) .................................................7

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*,
189 F.3d 1017 (9th Cir. 1999) ............................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................8

*Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*,
2016 WL 7626446 (C.D. Cal. Sept. 30, 2016) ...................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................7

*Bins v. Exxon Co. U.S.A.*,
220 F.3d 1042 (9th Cir. 2000) (en banc) ...........................................11

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..............................................................15

*In re Calpine Corp.*,
2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ...................................19

*Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*,
2014 WL 6603761 (C.D. Cal. July 28, 2014) ..................................7, 8

*Carr v. Int'l Game Tech.*,
770 F. Supp. 2d 1080, 1097 (D. Nev. 2011) .................................19, 20

*CIGNA Corp. v. Amara*,
131 S. Ct. 1866 (2011)......................................................................9, 10

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000) ............................................................10

*In re Comp. Scis. Corp. Erisa Litig.,*
    635 F. Supp. 2d 1128 (C.D. Cal. 2009) ................................................... 12, 23

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995) ........................................................................................ 12

*DeFazio v. Hollister, Inc.,*
    854 F. Supp. 2d 770 (E.D. Cal. 2012) ............................................... 17, 20

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.,*
    50 F.3d 1478 (9th Cir. 1995) ...................................................................... 13

*DIRECTV, Inc. v. Hoa Huynh,*
    503 F.3d 847 (9th Cir. 2007) ...................................................................... 19

*Donovan v. Mazzola,*
    716 F.2d 1226 (9th Cir. 1983) ........................................................ 15, 19, 20

*Donovan v. Cunningham,*
    716 F.2d 1455 (5th Cir. 1963) ............................................................. 19, 20

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.,*
    2016 WL 6892140 (C.D. Cal. Nov. 22, 2016) ........................................... 13

*Edmonson v. Lincoln Nat. Life Ins. Co.,*
    725 F.3d 406 (3d Cir. 2013) ....................................................................... 23

*Faircloth v. Lundy Packing Co.,*
    91 F.3d 648 (4th Cir. 1996) ........................................................................ 12

*Fifth Third Bancorp v. Dudenhoeffer,*
    134 S. Ct. 2459 (2014) ..................................................................... 7, 14, 15

*Flanigan v. GE,*
    242 F.3d 78 (2d Cir. 2001) ......................................................................... 16

*In re Gilead Scis. Secs. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ...................................................................... 7

*Grosset v. Wenaas,*
    42 Cal. 4th 1100 (2008) .............................................................................. 18

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN,
EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS

*Gurasich v. IBM Ret. Plan*,
   2016 WL 362399 (N.D. Cal. Jan. 29, 2016)....................................................10

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
   530 U.S.238 (2000)...........................................................................20, 21, 24

*Harris v. GreatBanc Trust Co.*,
   2013 WL 1136558 (C.D. Cal. Mar. 15, 2013) .............................................24

*Independent Film Dev. Corp. v. Arriva Capital, LLC*,
   2012 WL 13008981 (C.D. Cal. July 30, 2012) ...........................................23

*Kayes v. Pac. Lumber Co.*,
   51 F.3d 1449, 1459 (9th Cir. 1995) ..............................................................8

*Kegel v. Brown & Williamson Tobacco Corp.*,
   2009 U.S. Dist. LEXIS 18386 (D. Nev. Mar. 10, 2009) ................................9

*LeBlanc v. Cahill*,
   153 F.3d 134, 151-52 (4th Cir. 1998).........................................................19

*Local 159 v. Nor-Cal Plumbing, Inc.*,
   185 F.3d 978, 982 (9th Cir. 1999) ................................................................8

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134, 147 (1985) ..............................................................................8

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248, 251 (1993) .........................................................................8, 23

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*,
   136 S. Ct. 651 (2016)..................................................................................23

*Moran v. Aetna Life Ins. Co.*,
   872 F.2d 296 (9th Cir. 1989) ...............................................................10, 11

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
   823 F.3d 948 (9th Cir. 2016) ...............................................................13, 14

*No. 84 Employer-Teamster Jt. Council Pension Tr. Fund v.
   America W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) .........................................................................7

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN,
EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

*Patterson v. Capital Grp. Cos., Inc.*,
   2018 WL 748104 (C.D. Cal. Jan. 23, 2018)....................................................17

*Pension Benefit Guar. Corp. ex rel. St. Vincent*
   *Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ....................................................................15

*Pette v. Int'l Union of Operating Engineers*,
   2016 WL 4596338 (C.D. Cal. Sept. 2, 2016)........................................21, 22

*Quan v. Computer Scis. Corp.*,
   623 F.3d 870 (9th Cir. 2010) ..............................................................12, 14

*Rinehart v. Lehman Bros. Holdings Inc.*,
   817 F.3d 56 (2d Cir. 2016) ......................................................................17

*Romero v. Nokia, Inc.*,
   2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ............................................17

*Sanders v. Brown*,
   504 F.3d 903 (9th Cir. 2007) ....................................................................7

*Simmons v. Pilgrim*,
   2010 U.S. Dist. LEXIS 120071 (N.D. W. Va. Nov. 10, 2010) ......................8

*Santomenno v. Transamerica Life Ins. Co.*,
   883 F.3d 883 (9th Cir. 2018) ....................................................................21

*In re Sprint Corp. ERISA Litig.*,
   388 F. Supp. 2d 1207 (D. Kan. 2004) ........................................................19

*Taylor v. ANB Bancshares, Inc.*,
   2010 U.S. Dist. LEXIS 110203 (W.D. Ark. Sep. 20, 2010) ......................8, 9

*Tull v. United States*,
   481 U.S. 412 (1987)..................................................................................11

*Urakhchin v. Allianz Asset Mgmt. of Am., LP.*,
   2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ....................................8, 22, 23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................7

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN,
EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS

*White v. Chevron Corp.,*
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ................................................15


**Federal Statutes**

29 U.S.C. § 1002 ........................................................................................1, 21

29 U.S.C. § 1005 ......................................................................................16, 19

29 U.S.C. § 1022 ..........................................................................................6, 9

29 U.S.C. § 1024 ..........................................................................................6, 9

29 U.S.C. § 1104 ............................................................................................14

29 U.S.C. § 1105 ......................................................................................16, 19

29 U.S.C. § 1109 ..........................................................................1, 2, 8, 11

29 U.S.C. § 1132 ......................................................................................10, 11


**State Statutes**

Cal. Civ. Proc. Code § 343 .........................................................................18

Defendants Republic Services, Inc. ("Republic"), Rainbow Disposal Co., Inc. Employee Stock Ownership Plan Committee ("Committee"), and Jon Black, Catharine Ellingsen, and Bill Eggleston (together, "Republic Defendants") submit this brief in support of their motion to dismiss the Amended Complaint.

## INTRODUCTION

This putative ERISA class action is brought by six participants in the Rainbow Disposal Co., Inc. ("Rainbow") Employee Stock Ownership Plan ("ESOP" or "Plan"). Until October 1, 2014, the ESOP owned all of Rainbow's stock; it then sold that stock to Republic and was terminated, except for the distribution of the sales proceeds and any remaining assets. The Plaintiffs' ERISA claims pre-date or stem from that sale and the ESOP's resultant dissolution.

Neither Republic nor the individual Republic Defendants represented the ESOP in the sale. They stood on the opposite side of the deal from the ESOP, which was represented by its own fiduciaries and advisors. Nor did any of the Republic Defendants have a pre-existing ERISA fiduciary or other relationship with Rainbow, the ESOP, or its participants or beneficiaries. And, none of the Republic Defendants secured any benefit from the transaction, apart from Republic's acquisition of the ESOP's Rainbow stock, for which it paid handsomely. Nonetheless, Plaintiffs seek to impose ERISA liability on these Defendants for pre-sale events, the sale itself, and the ESOP's post-sale wind-down that caused Plaintiffs no tangible harm. As detailed below, no cognizable ERISA claim for relief is stated against the Republic Defendants.

As a threshold matter, the Amended Complaint's attempt to include the Committee as a Defendant in Counts I, II, IV, VIII–XII, and XIV is misguided for one basic reason – it is not a "person" as defined in ERISA § 3(9), 29 U.S.C. § 1002(9). It therefore *cannot* be a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), or subject to liability as such under ERISA § 409(a), 29 U.S.C. § 1109(a). For this reason alone, these claims should be dismissed as to the

1

Committee. Moreover, because individual Committee members are named as defendants, the Committee's presence in these Counts is unnecessary.

ERISA's plain language also requires dismissal of any fiduciary claims against the Republic Defendants based on actions before the October 1, 2014 sale. Section 409(b) provides that a fiduciary has no liability for a breach "committed before he became a fiduciary." 29 U.S.C. § 1109(b). To the extent the fiduciary disclosure, monitoring and co-fiduciary liability claims asserted in Counts IV, XI and XII, respectively, are based on conduct prior to October 2014, they should be dismissed as to the Republic Defendants.

Plaintiffs' post-October 1, 2014 claims against the Republic Defendants are equally meritless. Plaintiffs' fiduciary disclosure claim (Count IV) asserts that the individual Republic Defendants failed to furnish adequate information concerning the sale and distribution of proceeds. But Plaintiffs' own allegations demonstrate the required information was provided. More importantly, Plaintiffs identify *no* alleged misrepresentation by the Republic Defendants, *no* detrimental reliance, and *no* harm to Plaintiffs from the alleged disclosure violation.

Plaintiffs' claim that the Republic Committee Defendants violated ERISA fiduciary standards by investing the sale proceeds in safe, short-term government instruments (Count X) also should be dismissed. The Plan directed that the Plan's assets be invested "in investments designed to preserve principal" to facilitate the contemplated near-term distributions to participants. There was nothing imprudent in adhering to that directive. Indeed, had the Committee failed to do so and exposed the assets to market risk, it undoubtedly would have been sued in the event of a market downturn for just that reason. "Heads I win, tails you lose" claims like Count X should not be countenanced.

The remaining ERISA claims against the Republic Defendants likewise fail. The claims based on the Summary Plan Description ("SPD") in Count III and the statutory disclosure claim asserted in Count IX cannot stand against the Republic

2

Defendants because any such obligations fall solely on the Plan's "administrator" – none of the Republic Defendants served in that capacity. The monitoring and co-fiduciary liability claims in Counts XI and XII fail because there is no underlying fiduciary breach to support them, and they are inadequately pled in any event. And the indemnity provision challenge in Count XIV is doomed for a variety of reasons, and in particular, because no indemnity would be paid from plan assets.

Finally, the sole claim against Republic – Count XIII – is frivolous. That claim seeks to impose ERISA liability on Republic simply because it purchased the ESOP's stock, and thereby somehow "knowingly participated" in a fiduciary breach by those on the other side of the sale. But Republic was a legal stranger to the Rainbow ESOP in that transaction; it owed the Plan no fiduciary or other ERISA duties. Were Plaintiffs' theory correct, any party contracting with an ERISA plan would be open to suit on a theory that it "got too good a deal" or "drove too hard a bargain." And even if this theory were viable, the relief Plaintiffs effectively seek, *i.e.*, money damages in the amount the ESOP allegedly was short changed on the sale, is not available under ERISA against non-fiduciaries.

## FACTUAL BACKGROUND

### A.    The Plan

Rainbow established the Plan in 1995. The Plan was restated effective July 1, 2004, and amended several times since. FAC ¶ 53.[1] Before its October 2014 termination, the Plan was an employee stock ownership plan under ERISA, a type of individual account plan designed to invest primarily in the stock of its employer

---

[1] The facts are based on the Amended Complaint or documents that may be properly considered on a motion to dismiss, such as Plan-related documents referenced or incorporated in the Amended Complaint or public-filings. *See infra* at 8. Republic Defendants accept the Amended Complaint's allegations as true for purposes of this motion only, unless contradicted by such documents. All numbered exhibits are attached to the Declaration of Eric Serron.

3

sponsor. *See id.* ¶ 5; Ex. 1, § 1. The ESOP owned all of Rainbow's stock, FAC ¶ 5, and the Plan's trustee held title to that stock, including any allocated to participants' accounts. Ex. 1, §§ 1, 5(a); *see also* FAC ¶¶ 57, 86. Participants were beneficial owners of the stock allocated to their accounts.

The Plan identified the "members of the Committee" as "named fiduciaries with authority to control and manage the operation and administration of the [p]lan." Ex. 1, § 17(a). The pre-October 1, 2014, Committee members included Bruce Shuman (until September 2013) and Defendant Gerald Moffatt. FAC ¶¶ 17, 35; Ex. 2 at 12. After the transaction closed, Republic Defendants Black, Ellingsen, and Eggleston became Committee members. FAC ¶¶ 22-24.

Participants had a limited right to vote the Plan's stock. The SPD stated that the Committee "usually decide[s] how shares of Company Stock held by the ESOP will be voted," but in "certain important corporate matters …, such as a merger or liquidation of the Company," participants "may have the right" to vote shares held in their "Company Stock Account." Ex. 2 at 5. The Plan expressly limited a participant's right to vote such stock to "any corporate matter which involves the voting of such shares at a shareholder meeting and which constitutes a merger, consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business or a similar transaction specified in regulations under Section 409(e)(3) of the Code." Ex. 1, § 8.

**B.    The Trust Agreement**

Defendant GreatBanc has been the Plan's Trustee since 2002. FAC ¶ 31. While originally subject to Committee direction, Ex. 3 ¶ C, GreatBanc was authorized to sell the Company's shares without direction in an August 2014 Plan amendment. Ex. 1, Amend. No. 4 ¶ 1. The Trust Agreements governing GreatBanc's duties were amended in the same time frame to allow GreatBanc to review the then-proposed sale of Company stock to Republic, Ex. 4, July 2014 Amend. at 1, and to give it discretion to sell the Plan's shares, Ex. 3, Amend. No. 2.

4

### C.     Republic's Purchase of the ESOP's Rainbow Stock

Republic successfully bid for Rainbow in a sales process in which competing bids were considered. *See* FAC ¶ 147. The transaction was structured as a stock sale in which Republic purchased the Plan's Rainbow stock. *See id.* ¶ 137. After the October 1, 2014 closing, Republic operated Rainbow as a division and former Rainbow executives, Defendants Moffatt and Snow, continued with the company. *See id.* ¶¶ 17-18, 167. Republic's public filings noted that it had non-competition agreements with key executives, and that intangible factors such as goodwill were considered in the total consideration paid. *Id.* ¶¶ 167-68.

The Plan was amended as part of the transaction.[2] Amendment No. 5 converted the Plan to a profit sharing plan and terminated it effective on closing. FAC ¶ 140; Ex. 1, Amend. No. 5 ¶¶ 1, 15. As part of the termination, participants would receive the sale proceeds in three tranches – a first distribution of approximately 75% of participants' balances, shortly after closing; a second equal to the remaining balance, exclusive of funds held in escrow; and a third after funds were disbursed from escrow. FAC ¶ 144; Ex. 1, Amend. No. 5 ¶ 15. Escrowed funds were "owned solely by Purchaser" and were not Plan assets until received by the Trustee. Ex. 1, Amend. No. 5 ¶ 8.

After closing, the new Committee began winding up the Plan. In November 2014, an Application for Determination for Terminating Plan was sent to the IRS. FAC ¶ 163. Interested parties were notified and given an opportunity to comment. *Id.* ¶ 159. Several Plaintiffs submitted (a) a letter asking the Department of Labor to express its views to the IRS on the termination, and (b) formal comments, through counsel, directly to the IRS. *Id.* at ¶¶ 160-62. Despite those efforts, the IRS issued a favorable determination letter in spring 2016. *See* Ex. 5.

---

[2]Rainbow's Articles of Incorporation also were amended on October 21, 2014 to remove a requirement that the company be employee-owned. FAC ¶ 146.

### D.    Investment and Distribution of Trust Assets

Amendment No. 5 also changed the Plan to address investment of plan assets post transaction. Given the anticipated distribution to participants, it provided that, "after the Closing, Trust Assets will be invested primarily in investments designed to preserve principal consistent with the requirements of ERISA." Ex. 1, Amend. No. 5 ¶ 8. On October 3, 2014, the newly constituted Committee, in consultation with an investment advisor, did just that, investing in short-term Goldman Sachs Treasury obligations. *See* FAC ¶ 179.

In an October 17, 2014 letter, the Committee informed participants of the price paid for the stock, the distribution plan, and their potential payout. *Id.* ¶¶ 150-51; Ex. 6. By June 30, 2015, the Plan had distributed all but about $15 million of the $50.9 million in sales proceeds. Ex. 7, Notes to Fin. Stmt. at 5, 9; FAC ¶ 182. The remaining assets stayed invested in Goldman Sachs Treasury obligations while the IRS considered the Plan's determination letter request. *Id.* Additional distributions were made after receipt of the IRS's favorable determination.

In November 2016, participants were advised that the escrow issues had been resolved and that final distributions would be made in the near future. *Id.* ¶ 174. An August 2017 letter notified participants of the final distribution process and Plaintiffs received their final payout in October 2017. *Id.* ¶¶ 175, 203-08.

### E.    Requests for Documents

In November 2014, Plaintiff Ortega requested documents listed in ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), such as the Plan and SPD, along with several additional categories of documents, such as "[a] report relating to the termination of the Plan, including the terms on which any Plan assets were sold" and any valuations used to determine the sale price of the shares. FAC ¶ 183. Defendant Black responded in December 2014, asking him to sign a confidentiality agreement as to certain documents containing sensitive commercial information. *Id.* ¶ 184. As

the parties continued to correspond, Black provided certain unspecified documents and offered to provide others, including the June 2014 valuation. *Id.* ¶¶ 186-89.

In January 2017, Plaintiffs Ortega and Maritza Quintero requested a copy of the escrow settlement agreement between GreatBanc and Republic. *Id.* ¶ 191. Black responded to Ortega by noting ERISA § 104(b)(4) did not require production of the settlement agreement. *Id.* ¶ 192. He advised Quintero that the Plan had no record of her beneficiary status and requested information on that issue. *Id.* ¶ 193.

## LEGAL STANDARD

District Courts must carefully review ERISA complaints to separate the "plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470-71 (2014). To survive Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." To satisfy this pleading requirement, a plaintiff must include "the who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

On a Rule 12(b)(6) motion, courts may consider documents on which plaintiffs base their claims or that they reference extensively in the complaint. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *No. 84 Employer-Teamster Jt. Council Pension Tr. Fund v. America W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). Courts addressing ERISA motions to dismiss routinely consider Plan documents, SPDs, and a plan's Form 5500 Annual Reports. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015) (judicial notice of Form 5500 filings); *Care First Surgical*

7

*Ctr. v. ILWU-PMA Welfare Plan*, 2014 WL 6603761, at *4 (C.D. Cal. July 28, 2014) (same, plan governance documents); *Urakhchin v. Allianz Asset Mgmt. of Am., LP.*, 2016 WL 4507117, at *3-4 (C.D. Cal. Aug. 5, 2016) (same).

## ARGUMENT

## I.     THE COMMITTEE IS NOT A PROPER PARTY DEFENDANT

Counts I, II, IV, VIII-XII, and XIV allege ERISA fiduciary breach claims against the "ESOP Committee," among others.[3] Because it is not a "person" as defined in ERISA, the Committee is not a proper party to these claims.

ERISA § 409(a), 29 U.S.C. § 1109(a), imposes potential liability only upon a "*person* who is a fiduciary," and ERISA § 3(21) provides that "a *person* is a fiduciary with respect to a plan" to the extent such person performs one of the functions specified therein. (emphasis added). ERISA § 3(9) defines "person" to mean "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated association, or employee organization." This detailed list does not include "committees."[4] Given ERISA's "comprehensive and reticulated" nature, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993), Congress's exclusion of committees from this definition should be viewed as deliberate and given effect. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985).[5]

---

[3] Republic Defendants join Defendants GreatBanc's and Moffatt's motions to dismiss Counts I and II of the Amended Complaint to the extent applicable.

[4] In analogous contexts, the Ninth Circuit has treated ERISA's definition of "person" as determinative of who or what can be a fiduciary under ERISA § 3(21). *See, Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995) (corporations can be fiduciaries because "person" in § 3(9) includes a "corporation," and § 3(21)(A) defines fiduciary in terms of a "person"); *Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 982 (9th Cir. 1999) ("trust fund could qualify as a fiduciary" because ERISA defines "person" to include a "trust").

[5] *See Simmons v. Pilgrim*, 2010 U.S. Dist. LEXIS 120071, at *10 n.3 (N.D. W. Va. Nov. 10, 2010); *Taylor v. ANB Bancshares, Inc.*, 2010 U.S. Dist. LEXIS

8

Moreover, the Plaintiffs' attempt to add the "Committee" as a distinct fiduciary defendant only adds confusion. The Amended Complaint seeks to sub-divide this fictional non-person into two entities – the Committee as it existed prior to the sale, FAC ¶ 20, and the post-sale Committee, *id*. ¶ 25. Given that the Amended Complaint includes individual members from both time periods, the Committee's inclusion as a defendant is both confusing and unnecessary.

## II.   COUNTS III AND IX FAIL TO STATE A DISCLOSURE CLAIM AGAINST THE COMMITTEE

Count III alleges that the "Pre-October 1, 2014 Plan Administrator" violated ERISA § 102(a), 29 U.S.C. § 1022(a), by failing to issue an updated SPD prior to October 2014 and by furnishing Plaintiffs with an SPD that failed to accurately describe the circumstances under which they would be entitled to vote Rainbow stock allocated to their accounts. *See* FAC ¶¶ 247-51. Count IX alleges that the "Post-Transaction Plan Administrator" violated ERISA § 104(b)(4), 29 U.S.C. §§ 1024(b)(4), by failing to provide certain documents requested by Plaintiffs Ortega and Maritza Quintero within 30 days. *See* FAC ¶¶ 310, 313, 316.

In asserting Count III only against the Pre-October 1, 2014 Plan Administrator, Plaintiffs concede that the statutory duty to furnish the SPD falls solely on the "administrator" of the plan. *See* ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1); *see also CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011) ("The plan's administrator ... provides participants with the summary documents that describe the plan (and modifications) in readily understandable form."). Plaintiffs' inclusion of the Prior ESOP Committee as a defendant on Count III is misplaced. "Administrator" is defined in ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), as "the person specifically so designated by the terms of the instrument under which

---

110203, at *39-41 (W.D. Ark. Sep. 20, 2010); *Kegel v. Brown & Williamson Tobacco Corp.*, 2009 U.S. Dist. LEXIS 18386, at *42 n.13 (D. Nev. Mar. 10, 2009).

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

the plan is operated." Section 17(h) of the Plan designates Rainbow Disposal Co., Inc. as the "administrator" as defined in ERISA § 3(16)(A). FAC ¶ 95; Ex. 1, § 17(h). Because the Prior ESOP Committee was *not* the designated Plan "administrator," Count III fails as to it as a matter of law.

Plaintiffs' Count IX claim for civil penalties (*see* FAC ¶ 318) fares no better as to the Committee. It is well-settled that "only the plan 'administrator' can be held liable for failing to comply with the reporting and disclosure requirements" under ERISA § 502(c), 29 U.S.C. § 1132(c). *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000); *Gurasich v. IBM Ret. Plan*, 2016 WL 362399, at *10 (N.D. Cal. Jan. 29, 2016) ("[S]ection 1132(c)(1) authorizes liability for civil penalties only against the plan 'administrator.'"). Plaintiffs' allegation that the 2014 SPD identified the Committee as "Plan Administrator" is irrelevant. *See* FAC ¶ 97. The Plan's terms control under ERISA § 16(A), and to the extent the SPD conflicts with the Plan, the Plan governs. *Amara*, 131 S. Ct. at 1877 ("[W]e have no reason to believe that the statute intends to … giv[e] the administrator the power to set plan terms indirectly by including them in the summary plan descriptions.").[6] Ninth Circuit case law further refutes Plaintiffs' suggestion that the Committee members should be deemed the "Plan Administrator" based on alleged representations by Defendant Black. *See* FAC ¶ 317; *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 301 (9th Cir. 1989) ("creating an additional class of persons liable as plan administrators" would be an "end run" around ERISA). Because the Plan does not designate Committee members "administrator," they are not proper defendants.

Count IX's alternative claim against the Committee and its members based on the general fiduciary duties set forth in ERISA § 404(a)(1)(A) similarly fails.

---

[6] In any case, there is no conflict, since the Plan states that the Committee may "assist the Company" in complying with ERISA's reporting and disclosure requirements. Ex. 1, § 17(h).

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

*See* FAC ¶¶ 309-11, 313-14, 316. *Moran* bars recovery of a § 502(c)(1) penalty

from the Committee members, who are not plan administrators. Plaintiffs cannot

use ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to evade *Moran*. *See* FAC ¶ 319.

That section authorizes only equitable relief,[7] and a penalty is not "equitable

relief." *Tull v. United States*, 481 U.S. 412, 422 (1987).

## III.   COUNT IV FAILS TO STATE A FIDUCIARY DISCLOSURE CLAIM AGAINST THE REPUBLIC DEFENDANTS

Count IV recasts many of the fiduciary breaches alleged in Counts I and II

as disclosure breaches.[8] The bulk of the communications Plaintiffs challenge

occurred *before* October 2014, when Republic Committee Defendants Black,

Ellingsen, and Eggleston had yet to become Committee members or take on

fiduciary duties. *See* ERISA § 409(b), 29 U.S.C. § 1109(b).

With respect to post-October 1, 2014 communications, Count IV fails to

identify an actionable nondisclosure. Plaintiffs' primary claim is that certain

information was not provided on their preferred timetable. *See, e.g.*, FAC ¶ 258(j),

(l), (m), (n). But Plaintiffs' allegations show the Republic Committee Defendants

provided all pertinent information. *See* FAC ¶¶ 147-48, 150-51, 158-59, 171, 173-

75, 177-78. Defendants timely responded to participant inquiries, *see, e.g.*, FAC

¶¶ 183-95, providing "complete and accurate" information regarding Plaintiffs'

benefits. *See Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1053-54 (9th Cir. 2000) (en

banc). Plaintiffs identify no refusal to provide required information as to their Plan

benefits or the calculation of their account balances.

Plaintiffs' attempt to assert a nondisclosure claim based on a trust-law

---

[7] Section 502(a)(3) of ERISA authorizes a plan participant to bring an action
for "appropriate equitable relief" to redress violations of ERISA or the terms of the
plan or to enforce any provisions of ERISA or the terms of the plan.

[8] The Republic Defendants join any motion by GreatBanc as to Count IV to
the extent applicable.

11

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN,
EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

accounting theory is also without merit. Contrary to Plaintiffs' suggestion, *see* FAC ¶ 260, the Ninth Circuit has not recognized a general fiduciary duty to disclose beyond ERISA's express disclosure requirements in §§ 107-10. It has held just the opposite. *Acosta v. Pac. Ents.*, 950 F.2d 611, 618 (9th Cir. 1992) ("trust law duties may be read into § 404(a) "only insofar as they *do not contradict or supplant* [ERISA's] existing reporting and disclosure provisions"); *accord Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996) (declining "to use § 404(a)(1)(A) to expand the duties imposed under § 104(b)(4)").[9] This comports with the Supreme Court's recognition that ERISA's disclosure provisions reflect the Congress's intended scheme. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82-83 (1995) (finding no disclosure duty in ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3), because "ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time").

Plaintiffs' misrepresentation claim also fails. For a misrepresentation claim, a plaintiff must plead misrepresentation, materiality, and detrimental reliance. *In re Comp. Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1139-40 (C.D. Cal. 2009), *aff'd sub nom. Quan v. Comp. Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010).

Count IV identifies no actual misrepresentation. Plaintiffs allege the Committee's October 17, 2014 letter misleadingly cited a share price of $17.66. FAC ¶ 258(f). But the letter states this is the "maximum potential" amount and explains the payment "may be reduced" for ESOP expenses and outstanding liabilities. Ex. 6; *see also id.* ($17.66 "is not guaranteed as it is subject to reductions through company liabilities identified during the indemnity holdback period"). Plaintiffs identify no fraudulent statement with the particularity required

---

[9] *Faircloth* expressly rejects an argument that ERISA requires an accounting. *See id.* (citing Restatement (Second) of Trusts § 173 (1959)). Plaintiffs' theory cannot be squared with *Acosta*'s and *Faircloth*'s holdings that trust law duties "*inform*" ERISA fiduciary duties, but do not expand them.

by Rule 9. *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2016 WL 6892140, at *10-11 (C.D. Cal. Nov. 22, 2016). Count IV also fails to plead materiality or detrimental reliance: there is no connection between any allegedly misleading aspect of the letter and any act or omission by Plaintiffs. *See In re Computer Scis.*, 635 F. Supp. 2d at 1141 (misrepresentation is material if it is substantially likely to mislead employee in making adequately informed decision).

Count IV also alleges no plausible harm resulting from the purported disclosure breaches. *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964 (9th Cir. 2016) (requiring harm or detrimental reliance). Plaintiffs' unsupported allegation that they were "dissuaded" from taking action, FAC ¶ 261, contradicts their own pleading. *See supra* at 5-6 (discussing Plaintiffs' DOL and IRS advocacy and document requests). Plaintiffs have thus failed to plead the elements required for reformation, equitable estoppel, or surcharge. *See Moyle*, 823 F.3d at 964.[10]

## IV.   COUNT X FAILS TO STATE A PLAUSIBLE CLAIM THAT PLAN ASSETS WERE IMPROPERLY INVESTED

Count X fails to state a plausible claim that the New ESOP Committee Defendants breached fiduciary duties under ERISA §§ 404(a)(1)(A), (B), (C) and (D) by investing approximately $14.9 million in short-term treasuries after October 1, 2014. FAC ¶ 323. Plaintiffs' claim that these assets should have been invested

---

[10] Plaintiffs concede they have not pled the elements for these remedies by arguing that they are entitled to an "accounting" to determine "whether they have received the correct amount of benefits." FAC ¶¶ 257, 259, 261. This "accounting" claim falls within the scope of ERISA § 502(a)(1)(B)'s claim for benefits or to clarify future benefit rights and should be dismissed for failure to exhaust the Plan's administrative claims procedure. *See* Ex. 1 § 18 ("A Participant (or Beneficiary) who does not receive a distribution of benefits to which he believes he is entitled may present a claim to the Committee."); *see also Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995) ("federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [] as a matter of sound policy they usually do").

60% in an S&P 500 index fund and 40% in AAA corporate bonds (*id*. ¶ 335) is contrary to the Plan's terms. Plan Amendment No. 5 dictated that "after Closing, Trust Assets *will be invested* primarily in investments *designed to preserve principal* consistent with the requirements of ERISA." *Id*. ¶ 143 (emphasis added). Plaintiffs further acknowledge that the New ESOP Committee consulted with an outside investment professional before deciding to invest in short-term treasuries. *Id*. ¶ 179. Because Count X fails to plausibly allege that the Committee acted imprudently by following the Plan's terms, it must be dismissed.

Section 404(a)(1)(D) of ERISA requires plan fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA's requirements. 29 U.S.C. § 1104(a)(1)(D). Indeed, had the Committee members disregarded the Plan's terms and exposed the Plan's assets to market risk, they would doubtless face a fiduciary breach claim if the market turned against them. *See Dudenhoeffer*, 134 S. Ct. at 2470 (if a fiduciary "keeps investing and the stock goes down he may be sued for acting imprudently in violation of § 1104(a)(1)(B), but if he stops investing and the stock goes up he may be sued for disobeying the plan documents in violation of § 1104(a)(1)(D)"); *accord Quan*, 623 F.3d at 881-82, *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459.

Although ERISA's duty of prudence may trump plan terms, it does not require clairvoyance. Rather, it requires fiduciaries to act "with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) (emphasis added). Courts applying this standard must determine whether the fiduciaries "at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*,

14

716 F.2d 1226, 1232 (9th Cir. 1983). The "focus [is] on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

The Amended Complaint's *sole* factual allegation concerning the Committee members' investment decision making process is fully consistent with prudent conduct – they consulted an outside investment professional. FAC ¶ 179. Plaintiffs allege no facts from which it can plausibly be inferred the process was "flawed." *Braden*, 588 F.3d at 596 (plaintiffs must plead facts "directly address[ing] the process by which the Plan was managed," or from which it can be reasonably inferred "the process was flawed").[11] To the contrary, the Amended Complaint's allegations show the investment in short-term treasuries is precisely what one would expect from a prudent process. *See Braden*, 588 F.3d at 597.

Under the circumstances, investing the Plan's assets in short-term treasuries was both prudent and in keeping with the Plan's terms. Plan Amendment No. 5 not only required plan assets be invested to preserve principal, it *terminated* the Plan as of October 1, 2014, and set a schedule for distributing those assets in the near term. Ex. 1, Amend. No. 5, ¶ 15; FAC ¶ 144. On October 17, 2014, Plaintiffs were informed that the first distribution, consisting of 75% of trust assets, would occur in November 2014, shortly after closing, and the remainder within 12-18 months, pending a favorable IRS determination letter.[12] *Id.* ¶ 151. Given the Plan's liquidity

---

[11] *See also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 720 (2d Cir. 2013), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. at 2468; *White v. Chevron Corp.*, 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) (where direct evidence of the fiduciaries' process is lacking, "plaintiff must at a minimum plead facts that give rise to a 'reasonable inference' that the defendant committed the alleged violation").

[12] The first distribution was made in November/December 2014 as planned. *Id.* ¶¶ 203-08. The IRS issued its letter in spring 2016, *see id.* ¶ 173; the second distribution was July 2016; and the third, final one in October 2017. *Id.* ¶¶ 203-08.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

need, no inference of imprudence can be drawn from a decision, after consultation with an investment advisor, to safely invest the Plan's assets as directed by the Plan's terms, rather than in riskier investments which exposed the Plan and participants to potential loss of principal.

The situation confronting the Committee was similar to that faced by the fiduciaries in *Flanigan v. GE*, 242 F.3d 78 (2d Cir. 2001). There, plaintiffs alleged GE breached its fiduciary duty by investing $1 billion in pension assets in low-interest, 90-day U.S. Treasury Bills in anticipation of transferring that amount to another pension fund in the sale of one of its divisions. *Id.* at 86. The Second Circuit sided with GE, concluding the investment "eliminated the risk that the GE plan trustees would, in the event of a market downturn, have to liquidate substantial additional plan assets" to make the transfer. *Id.* No different conclusion should be reached here.

## V.   COUNTS XI AND XII FAIL TO STATE A DERIVATIVE LIABILITY CLAIM AGAINST ANY REPUBLIC DEFENDANTS

### A.   Any Conduct of Individual Republic Defendants Prior to the October 1, 2014 Transaction Is Not Actionable

ERISA § 409(b) provides that a fiduciary has no liability for any breach "committed before he became a fiduciary or after he ceased to be a fiduciary." Counts XII must be dismissed to the extent it is based on conduct before Defendants Black, Ellingsen, and Eggleston became fiduciaries. This includes any claim that these Defendants knew of and failed to take reasonable steps to remedy alleged pre-October 1, 2014 breaches by GreatBanc or any other fiduciary. *See* FAC ¶ 361.[13] It also includes any co-fiduciary liability claim, under either ERISA

---

[13] The Complaint also fails to plausibly allege that Defendants Black, Ellingsen, and Eggleston *knew* of any pre-October 1, 2014 breaches committed by GreatBanc or any other fiduciaries, much less indicate what steps could have been taken *after* October 1, 2014 to remedy any such breaches.

§ 405(a)(1) or (2), 29 U.S.C. § 1105(a)(1) or (2), for having knowingly participated in or enabled an alleged breach before that date. *DeFazio v. Hollister, Inc.*, 854 F. Supp. 2d 770, 804 (E.D. Cal. 2012), *aff'd sub nom. DeFazio v. Hollister Emp. Share Ownership Trust*, 612 F. App'x 439 (9th Cir. 2015) ("ERISA [§ 409(b)] clearly limits liability to the time in which a defendant served as a fiduciary").

## B.   Plaintiffs' Post-Transaction Monitoring and Co-Fiduciary Claims Fail with Their Underlying Fiduciary Claims

Plaintiffs' Count XI monitoring and Count XII co-fiduciary liability claims against the Republic Committee Defendants must be dismissed because the Amended Complaint plausibly alleges no underlying fiduciary breach by GreatBanc or anyone else after October 1, 2014. *See* FAC ¶¶ 346, 349, 360, 363-64; *see also Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor … absent an underlying breach of" ERISA duties); *Patterson v. Capital Grp. Cos., Inc.*, 2018 WL 748104, at *6 (C.D. Cal. Jan. 23, 2018) (same); *Romero v. Nokia, Inc.*, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (co-fiduciary liability requires "at least one underlying [fiduciary] breach"). Count IV identifies no actionable non-disclosure by GreatBanc or the New ESOP Committee Defendants, *see supra* at 11-13, and the ERISA § 104(b)(4) violation Count IX alleges is not cognizable as a fiduciary breach claim. *See supra* at 10.

Indeed, Plaintiffs' derivative liability claims against the Committee Defendants are little more than an attempt to evade § 409(b)'s plain terms and impose liability on them for actions before they became fiduciaries. The best evidence of this is Plaintiffs' assertion that the Committee Defendants somehow have co-fiduciary liability for GreatBanc's alleged failure to properly manage a chose in action against Defendants Moffatt and Shuman, a claim asserted directly against GreatBanc in Count VIII. Even apart from Plaintiffs' failure to state a

plausible underlying claim,[14] the Rainbow corporate transactions on which the Moffatt and Shuman claims are based took place more than four years *before* Republic acquired the ESOP's stock. The Amended Complaint fails to plausibly allege that the New ESOP Committee Defendants had any knowledge of those transactions, much less the role Moffatt and Shuman played in them. Moreover, by the time the Republic Committee Defendants assumed any fiduciary duties to the ESOP, the ESOP had no claim to bring regarding those dated transactions – because the ESOP was no longer a Rainbow shareholder, it had no standing to pursue any derivative corporate remedies. *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1114 (2008). And in all events, any such corporate fiduciary suit would have been time-barred. Cal. Civ. Proc. Code § 343. To suggest they somehow face fiduciary liability for GreatBanc's actions stands ERISA § 409(b) on its head.

Plaintiffs' claim that the New ESOP Committee Defendants face derivative liability for the short-term treasury investments challenged in Count X is even further afield. As demonstrated *supra* at 13, the Amended Complaint fails to state a plausible claim regarding those investments. Plaintiffs' assertion that GreatBanc could be liable for its role in those investments rests on a strained and ultimately irrelevant reading of the Trust Agreement. While Plaintiffs quibble over whether certain Trust Amendments transformed GreatBanc from a directed to a discretionary trustee, FAC ¶¶ 322, 329, they ignore Amendment No. 3 of the Trust Agreement which expressly provides that "Following the Closing of the sale of all ... Company [Stock] held in Trust, the Trustee's fiduciary authority with respect to the Plan shall be that of a directed trustee …" *See* Ex. 3, Amend. No. 3 ¶ 2.[15]

---

[14] The Republic Defendants incorporate by reference GreatBanc's motion to dismiss as to Count VIII.

[15] This provision is consistent with Plan Amendment No. 5, which provides that "Effective at and after the Closing, Trust Assets will be invested primarily in investments designed to preserve principal." Ex. 1, Amend. No. 5 ¶ 8.

18

### C.   Counts XI and XII Allege No Facts Demonstrating a Deficient Monitoring Process or a Co-Fiduciary Breach

Counts XI and XII are conclusory and require dismissal even if Plaintiffs plausibly alleged a breach by GreatBanc or any other fiduciary. DOL regulations require a showing that the monitoring fiduciary "failed to review the performance of its appointees at reasonable intervals" and in a manner "reasonably expected to ensure compliance with the terms of the plan and statutory standards." *In re Calpine Corp.*, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) (citing 29 C.F.R. § 2509.75-8, FR-17) (dismissing claim lacking such allegations). Here, Plaintiffs fail to plausibly allege facts supporting an inference that the monitoring process was deficient. They speculate the individual Republic Defendants "knew" or "should have known" a list of alleged breaches by GreatBanc, but allege nothing from which an inadequate monitoring process can be inferred. *See* FAC ¶¶ 346-48.

Plaintiffs likewise make no plausible allegation in Count XII that any individual Republic Defendant knew of or enabled a breach by another fiduciary. *See* FAC ¶¶ 359-61. To state a §§ 405(a)(1) or (3) "knowing participation" or "failure to remedy" claim, a plaintiff must allege "actual, rather than constructive, knowledge." *Carr v. Int'l Game Tech*, 770 F. Supp. 2d 1080, 1097 (D. Nev. 2011) (citing *LeBlanc v. Cahill*, 153 F.3d 134, 151-52 (4th Cir. 1998)); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1963) (Section 405 requires "actual knowledge"). To state an enabling breach under § 405(a)(2), a plaintiff must allege sufficient facts that a fiduciary "failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." *Carr*, 770 F. Supp. 2d at 1097.

Plaintiffs' conclusory allegations about fellow Committee members' actions (FAC ¶ 359) simply "parrot" statutory language. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that "parrot" the statute "are not well-pleaded facts; they are simply ... legal conclusions"); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1237-38 (D. Kan. 2004). Though Plaintiffs

19

seek to impose co-fiduciary liability on the individual Republic Defendants for alleged pre-October 1, 2014 breaches by GreatBanc or others (FAC ¶ 361), the Complaint plausibly alleges no *actual* knowledge of such breaches. *See Carr*, 770 F. Supp. at 1097 (dismissing §§ 405(a)(1) and (3) claims where "allegations [were] devoid of specific facts, even in the most favorable light, which tend to show any particular Defendant was a knowing participant in another's putative breach").

Plaintiffs' allegations that the individual Republic Defendants had the actual knowledge required to sustain a claim for knowing participation with respect to GreatBanc's post-October 1, 2014 disclosures are likewise conclusory. *See* FAC ¶ 362(a) (alleging Defendants "knew or were reckless in not knowing"). Again, Plaintiffs' allegations about Committee members' actions largely "parrot" the statute. In any event, asserting Defendants "had knowledge" of GreatBanc's alleged breach "because they had knowledge of the full truth" falls well short of alleging sufficient knowledge of a breach so as to trigger a duty to remedy. *See DeFazio*, 854 F. Supp. 2d at 817; *Cunningham*, 716 F.2d at 1475 ("[T]he fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach.") (quoting H.R. Rep. No. 1280, 1974 U.S.C.C.A.N. 5038, 5080).

## VI.   COUNT XIII FAILS TO STATE A CLAIM AGAINST REPUBLIC FOR KNOWING PARTICIPATION IN ANY BREACHES

Count XIII improperly seeks to impose knowing participation liability on Republic under ERISA § 502(a)(3) for purchasing the ESOP's Rainbow stock. Imposing such liability on a counterparty to a purchase or sale transaction with an ERISA plan in a case like this, where the counterparty is a complete stranger to the plan, makes no sense whatsoever. Doing so would make it nearly impossible for ERISA plans to enter into commercial transactions with unrelated third parties.

The case law does not support extending ERISA § 502(a)(3) knowing participation liability to an unrelated third party like Republic. The Supreme Court

20

has held a non-fiduciary "party in interest" to a plan can be a proper § 502(a)(3)
defendant where it allegedly has induced a plan fiduciary to enter into a prohibited
transaction.[16] *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530
U.S.238, 242-43 (2000); *Pette v. Int'l Union of Operating Eng'rs*, 2016 WL
4596338, at *8 (C.D. Cal. Sept. 2, 2016) (noting *Harris Trust* defendant's "active
role" in inducing breaches). No "party in interest" liability can be imposed here
because Republic – an arm's length purchaser – does not fit the statutory definition
of a party in interest. 29 U.S.C. § 1002(14). Nor do Plaintiffs allege otherwise.

The Ninth Circuit recently confirmed the well-established rule that a party
negotiating at arm's length with a plan owes no fiduciary duty to the plan and is
free to act in its own adversarial self-interest, even when negotiating a contract to
provide services and become a party in interest. *Santomenno v. Transamerica Life
Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) ("absurd results" for contrary rule:
service providers "would have to promise that its fees were no higher than those of
any competitor, rather than negotiate at arm's length with an employer").

Crediting Plaintiffs' § 502(a)(3) knowing participation claim against an
unrelated third party like Republic, simply for contracting to purchase stock from
an ESOP, would countermand this line of cases and leave parties unwilling to enter
contracts with ESOPs or other plans. *Cf. Harris Trust*, 530 U.S. at 252 ("ERISA
should not be construed to require counterparties to transactions with a plan to
monitor the plan for compliance with each of ERISA's intricate details"); *see
Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, 2016 WL 7626446, at
*5 (C.D. Cal. Sept. 30, 2016) (dismissing knowing participation claim).

---

[16] Under ERISA § 3(14), a "party in interest" includes:  (i) a party who has a
direct relationship to the plan, regardless of whether it is a fiduciary, *e.g.*, the plan
sponsor or a plan service provider; and (ii) a party with no direct relationship to the
plan who is related to direct parties in interest by ownership or otherwise, *e.g.*, an
affiliate of the plan sponsor or a plan service provider. 29 U.S.C. § 1002(14).

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

Even if "knowing participation" liability could be extended to non-fiduciary, non-parties in interest, Plaintiffs fail to plead sufficient facts to satisfy the plausibility standard. Their only allegation regarding knowledge is that Republic knew of certain alleged breaches because it "knew the terms of the transaction" *and conducted due diligence* (FAC ¶¶ 368-72). This is indistinguishable from an allegation that Republic "knew or should have known" of those breaches. This Court recently dismissed a claim based on just such a conclusory allegation. *Urakhchin*, 2016 WL 4507117, at *8.[17]

Plaintiffs' allegations regarding Republic's participation in purported breaches are just as threadbare. Plaintiffs allege that other defendants committed breaches or prohibited transactions *before* the stock sale,[18] and in some cases *years* before. FAC ¶ 372(e). Their sole allegation regarding Republic's "participation" is that Republic "proceeded to close the transaction." *Id.* ¶ 373. Far from inducing these alleged breaches or prohibited transactions, Republic at most transacted at arm's length with an experienced institutional trustee that was acting as an independent fiduciary on the Plan's behalf. No case has extended knowing participation liability under ERISA § 502(a)(3) that far. Indeed, this Court rejected a more modest attempt to extend § 502(a)(3) to a party in interest that failed to make contributions to a plan and knowingly acquiesced in the plan fiduciaries' ongoing failure to recover such contributions. *Pette*, 2016 WL 4697338, at *8 ("mere, albeit knowing, acquiescence [to Trustees' inaction] is insufficient to establish participation in that alleged breach").

---

[17] Plaintiffs allege individual employees' knowledge should be imputed to Republic, FAC ¶ 374, but all became involved only *after* the transaction closed.

[18] *See* FAC ¶ 372(a) (alleging sale was not for adequate consideration); *id.* ¶¶ 213-224 (alleging failure to secure appropriate valuation prior to close); *id.* ¶ 372(e) (alleging corporate fiduciary breaches); *id.* ¶ 294 (alleging breaches that arose in 2010 and 2011); *see also supra* at 18.

§ 502(a)(3) authorizes only traditional equitable relief, not money damages. *See Mertens*, 508 U.S. at 256 (Section 502(a)(3) authorizes only equitable relief, not compensatory damages); *accord Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 136 S. Ct. 651, 660 n.3 (2016) (reaffirming *Mertens*). Plaintiffs' demand for rescission of the stock sale (FAC at 121) is a non-starter – nowhere does the Amended Complaint suggest all ESOP participants are willing and able to return all consideration Republic paid for the stock. *Independent Film Dev. Corp. v. Arriva Capital, LLC*, 2012 WL 13008981, at *4-5 (C.D. Cal. July 30, 2012) (true rescission "returns to the defendant the subject of the transaction, plus any other benefit received under the contract") (quoting *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031 (9th Cir. 1999)).

Plaintiffs' requests for a constructive trust on "proceeds received by Republic Service in the sale" and disgorgement of profits (FAC at 121) are equally inapt. Republic received no monetary proceeds in the sale – it purchased a 100% ownership interest in a going concern that has since been integrated into its own business operations. Though they call it disgorgement of profits, what Plaintiffs actually seek is money damages from Republic's general assets. ERISA does not provide for such relief. *Urakhchin*, 2016 WL 4507117, at *8 (accounting of profits not an equitable remedy when pursued against non-fiduciary); *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 419 (3d Cir. 2013) ("disgorgement and accounting for profits are essentially the same remedy").

## VII. COUNT XIV FAILS PLAUSIBLY TO ALLEGE ANY FIDUCIARY BREACH REGARDING THE INDEMNIFICATION PROVISIONS

Count XIV alleges the indemnification provisions in the Plan and the engagement agreement with GreatBanc relieve Defendant Committee members and GreatBanc of fiduciary liability to the ESOP and are void as against public policy under ERISA § 410, 29 U.S.C. § 1110. *See* FAC ¶¶ 380-83. But this Court has upheld an indemnification provision involving GreatBanc that is materially

23

indistinguishable from the provisions challenged here. *Harris v. GreatBanc Trust Co.*, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013).[19]

Like the Harris indemnification provision, the provisions in this case are worded to ensure no conflict with ERISA. In the Plan, the Company agrees to indemnify each Committee member "to the extent permitted by law." Ex. 1, § 17(g). And the Successor Trustee Agreement is "subject to the applicable provisions of ERISA" and bars Company indemnity if the Trustee breaches an ERISA fiduciary duty. Ex. 4, July 2014 Amend. ¶ 6. *Harris* upheld indistinguishable language in part because it made no indemnification available for a breach of ERISA fiduciary duty. *Compare Harris*, 2013 WL 1136558, at *1 (quoting indemnification language), *with* Ex. 4, July 2014 Amend. ¶ 6.

DOL regulations make clear that an ESOP-owned company *can* indemnify fiduciaries: an employer may indemnify; only a plan may not. *See* 29 C.F.R. § 2509.75-4 (allowing "[i]ndemnification of a plan fiduciary by (a) an employer, any of whose employees are covered by the plan"); *Harris*, 2013 WL 1136558, at *3. Plaintiffs try to skirt this by charging the Plan was ultimately responsible because it owned the Company's shares before the transaction. *Harris* rejects this very argument. *Id.* at *2. No indemnification will be paid out of the ESOP's assets, under DOL regulations, those assets *do not* include the underlying assets of Rainbow. *See* 29 C.F.R. § 2510.3-101(h)(3) (plan's assets do not include wholly-owned company's assets if plan is an ESOP defined in ERISA § 407(d)(3)).

Finally, Count XIV fails because the Plan no longer owns Rainbow. Any indemnification would now be paid by Republic, which the Plan has never owned.

---

[19] Count XIV must also be dismissed because no Republic Defendant is alleged to have negotiated the trustee agreement.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, the Republic Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety as to them.

Dated: March 21, 2018                    STEPTOE & JOHNSON LLP


By:   */s/ Edward Gregory*
      Edward Gregory, CSBN 128375
      Paul J. Ondrasik, Jr. (*pro hac vice*)
      Eric G. Serron (*pro hac vice*)
      Andrew Sloniewsky (*pro hac vice*)
      Linda C. Bailey (*pro hac vice*)
      Osvaldo Vazquez (*pro hac vice*)

      Attorneys for the Republic Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RAINBOW DISPOSAL CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, BLACK, ELLINGSEN, EGGLESTON, AND REPUBLIC SERVICES, INC.'S MOTION TO DISMISS**