UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
    Committee et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

    Terry Guerrero                                     N/A
    Deputy Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

    Not Present                                  Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER DENYING DEFENDANTS'
          MOTIONS TO DISMISS (Docs. 73, 75, 77, 78, 83)**

    Before the Court are five Motions to Dismiss filed by Defendants.[1]  Plaintiffs[2]
opposed in a single omnibus brief, (Opp., Doc. 95), and Defendants filed separate replies.
(Docs. 101–105.)  Having reviewed the parties' papers and taken the Motions under
submission,  the Court DENIES Defendants' Motions.

I.  **BACKGROUND**

    Plaintiffs bring this purported class action pursuant to the Employee Retirement
Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*  Plaintiffs are
participants and beneficiaries of the Rainbow Disposal Co., Inc. Employee Stock
Ownership Plan who seek to "restore losses to the Plan and to remedy Defendants'
breaches of fiduciary duty … ."  (FAC ¶ 4, Doc. 57.)

---

[1]Moving Defendants are Gerald Moffatt (Doc. 73); Gregory Range (Doc. 77); GreatBanc
Trust Company (Doc. 75); Rainbow Disposal Co. (Doc. 83); and Jon Black, Bill Eggleston,
Catharine Ellingsen, Rainbow Disposal Co. Employee Stock Ownership Plan Committee, and
Republic Services, Inc. (collectively, the "Republic Defendants") (Doc. 78).  The Moving
Defendants also joined in each other's Motions, and Defendant Jeff Snow joined in Moffatt's
Motion (*see* Doc. 74.)
[2]Plaintiffs are Antonio Hurtado, Christopher Ortega, Jose Quintero, Maritza Quintero,
Jorge Urquiza, and Maria Valadez.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.

### A.      The Rainbow ESOP

Rainbow Disposal Co. ("Rainbow"), formed in 1970, was primarily engaged in the transport and disposal of "trash and rubbish materials" from residential and commercial properties.  (*Id.* ¶ 52.)  Rainbow's articles of incorporation, as amended in 2004, provided that all outstanding shares of Rainbow's capital stock were to be owned by: "(a) employees of the Corporation (or a subsidiary of the Corporation); (b) any trust, partnership or limited liability company with respect to which an employee of the Corporation (or a subsidiary of the Corporation) is treated as the owner of such shares for federal income tax purposes; (c) the Corporation's Employee Stock Ownership Plan and Trust; and/or (d) individuals or entities receiving such shares as a benefit distribution … ."  (*Id.* ¶ 59.)

On July 1, 1995, Rainbow established the Rainbow Employee Stock Ownership Plan (the "Plan").  (*Id.* ¶ 53.)  The Plan held 100% of Rainbow's stock.  (*Id.* ¶ 5.)  The Plan was governed by the "Plan Document," which was restated most recently in 2004. (*Id.* ¶ 53; *see* Plan Document, Doc. 75-2.)  The Plan Document included the following relevant provisions.

Section 5(a) required that the Trust Assets were to be invested by the Trustee "primarily (or exclusively) in Company Stock … ."  (Plan Doc. § 5(a).)  Indeed, 97% of the Plan's assets constituted Rainbow stock.  (FAC ¶ 84.)  Section 5(d) required that any sale of stock held by the Plan "must be made at a price not less than the Fair Market Value as of the date of the sale."  (Plan Doc. § 5(d).)  Fair Market Value was in turn defined as "[t]he fair market value of Company Stock, as determined by the Trustee … based upon a valuation by an independent appraiser (within the meaning of Section 401(a)(28)(C) of the [Internal Revenue] Code."  (*Id.* § 2 at 5.)

Section 8 provided that Plan Participants were entitled to direct the Trustee to vote their shares of stock on "any corporate matter which involves the voting of such shares at a shareholder meeting and which constitutes a merger, consolidation, recapitalization, reclassification, dissolution, sale of substantially all assets of a trade or business or a similar transaction as specified in regulations under Section 409(e)(3) of the [Internal Revenue] Code."  (*Id.* § 8.)  In March 2009, Plan Participants received a Summary Plan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

Description (the "2009 SPD"), which summarized Section 8 as follows: "In certain important corporate matters, … such as a merger or liquidation of the Company, [Plan Participants] may have the right to decide how shares of Company Stock allocated to your Company Stock Account will be voted."  (FAC ¶ 110.)

         Section 17 governed administration of the Plan and designated Rainbow as the Plan Administrator.  (*See* Plan Doc. § 17(h).)  Subsection (a) provided that a Committee appointed by Rainbow's Board of Directors (the "ESOP Committee") would serve as a fiduciary of the Plan with authority to control and manage its operation and administration.  (*Id.* § 17(a).)  Subsection (c) provided that the ESOP Committee was responsible for directing the Trustee as to the investment of the Trust Assets.  (*Id.* § 17(c).)  Finally, subsection (g) provided that Rainbow would "indemnify each member of the Committee (to the extent permitted by law) against any personal liability or expense … resulting from his service on the Committee, except such liability or expense as may result from his own willful misconduct."  (*Id.*  § 17(g).)

         The Plan Document also established a Trust, which was administered pursuant to the Trust Agreement.  (Trust Agreement, Doc. 75-10.)  Paragraph A required that the trust assets be held in trust by the Trustee and that the Trustee invest those assets as directed by the ESOP Committee.  (*Id.* ¶ A.)  Further, Rainbow's Board of Directors was permitted to directly engage the Trustee to act, so long as the Trustee independently determined that the Board's instructions were "fair and reasonable and in the best interests of the Participants."  (*Id.* ¶ B(6).)

         In 2002, GreatBanc was hired as the Trustee of the Plan pursuant to the "Trustee Engagement Agreement," and has since acted as the sole Trustee.  (FAC ¶¶ 114–115; *see* Trustee Engagement Agreement, Doc. 75-8.)  The Trustee Engagement Agreement was amended in 2014 to include an indemnification provision, which provided that Rainbow was to indemnify the Trustee "for any loss, cost, expense, or other damage, … [except] to the extent that any loss, cost, expense, or damage … is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees or from the violation or breach of any fiduciary duty imposed under ERISA

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

_____

… .”  (2014 Trustee Engagement Amendment § 6, Doc. 75-9.)  Further, the indemnification provision permitted Rainbow to advance defense costs to the Trustee, so long as the Trustee "ma[de] arrangements reasonably satisfactory" to ensure reimbursement to Rainbow if the it was ultimately determined ineligible for indemnification.  (*Id.*)

### B.    Factual Allegations

The First Amended Complaint makes the following factual allegations:

By no later than 2009, Rainbow was under the management of Defendant Gerald Moffatt, the Executive Chairman; Defendant Jeff Snow, the President; and non-party Bruce Shuman, the Chief Executive Officer.  (FAC ¶¶ 17–18, 35, 65.)

In early 2010, Shuman and Moffatt formed an entity called Southeast Renewables, LLC ("Southeast Renewables"), which engaged in the same business activities as Rainbow.  (*Id.* ¶ 66.)  Shuman, Moffatt, and Rainbow each held ownership interests in Southeast Renewables, but Rainbow was the sole member to provide capital for the venture.  (*Id.* ¶¶ 67–70.)  In May 2010, Moffatt and Shuman "caused Rainbow Disposal to form West Florida Recycling," which worked jointly with Southeastern Renewables on many projects but failed to ever turn a profit.  (*Id.* ¶¶ 72–75.)  Southeastern Renewables then purchased West Florida Recycling, and West Florida Recycling thereafter filed for bankruptcy.  (*Id.* ¶ 77.)  Rainbow lost the $6 to $8 million investment it had contributed to West Florida Recycling, which "resulted in decreases to the value of the Rainbow stock" held by Plan.  (*Id.* ¶ 78.)  Moreover, because of these investments, Rainbow was unable to satisfy its outstanding debt obligations, which caused the value of its stock to further decrease.  (*Id.* ¶¶ 79–80.)

On July 10, 2014, Moffatt, on behalf of Rainbow and the Plan, amended the Trustee Engagement Agreement and expanded GreatBanc's authority to allow it to "review a proposed transaction involving a sale of all of the issued and outstanding stock of the Company to Republic Services."  (*Id.* ¶¶ 132–33.)  Then, on August 25, 2014, Moffatt executed Amendment 4 to the Plan Document, which provided that "the Trustee shall have the discretionary authority (without directions from the ESOP Committee, the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
         Committee et al.

Board of Directors or any other party) to: (i) sell all or substantially all of the outstanding shares of the Company to a third party in a change of control transaction, and (ii) execute and deliver instruments to effect such a sale."  (*Id.* ¶ 135; *see* Amendment 4 to Plan Doc., Doc. 75-6.)  There is no indication that Amendment 4 was adopted in conformance with Section 20's requirement that the Board of Directors approve any amendment to the Plan. (FAC ¶ 136.)

The following day, Republic Services, Inc. ("Republic"), the Plan, and Rainbow entered into a Stock Purchase Agreement, setting forth that Republic Services would purchase all of the outstanding Rainbow stock from the Plan contingent upon a closing of the sale, effective October 1, 2014 (the "October 2014 transaction").  (*Id.* ¶ 137.) Attached to the Stock Purchase Agreement was a document entitled "Unanimous Written Consent of the Board of Directors" signed by Defendants Moffat, Snow, and Range.  (*Id.*)

The sale closed on October 1, 2014, and Republic acquired all of the shares of Rainbow "either 'for the net proceeds of $50,829,073' according to the 2014 Form 5500 filed with the [Department of Labor] on April 18, 2016' or '$48,815,131.29'" according to a later letter written by the ESOP Committee to Plan Participants.  (*Id.* ¶ 138.)  The 2014 Form 550 also stated that an additional $16,800,000 was placed in an escrow account pursuant to a "holdback arrangement" whereby the proceeds were to be distributed to Plan Participants over the 36-month period ending October 1, 2017.  (*Id.*)

Also on October 1, 2014, Moffatt executed Amendment 5 to the Plan Document and Amendment 3 to the Trust Agreement.  (*Id.* ¶¶ 139–40.)  Amendment 5 to the Plan Document stated that the Fair Market Value definition of Section 2 and the voting requirements set forth in Section 8 were no longer effective.  (*Id.* ¶ 140; *see* Amendment 5 to Plan Doc. § 1, Doc. 75-7.)  Moreover, Amendment 5 provided that after the closing of the October 2014 transaction, Trust assets were to "be invested primarily in investments designed to preserve principal consistent with the requirements of ERISA." (FAC ¶ 143; Amendment 5 to Plan Doc. § 8.)  Amendment 3 to the Trust Agreement provided that the Trustee may act "without direction from the ESOP Committee with respect to matters related to … the Stock Purchase Agreement."  (FAC ¶ 145; *see* Amendment 3 to Trust Agreement § 2, Doc. 75-13.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
       Committee et al.

On October 3, 2014, Plaintiffs and other Plan Participants received a letter signed by GreatBanc, which stated that "all of the stock in the ESOP had been sold to Republic" pursuant to a "lengthy sale process in which the Company sought and received substantial offers from multiple bidders … ."  (FAC ¶ 147.)  The letter also advised Plan Participants that they would receive "75% of their closing cash allocation" and that the remaining 25% would be distributed to Plan Participants upon the IRS's approval of termination of the Plan.  (Id. ¶ 148.)  The letter did not set forth "(a) the sale price of the ESOP's stock, (b) any assessment of the fair market value of the stock, as assessed by an independent appraiser, (c) any further details of the sale, (d) whether any consideration was provided other than purchase of the Rainbow ESOP stock, (e) [] information that the prior ESOP fiduciaries had resigned on October 1, 2014 or (e) the names or contact information … of the new fiduciaries or any contact information of anyone from whom they could ask questions about the status of their ESOP accounts."  (Id. ¶ 149.)

The same day, the ESOP Committee, now comprised of Defendants Black, Ellingson, and Eggleston (the "New ESOP Committee") held a meeting in which it determined that the Plan assets, roughly $14.9 million, should remain invested in Goldman Sachs Treasury obligations for a period of six to nine months.  (Id. ¶¶ 25, 179, 182.)  However, the Plan assets ultimately remained invested in the Treasury bonds for nearly three years until they were distributed to Plan Participants.  (Id. ¶ 258(m)–(n).)

The next communication to Plan Participants about the sale was dated October 17, 2014, and informed Plan Participants that the Plan's stock had been sold at a price of $17.66 per share and that Plan Participants would receive the "cash equivalents for stock allocated to them" in three separate payments.  (Id. ¶¶ 150–151.)  The $17.66 share price assumed that the ESOP would receive "nearly all of the $16,800,000 placed in escrow" and the October 17, 2014 letter did not disclose that the Plan Participants were "highly unlikely" to receive that maximum amount.  (Id. ¶ 153.)

On October 21, 2014, Rainbow filed the "Amended and Restated Articles of Incorporation," (the "Restated Articles"), eliminating the requirement that Rainbow be employee owned.  (Id. ¶ 146.)  The Restated Articles recited that they had been approved by shareholder vote, but no vote was actually held.  (Id.)

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                           Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
   Committee et al.

_____

Then, on October 31, 2014, Republic filed a Form 10-Q with the Securities &
Exchange Commission, in which it disclosed the October 2014 transaction as being "for
$112 million in cash" in addition to the following consideration: "agreements not to
compete, along with other restrictive covenants with key executives.  We also assumed
capital lease agreements for operational facilities in Southern California.  Rainbow's
operations in Southern California include hauling routes, a recycling facility, a transfer
station, a compressed natural gas (CNG) refueling station, and a CNG-powered vehicle
fleet." (*Id.* ¶ 156.)  Republic's later 2014 10-K Report stated that the purchase price was
allocated between property and equipment, intangible assets, goodwill "expected to arise
from other assets acquired …" and approximately $18.9 million in liabilities.  (*Id.* ¶¶
167–168.)

Around the same time, Republic issued a press release regarding the sale and
stated that Republic acquired Rainbow's "business and facilities," including its "hauling
routes in Huntington Beach, Fountain Valley, Midway City, Westminster, Orange
County, Newport Beach, and Irvine as well as a recycling facility, a transfer station, 'a
compressed natural gas (CNG) refueling station, and a vehicle fleet."  (*Id.* ¶ 155(a).)
Moreover, "[a]s part of the transaction, the primary principals at Rainbow, Jerry Moffatt
and Jeff Snow, have joined Republic Services, and will now lead a newly created
business unit … ."  (*Id.* ¶ 155(b).)

In November 2014, Plan Participants received "Notice to Interested Parties,"
advising that Republic would apply to the IRS for a determination on whether the Plan
met the qualifications for termination as set forth in the Internal Revenue Code (the
"IRC").  (*Id.* ¶ 158.)  Around the same time, Plaintiff Chris Ortega sent a letter to the Plan
Administrator requesting certain documents pertaining to the Plan pursuant to ERISA.
(*Id.* ¶ 183.)  Defendant Jon Black responded without identifying his position or
relationship to the Plan and refused to provide any documents, including the Plan
Document or the most recent summary plan description.  (*Id.* ¶ 184.)  Ortega sent another
letter repeating his requests, and Black responded on law firm letter head (though he has
no association with the firm and is not a lawyer), claiming that some of the requested

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.
_____

documents were "confidential."  (*Id.* ¶ 186.)  He also produced some documents without
substantively identifying them.  (*Id.*)

On January 20, 2015, Ortega's counsel sent yet another letter to Black, which
specifically requested the valuation report that GreatBanc relied upon in determining the
fair market valuation of Rainbow's stock for the October 2014 transaction.  (*Id.* ¶ 187.)
Counsel for Black responded and provided a "valuation of [Rainbow] as of June 30,
2014," which reflected a $16.67 price per share (the "June 2014 valuation").  (*Id.* ¶¶ 188,
203.)

One year later, in November 2015, the ESOP Committee circulated to Plan
Participants an undated letter from GreatBanc, which disclosed that Republic had actually
paid a total purchase price of $112,000,000 in the October 2014 Transaction.  (*Id.* ¶ 171.)
Then, in April 2016, the ESOP Committee announced to Plan Participants that the IRS
had issued a favorable determination regarding termination of the Plan.  (*Id.* ¶ 173.)  A
few months later, Great Banc sent Plan Participants a letter stating that "issues related to
the $16.8 million in escrow had been resolved" and that the Plan would receive
$4,475,000 as its final payment.  (*Id.* ¶ 174.)  Plaintiffs Quintero and Ortega later
requested a copy of the "Escrow Settlement Agreement" from the ESOP Committee,
which refused to provide it.  (*Id.* ¶¶ 190–195.)

Finally, in August 2017, Plan Participants received a letter, which stated that they
could complete forms to take a distribution.  (*Id.* ¶ 175.)  The August 2017 letter enclosed
a Summary Plan Description that was dated October 2014 (the "2014 SPD"), which had
not been previously furnished to Plan Participants.  (*Id.* ¶ 176.)  The 2014 SPD identified
the ESOP Committee as the Plan Administrator.  (*Id.* ¶ 97.)

Ultimately, after all distributions had been made following the October 2014
transaction, Plaintiffs received approximately $15 per share, which is less than the $16.67
per share valuation as set forth in the June 2014 valuation and less than the $17.66 per
share valuation as set forth in the October 17, 2014 letter to Plan Participants.  (*Id.* ¶ 203.)

On September 15, 2017, Plaintiffs filed the instant action.  On February 28, 2018,
Plaintiffs filed the First Amended Complaint, alleging fourteen counts of violations of

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                     Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
       Committee et al.

ERISA.  (*Id.* ¶¶ 209–384).  Defendants, in various combinations, move to dismiss all
fourteen.

## II.  **LEGAL STANDARD**

When evaluating a Rule 12(b)(6) motion, the Court must accept as true all
allegations of material facts that are in the complaint and must construe all inferences in
the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384
(9th Cir. 1994).  If a complaint fails to state a claim as a matter of law, that is, if "it
appears certain that [the plaintiff] can prove no set of facts in support of his claim which
would entitle him to relief," the complaint is dismissed.  *Id.*

In ruling on a 12(b)(6) motion, a court may "consider certain materials—
documents attached to the complaint, documents incorporated by reference in the
complaint, or matters of judicial notice—without converting the motion to dismiss into a
motion for summary judgment."  *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d
1011 (C.D. Cal. 2015) (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir.
2003) (internal quotation marks omitted)).

## III.  **DISCUSSION**

### A.     **Count I**

Count I is brought against Moffatt as the Prior ESOP Committee Defendant[3] and
GreatBanc under ERISA § 404, 29 U.S.C. § 1104(a)(1), for relying on the June 2014

_____

[3] Plaintiffs' Opposition provides a chart that delineates which Defendants are included in the
particular groups identified in each Count.  (*See* Opp. at xxi–xxii.)  The "Prior Committee
Defendant" is Moffatt and the "New Committee Defendants" are Black, Ellingsen, and
Eggleston.  (*Id.*)  Therefore, contrary to the Republic Defendants' reading, the Court does not
read the FAC to allege Counts I, II, IV, VIII, X–XII and XIV against the ESOP Committee as a
separate entity.  (*See* Republic Mem. at 8.)  Count IX, however, is properly brought against the
ESOP Committee, as explained *infra*.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                         Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

==================================================================================

valuation to determine the fair market value of Rainbow's shares for the October 2014
transaction.  (FAC ¶¶ 209–226.)

      Defendants argue that Plaintiffs fail to state a claim because (1) the June 2014
valuation was not "stale" by the time of the October 2014 transaction, (GreatBanc Mem.
at 9–11, Doc. 75); and (2) no facts "plausibly support the inference" that the June 2014
valuation was an inaccurate appraisal or for less than market value at the time the sale
closed.  (*Id.* at 12; Moffatt Mem. at 6, Doc. 73-1.)

      Under § 404, a fiduciary act must act solely in the best interests of plan
participants by acting (1) "with the care, skill, prudence, and diligence … [of a] prudent
man acting in a like capacity and familiar with such matters" and (2) "in accordance with
the documents and instruments governing the plan … ."  29 U.S.C. § 1104(a)(1)(A), (B),
(D).  Thus, § 404 "focuses not only on the merits of the transaction, but also on the
thoroughness of the investigation into the merits of the transaction."  *Butler v. Dickerson
Employee Benefits Inc.*, No. CV 09-4279-JLS (PJWx), 2011 WL 13177000, at *4 (C.D.
Cal. May 2, 2011).  To satisfy § 404 when facilitating a transaction involving the sale of
plan assets, the fiduciary must conduct an "adequate inquiry into the proper valuation of
shares."  *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678–79 (7th Cir. 2016).

      The Court finds that Plaintiffs have adequately pleaded Count I by alleging that
reliance on the June 2014 valuation did not constitute a thorough investigation of the
merits of the sale price for the October 2014 transaction.  Defendants' arguments
ultimately concern whether reliance on a three-month-old valuation would be "prudent"
in the circumstances and whether the valuation was accurate as of the date of the sale.
(*See* GreatBanc Mem. at 10; Moffatt Mem. at 6.)  *See* 29 U.S.C. § 1104(a)(1)(B).  These
arguments are not amenable for resolution on a motion to dismiss.  Defendants "remain[]
free to move for summary judgment after discovery on the grounds that [their] process
for conducting a valuation of the stock was adequate."  *Allen*, 835 F.3d at 679.

      Because the Court finds that Plaintiffs have adequately pleaded Count I as to the
adequacy of the inquiry, the Court need not reach the parties' other arguments concerning
the interpretation of Section 5(d) and the IRC.  (*See* GreatBanc Mem. at 9–10.)

      Therefore, the Motions are DENIED as to Count I.

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                         Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.

---

B.      **Count II**

Count II is also brought against Moffatt as the Prior ESOP Committee Defendant
and GreatBanc under ERISA § 404, 29 U.S.C. § 1104, for their failure to require a Plan
Participant vote prior to the October 2014 transaction.  (FAC ¶¶ 227–243.)

Defendants argue that (1) Plan Participants were not entitled to a vote under the
Plan Document, (Moffatt Mem. at 7–8; GreatBanc Mem. at 12–13), and (2) Plaintiffs
lack standing to pursue this claim because they cannot show that the value of their shares
would have increased if the October 2014 transaction had not been approved, (GreatBanc
Mem. at 14–15).

As discussed above, § 404(a)(1) requires a plan's fiduciaries to act both prudently
and in accordance with the plan's governing documents.  29 U.S.C. § 1104(a)(1)(A)–(B),
(D).  Section 8 of the Plan Document, which tracks § 409(e)(3) of the IRC, requires a
shareholder vote for "a merger, consolidation, recapitalization, reclassification,
liquidation, dissolution, sale of substantially all assets of a trade or business or a similar
transaction specified in regulations under Section 409(e)(3) of the [Internal Revenue]
Code."  (FAC ¶ 229; Plan Doc. § 8.)

The Court finds that Plaintiffs' allegations raise the plausible inference that the
October 2014 transaction came within the purview of Section 8.  (*See* FAC ¶ 235.)
Plaintiffs allege that they received conflicting information regarding the terms of the sale.
Although the October 2014 transaction was represented to Plaintiffs as simply a stock
sale (*see id.* ¶ 147), Republic's press release, as alleged by Plaintiffs, indicated that the
deal encompassed far more than just stock: Republic claimed also to have acquired
Rainbow's "business and facilities," including its hauling routes, transfer and refueling
stations, vehicle fleet, and even its key executives.  (*Id.* ¶ 155.)  If Republic indeed
acquired all of the assets as set forth in the FAC, the deal may well have come within the
definition of a "sale of substantially all assets."[4]  (*See* Plan Doc. § 8.)

---

[4] In focusing on the allegations related to the possible asset sale, the Court does not mean to
foreclose the possibility that Section 8 required a shareholder vote even if the October 2014
transaction was merely a stock sale.  *See Jewel Companies, Inc. v. Pay Less Drug Stores Nw.,
Inc.*, 741 F.2d 1555, 1561 n.7 (9th Cir. 1984) (noting that California law "attempt[s] to treat all

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                      Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
       Committee et al.

At this stage of the case, Plaintiffs do not have access to the details of the October
2014 transaction, but they have told a sufficiently "plausible story" to support their claim.
*Allen*, 835 F.3d at 678.

Moreover, GreatBanc has not shown that Plaintiffs lack standing at this juncture.
Relying on *DeFazio v. Hollister*, 636 F. Supp. 2d 1045 (E.D. Cal. 2009), GreatBanc
contends that Plaintiffs cannot allege that it is "likely, and not merely speculative" that
the value of their shares would have increased if the October 2014 transaction had not
gone forward.  (GreatBanc Mem. at 15.)  However, as noted in *DeFazio*, measuring
losses to an ERISA plan requires reference to "expert testimony or other evidence
regarding investment returns during the relevant period."  *DeFazio*, 636 F. Supp. 2d at
1073.  Clearly, such a question should not be resolved at the pleadings stage.

Accordingly, the Motions are DENIED as to Count II.

## C.     Count III

Count III is brought under ERISA § 102(a) against the Pre-October 1, 2014 Plan
Administrator, which is Rainbow.  (FAC ¶¶ 95, 244–252.)  Plaintiffs allege that the 2009
SPD did not adequately and accurately apprise Plaintiffs of whether they had the right to
vote on the October 2014 transaction.  (*Id.* ¶ 250.)

Rainbow argues that Count III should be dismissed because (1) the 2009 SPD did
reasonably apprise Plaintiffs of their voting rights, and (2) Plaintiffs do not state a
plausible claim for appropriate equitable relief.  (Rainbow Mem. at 7, Doc. 83-1.)

ERISA § 102(a) requires that SPDs "be written in a manner calculated to be
understood by the average plan participant" and "be sufficiently accurate and
comprehensive to reasonably apprise such participants and beneficiaries of their rights
and obligations under the plan."  29 U.S.C. § 1022(a).  The regulations implementing
§ 102 require that the plan administrator must "tak[e] into account such factors as the
level of comprehension and education of typical participants in the plan and the

---

methods of corporate fusion identically" in order to prevent the "circumvention of shareholders'
voting and appraisal rights").  However, the Court need not make this determination before
Plaintiffs have had the opportunity to discover fully the terms of the October 2014 transaction.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
     Committee et al.

_____

complexity of the terms of the plan." 29 C.F.R. § 2520.102-2(a).  To enforce § 102, the
plaintiff must prove both "(1) that there is a remediable wrong, *i.e.*, that the plaintiff
seeks relief to redress a violation of ERISA or the terms of a plan, and (2) that the relief
sought is appropriate equitable relief."  *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d
945, 954 (9th Cir. 2014) (internal citations omitted).

      The 2009 SPD provided that Plan Participants "may have the right" to vote in
"certain important corporate matters."  (FAC ¶ 248.)  Plaintiffs allege that Plan
Participants, "would have and did understand that they had the right to vote" on the
October 2014 transaction from this single sentence.  (*Id.* ¶ 249.)  Whether the 2009 SPD
offered sufficient "clarity and completeness" to apprise Plan Participants of their voting
rights turns on factual considerations such as who is the "typical participant" in
Rainbow's Plan.  *See* 29 C.F.R. § 2520.102-2(a).  Moreover, resolution of Count III may
also depend on whether Plan Participants did, in fact, have a right to vote on the sale to
Republic.  To the extent that the 2009 SPD apprised Plan Participants that they did not
have such a right, as Rainbow implies, (*see* Rainbow Mem. at 6), then it may be an
inaccurate summation of Plan Participants' rights.  *See Layaou v. Xerox Corp.*, 238 F.3d
205, 211 (2d Cir. 2001) (reversing summary judgment where the SPD failed to describe
the "full import" of the plan's provisions).  Therefore, Plaintiffs have plausibly alleged a
remediable wrong.

      Moreover, Plaintiffs have identified appropriate equitable relief.  As the Ninth
Circuit recognized in *Skinner*, a plan administrator has a statutory duty "to provide
participants with an SPD that [is] sufficiently accurate and comprehensive to reasonably
apprise [them] of their rights and obligations under the plan."  *Skinner v. Northrop
Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).  Therefore, under a theory of
breach regarding the accuracy of the 2009 SPD, "the remedy of surcharge could hold
[Rainbow] liable for benefits it gained through unjust enrichment or for harm caused as
the result of its breach."  *Id.*  Whether Plaintiffs can ultimately prove unjust enrichment
or actual harm is a matter for summary judgment.  *See Gabriel*, 773 F.3d at 958.

      Accordingly, the Motions are DENIED as to Count III.

    **D.**    <u>**Count IV**</u>

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
    Committee et al.

Count IV is brought under ERISA § 404, 29 U.S.C. § 1104, against Moffatt as the Prior ESOP Committee Defendant; Black, Ellingsen, and Eggleston as the New ESOP Committee Defendants; and GreatBanc for their failure to make required disclosures about the October 2014 transaction.  (FAC ¶¶ 253–261.)

Defendants argue that their disclosures satisfied the disclosure requirements under ERISA (*see* GreatBanc Mem. at 17; Moffatt Mem. at 8–9; Republic Mem. at 11–12, Doc. 78-1) and that Plaintiffs have not shown that they were harmed by the inadequate disclosures, (Republic Mem. at 13.)

Although § 104 imposes disclosure obligations solely on plan administrators, *see* 29 U.S.C. § 1029(b)(4), § 404 extends to all fiduciaries "an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *King v. Blue Cross & Blue Shield of Illinois*, 871 F.3d 730, 744 (9th Cir. 2017).  This obligation is coextensive with the disclosure requirements under § 104.  *See Faircloth v. Lundy Packing Co*., 91 F.3d 648, 657 (4th Cir. 1996).

"A fiduciary breaches his duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1183 (9th Cir. 2004) (*citing James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).  However, § 404 does not require that plaintiffs "prove any injury in order to prosecute violations" of fiduciary duty.  *Ziegler v. Connecticut Gen. Life Ins. Co*., 916 F.2d 548, 551 (9th Cir. 1990).

Plaintiffs allege that the Prior ESOP Committee, the New ESOP Committee, and GreatBanc failed to disclose the material terms of the October 2014 transaction – terms which impacted the calculation of Plan Participants' benefits – and made material misrepresentations about the valuation of the benefits, including the total sale price. (FAC ¶¶ 154, 171, 258.)  Defendants contend that they "timely responded to participant inquiries … providing 'complete and accurate' information regarding Plaintiffs' benefits" consistent with ERISA disclosure requirements.  (Republic Mem. at 11; GreatBanc Mem. at 17.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                     Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.

---

Resolution of this argument will require factual determinations regarding what
disclosures were actually made.  For example, Plaintiffs allege that the New ESOP
Committee failed to disclose their takeover as fiduciaries at the time of the October 2014
transaction.  (FAC ¶ 149.)  The Ninth Circuit has recognized that "the persons to whom
the management and investment of his plan funds have been entrusted" constitutes
material information about the plan.  *Hughes Salaried Retirees Action Comm. v. Adm'r of
Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995).  Moreover,
GreatBanc states that it did not disclose the valuation report on which it relied in
determining the sale price in the October 2014 transaction, (*see* GreatBanc Mem. at 9
n.9), which may be a required disclosure given that Plaintiffs' benefits were measured by
the value of the stock that was sold.  *Hughes*, 72 F.3d at 690.  In short, whether
Defendants' disclosures were, in fact, complete, accurate, and consistent with ERISA is a
question of fact not amenable for resolution at this stage.

Moreover, Defendants' arguments regarding harm are inapt, as Plaintiffs need not
show an injury flowing from a violation of fiduciary duty under § 404, *see Ziegler*, 916
F.2d at 551.

The Motions are DENIED as to Count IV.

**E.      Count V**

Count V is brought against Defendants Moffatt and Snow under ERISA
§ 406(b)(1) and (3) for engaging in a prohibited transaction.  (FAC ¶¶ 262–270.)
Specifically, Plaintiffs argue that Moffatt and Snow negotiated employment agreements
with Republic as consideration for the sale of the Plan's stock.  (*Id.* ¶¶ 268–270.)

Defendants argue that this claim should be dismissed because Plaintiffs do not
allege that Moffatt and Snow were paid "at the expense of" Plan Participants and there
was no transaction involving "plan assets."  (Moffatt Mem. at 9.)

Under § 406, a fiduciary is prohibited from "deal[ing] with the assets of the plan in
his own interest or for his own account," and from "receiv[ing] any consideration for his
own personal account from any party dealing with such plan in connection with a
transaction involving the assets of the plan."  29 U.S.C. § 1106(b)(1), (3).  However,

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                      Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.
_____

plaintiffs need not show that the plan suffered any losses from the transaction.  *Butler*, 2011 WL 13177000, at *7.  Rather, they need show only that the plan's assets were used "for a purpose which did not benefit the plan."  *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1467 (9th Cir. 1995).  Moreover, § 406(b) should be broadly construed and liability should be imposed even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith."  *Butler*, 2011 WL 13177000, at *7.  "[T]he burden is on the fiduciary to show consideration received from a party dealing with the plan was not received in connection with a transaction involving the assets of the plan."  *Id.*

Plaintiffs allege that Moffatt and Snow "negotiated and entered into agreements" as part of the October 2014 transaction, whereby they "ensured their continued employment or payments" following the sale.  (FAC ¶ 268.)  Therefore, Defendants' arguments that they were not paid "at the expense of" Plan Participants is unavailing (*see* Moffatt Mem. at 10) because use of the Plan's stock to secure employment contracts is arguably a "purpose which did not benefit" the Plan.  *Kayes*, 51 F.3d at 1467.

Defendants' second argument, that Rainbow's stock did not constitute "plan assets" (*id.* at 10), also lacks merit.  While 29 C.F.R. § 2510.3–101(h)(3) establishes that "corporate assets are not plan assets where the plan is an ESOP," *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009), clearly "the assets of the plan would include the employer securities."  *See* 51 FR 41262-01, at 41277 (Nov. 13, 1986).  Here, Plaintiffs allege that 97% of the Plan's assets were Rainbow's securities.  (FAC ¶ 84.)  Therefore, Plaintiffs have sufficiently alleged that Moffatt and Snow's negotiation of employment agreements in connection with the sale of Rainbow's stock violated their fiduciary duties under § 406.

Accordingly, Plaintiffs have adequately pleaded Count V.

## F.    <u>Count VI</u>

Count VI is brought against Defendants GreatBanc, Moffatt, and Snow under ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), for engaging in a prohibited transaction.  (FAC ¶¶ 271–281.)  Like Count V, Count VI concerns the employment agreements that were negotiated for Moffatt and Snow in connection with the October

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                    Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
          Committee et al.

2014 transaction.  Plaintiffs allege that if the promise of continued employment for
Moffatt and Snow had not been included as part of the deal, Republic would have paid
more for the shares of Rainbow and Plan Participants therefore would have received
more per share.  (*Id.* ¶ 278.)

Defendants argue that the allegation concerning the effect of the agreements on
Rainbow's stock price is "highly improbable." (Moffatt Mem. at 12; GreatBanc Mem. at
18.)  GreatBanc separately argues that Plaintiffs failed to allege that it played a causal
role in the October 2014 transaction.  (GreatBanc Mem. at 18.)

To state a claim under § 406(a)(1)(D), the plaintiff must allege that the defendant
"cause[d] the plan to engage in a transaction, [which he knows or should know]
constitutes a direct or indirect … transfer to, or use by or for the benefit of a party in
interest, of any assets of the plan." 29 U.S.C. §1106(a)(1)(D).  However, "lack of harm
to the plan … [is] not relevant, and certainly not controlling, under [§] 406." *M & R Inv.
Co. v. Fitzsimmons*, 484 F. Supp. 1041, 1055 (D. Nev. 1980), *aff'd*, 685 F.2d 283 (9th
Cir. 1982).  To determine whether a directed trustee "causes" a plan to engage in a
prohibited transaction, "the question is whether the directed trustee played a discretionary
role in bringing [it] about." *Chesemore v. All. Holdings, Inc.*, 770 F. Supp. 2d 950, 970
(W.D. Wis. 2011).

As described above, the October 2014 transaction involved the use of Plan assets
to negotiate a benefit for Moffatt and Snow in the form of employment agreements with
Republic.  Even if Plaintiffs' allegation regarding harm to the Plan Participants is
"improbable" as Defendants contend, harm is not a relevant consideration to self-dealing
transactions. *M & R Inv. Co.*, 484 F. Supp. at 1055.

GreatBanc's causation argument fares no better.  Amendment 4 to the Plan
Document gave GreatBanc discretionary authority sell all of the outstanding shares of
Rainbow's stock without direction from the ESOP Committee or the Board of Directors.
(Amendment 4 to Plan Doc.)  Moreover a trustee always has discretion to reject a
transaction that would be contrary to ERISA.  *See Chesemore*, 770 F. Supp. 2d at 970.
Plaintiffs allege that pursuant to the authority vested by Amendment 4 and its fiduciary
obligations under ERISA, GreatBanc caused the Plan to enter into the October 2014

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018

Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.
_____

transaction.  (FAC ¶ 279.)  Therefore, Plaintiffs have sufficiently alleged GreatBanc's
causal role.

Thus, the Motions are DENIED as to Count VI.


**G.    <u>Count VII</u>**

Count VII is brought against Defendant Range under ERISA § 406(b)(1) and (3),
29 U.S.C. § 1106(b)(1),(3), for engaging in a prohibited transaction.  (FAC ¶¶ 282–288.)
Plaintiffs allege that Range, who was a member of Rainbow's Board of Directors at the
time of the October 2014 transaction, was also the founder and head of a financial
advisory firm called Stout.  (*Id.* ¶ 286.)  Plaintiffs allege that Stout served as Rainbow's
financial advisor in the October 2014 transaction, and thus Range received consideration
for his services in connection with a transaction involving Plan assets.  (*Id.* ¶ 288.)

Range argues that this claim should be dismissed because Plaintiffs do not allege
that he was paid with Plan assets or that he caused the payment to Stout.  (Range Mem. at
5–7, Doc. 77.)

As discussed with respect to Counts V and VI, § 406 imposes a "per se
prohibition" on transactions involving assets of the plan, *M & R Inv. Co.*, 484 F. Supp. at
1055, in which fiduciaries receive personal benefits "from any party dealing with such
plan." 29 U.S.C. § 1106(b)(3).  Moreover, § 406(b) does not have a causal element; it
requires only that the fiduciary received consideration from a transaction involving assets
of the plan.  *See id*.  Here, Plaintiffs have alleged that Range received compensation from
Rainbow, a "party dealing with [the Plan]," in connection with his role in facilitating the
October 2014 transaction.  (FAC ¶ 288.)

Accordingly, Plaintiffs have adequately pleaded Count VII.


**H.    <u>Count VIII</u>**

Count VIII is brought against Moffatt as the Prior ESOP Committee Defendant
and Great Banc under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104, for failure to
manage a chose in action.  (FAC ¶¶ 289–304.)  Plaintiffs allege that GreatBanc and the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.

Prior ESOP Committee, including Moffatt, had a fiduciary duty to bring a shareholder action against Moffatt and Shuman for investing Rainbow's assets into Southeastern Renewables and West Florida Recycling, entities in which they personally held ownership interests.  (*Id.* ¶ 296.)  Moreover, Plaintiffs allege that if Defendants had pursued or raised these claims prior to the October 2014 transaction, the fair value of Rainbow's stock would have increased.  (*Id.* ¶ 303.)

Moffatt argues that this claim should be dismissed because Plaintiffs fail to allege that the investments into Southeastern Renewables and West Florida Recycling involved Plan assets.  (Moffatt Mem. at 12–13.)  GreatBanc argues that (1) it cannot be liable because it did not have the power to bring a derivative suit absent direction from the ESOP Committee; (2) Plaintiffs have not shown that these ventures affected the ultimate price of the October 2014 transaction; and (3) bringing a derivative claim "would have made no sense whatsoever" because it would have caused Rainbow's stock price to decline.  (GreatBanc Mem. at 19–20.)

When an ESOP fiduciary also serves as a corporate director or officer, his ERISA duties extend to all business decisions from which he could directly profit.  *Johnson*, 572 F.3d at 1077. Moreover, the duties of prudence and loyalty under § 404 "include the duty to take reasonable steps to realize on claims held in trust."  *Harris v. Koenig*, 602 F. Supp. 2d 39, 54 (D.D.C. 2009).  "When, as in this case, a plan has potential claims against a third party, the 'trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit.'"  *Id.* (*citing McMahon v. McDowell*, 794 F.2d 100, 112 (3d Cir. 1986)).

Here, Plaintiffs allege that Moffatt and Shuman invested Rainbow's assets into Southeastern Renewables and West Florida Recycling, enterprises in which Moffatt and Shuman held ownership interests and from which they stood to personally benefit.  (FAC ¶ 296.)  Therefore, this is a self-dealing transaction, which, at minimum would require that the Plan's fiduciaries "investigate the relevant facts" and make a determination as to whether suit should be brought.  *See Harris*, 602 F. Supp. 2d at 54.  That this might potentially require Moffatt "to bring suit against himself does not relieve him of this duty under ERISA."  *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 637 (W.D. Pa. 1999).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
     Committee et al.
_____

Nor is GreatBanc excused from liability as a directed trustee.  First, even if
GreatBanc could not act without direction from the ESOP Committee, a "directed
trustee" is still subject to a duty of prudence.  *Dolins v. Cont'l Cas. Co.*, No. 16 C 8898,
2017 WL 3581143, at *3 (N.D. Ill. Aug. 18, 2017).  "Under the duty of prudence, a
directed trustee can disobey the named fiduciary's directions when it is plain that they are
imprudent."  *Id.*  Thus, Plaintiffs have plausibly alleged that GreatBanc violated its
fiduciary duty by failing to act in the face of a self-dealing transaction by Moffatt and
Shuman and by failing to alert the appraiser for the October 2014 transaction to the
existence of these claims.  *See Beam v. HSBC Bank USA*, No. 02-CV-0682E(F), 2003
WL 22087589, at *3 (W.D.N.Y. Aug. 19, 2003).  Even if a derivative suit would not
ultimately have been the appropriate remedy, GreatBanc nevertheless had a duty "to
investigate the relevant facts [and] to explore alternative courses of action … ."  *Harris*,
602 F. Supp. 2d at 54.  Whether GreatBanc actually acted properly in the circumstances
cannot be resolved on the pleadings.

Moreover, Plaintiffs have adequately pleaded that the fair market value of
Rainbow's stock would have been higher at the time of the transaction if Rainbow had
not suffered losses in connection with the investments in Southeastern Renewables and
West Florida Recycling.  (FAC ¶ 82.)  Whether this causal connection can be proven is a
factual matter for trial.  *Harris*, 602 F. Supp. 2d at 56.

In conclusion, Plaintiffs have adequately pleaded Count VIII and the Motions are
DENIED as to Count VIII.

I.     <u>Count IX</u>

Count IX is brought under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), against the
"Post-Transaction Plan Administrator" and under § 404, 29 U.S.C. § 1104, against Black,
Ellingsen, and Eggleston as the New ESOP Committee Defendants for failing to provide
documents upon request.  (FAC ¶¶ 305–319.)

Rainbow and the Republic Defendants move to dismiss Count IX.  Rainbow
argues that, as the Plan Administrator, it "produced all requested documents described
with particularity … and none of the remaining allegedly withheld documents 'restrict or

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                         Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
     Committee et al.
_____

govern the plan's operation.'"  (Rainbow Mem. at 10.)  The Republic Defendants argue
that the ESOP Committee is not a proper defendant because it is not a "person" under
ERISA and was not the Plan Administrator pursuant to Section 17(h) of the Plan
Document.  (Republic Mem. at 8–9; 10–11.)

     Under § 104(b)(4), "the administrator shall, upon written request of any
participant or beneficiary, furnish a copy of the latest updated summary, plan description,
and the latest annual report, any terminal report, the bargaining agreement, trust
agreement, contract, other instruments under which the plan is established or operated."
29 U.S.C. § 1024(b)(4).  "The relevant documents are those documents that provide
individual participants with information about the plan and benefits," *i.e.*, "those that
allow the individual participant to know exactly where he stands with respect to the
plan—what benefits he may be entitled to, what circumstances may preclude him from
obtaining benefits, what procedures he must follow to obtain benefits, and who are the
persons to whom the management and investment of his plan funds have been entrusted."
*Hughes*, 72 F.3d at 690.

     Whether the disclosures to Plaintiffs were complete and accurate is a question that
the Court will not decide at this stage.  As noted above, GreatBanc denies that it relied on
the June 2014 valuation report in entering into the October 2014 transaction, (*see*
GreatBanc Mem. at 9 n.9), and Plaintiffs allege that the June 2014 valuation report is the
sole valuation report that they received.  (FAC ¶ 188.)  Therefore, the Plan
Administrator's failure to disclose the correct valuation report alone may impose liability
under § 104(b)(4).  *See Hughes*, 72 F.3d at 690 (noting that a stock valuation report "is an
instrument under which a plan is established or operated when the plan measures benefits
by the value of stock").  Moreover, the Escrow Settlement Agreement is alleged to have
set forth the calculation of the total benefits to which Plan Participants were ultimately
entitled.  (FAC ¶ 174.)  Thus, the terms of the Escrow Settlement Agreement, which were
denied to Plaintiffs, seem to bear directly on "what benefits [participants] may be entitled
to."  *Hughes*, 72 F.3d at 690.

     Turning to the Republic Defendants' arguments, as an initial matter, the Court
finds that the ESOP Committee is a "person" that may be held liable for breaching its

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

fiduciary duties under ERISA.  *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir.
2009) (finding that plaintiffs were entitled to amend their complaint to add the plan's
"Fiduciary Committee" as a proper defendant); *Tatum v. RJR Pension Inv. Comm.*, 761
F.3d 346, 371 (4th Cir. 2014).  Moreover, the Court finds premature the argument that the
ESOP Committee was not the Plan Administrator for purposes of § 104.  Although
Section 17(h) of the Plan Document identifies Rainbow as the Plan Administrator,
Plaintiffs allege that the 2014 SPD named the ESOP Committee as the Plan
Administrator and that the Form 5500 filed with the SEC also identifies the ESOP
Committee as the Plan Administrator following the October 2014 transaction.  (*See* FAC
¶ 97.)  The Republic Defendants acknowledge these communications but state that there
is "no conflict" with Section 17(h) because the Committee is permitted "to assist" in
administration of the Plan.  (*See* Republic Mem. at 10 n.6.)  Therefore, "because factual
issues remain with regard to the identity of the Plan Administrator during the relevant
period, and with regard to the Plan Administrator's alleged delegation of duties to the
Plan Committee and its members," dismissal of the claim at this stage is not appropriate,
*Gough v. Tennyson*, No. 17-CV-2215-PJH, 2017 WL 4310761, at *4 (N.D. Cal. Sept. 28,
2017), and the Court need not reach Republic's argument regarding penalties against
non-administrators.

Accordingly, Plaintiffs have adequately pleaded Count IX.  The Motions are
DENIED as to Count IX.

**J.     Count X**

Count X is brought under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), against
GreatBanc and Black, Ellingsen, and Eggleston as the New ESOP Committee for failing
to properly invest Plan assets after the October 2014 transaction.  (FAC ¶¶ 320–336.)
Specifically, Plaintiffs allege that 100% of the Plan's assets were invested in short-term
treasury obligations from the time of the October 2014 transaction until September 2017
and that a prudent investor would have diversified over this period.  (*Id.* ¶¶ 323–327,
334.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                              Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

Defendants argue that they acted both prudently and in accordance with the Plan
Document by investing in treasury obligations.  (GreatBanc Mem. at 20–21; Republic
Mem. at 14–16.)

In general, ERISA imposes a duty to diversify, and, if the plaintiff proves a failure
to diversify, the burden shifts to the defendant to demonstrate that nondiversification was
nonetheless prudent.  *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 438 (3d Cir. 1996).

Here, Defendants do not contest that the Plan's assets were invested solely in
treasuries.  Whether this decision was prudent under the circumstances is not amenable
for resolution on a motion to dismiss, as evident by the cases cited by Defendants
themselves.  (*See* Republic Mem. at 16, *citing Flanigan v. GE*, 242 F.3d 78 (2d Cir.
2001) (summary judgment); *Donovan v. Mazzola*, 716 F.2d 1226, 1229 (9th Cir. 1983)
(post trial).)  *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)
(reversing dismissal where allegations "can be understood to assert that the Plan includes
a relatively limited menu of funds … despite the ready availability of better options").

Accordingly, Plaintiffs have properly pleaded Count X.

**K.    <u>Count XI</u>**

Count XI is brought under ERISA § 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1),
against Moffatt as the Prior ESOP Committee Defendant; Moffatt, Range, and Snow as
the Prior Director Defendants; and Black, Ellingson, and Eggleston as the New ESOP
Committee Defendants for failing to monitor GreatBanc in its exercise of duties as
Trustee.  (FAC ¶¶ 337–345.)  Count XI incorporates by reference the alleged breaches of
fiduciary duties raised by prior counts.

Defendants argue that Count XI should be dismissed because Plaintiffs have not
plausibly alleged the underlying breaches of fiduciary duty.  (*See* Republic Mem. at 17–
19; Moffatt Mem. at 13; Range Mem. at 8.)  They also argue that Plaintiffs have failed to
allege facts to demonstrate a deficient monitoring process.  (Republic Mem. at 19–20;
Range Mem. at 8–9.)

Defendants cannot succeed on their first argument because, pursuant to the above,
Plaintiffs have adequately pleaded the breaches upon which Count XI is based.  As to the

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
       Committee et al.

second argument, "[a] plaintiff is not required to plead specific facts about the fiduciary's
internal processes because such information is typically in the exclusive possession of a
defendant."  *Fernandez v. Franklin Res., Inc.*, No. 17-CV-06409-CW, 2018 WL
1697089, at \*7 (N.D. Cal. Apr. 6, 2018).  Rather, the plaintiff need allege facts to show
only "that the fiduciary knew or should have known about the trustee's misconduct and
failed to take steps to remedy the situation."  *Solis v. Couturier*, No. 2:08-CV-02732-
RRB (GGH), 2009 WL 1748724, at \*7 (E.D. Cal. June 19, 2009).

Consistent with this standard, Count XI alleges that the Prior Committee and the
Prior Directors knew that GreatBanc was aware of the breaches of fiduciary duty that
took place prior to the October 2014 transaction and yet failed to take corrective action.
(FAC ¶¶ 343–345.)  Similarly, Count XI alleges that the New ESOP Committee
Defendants, after becoming fiduciaries, knew that GreatBanc was aware that the trust
assets were improperly invested and that the Prior ESOP Committee Defendants had
engaged in prohibited transactions, yet failed to take corrective action.  (*Id.* ¶ 346–348.)

Accordingly, Plaintiffs have adequately pleaded a failure to monitor and the
Motions are DENIED as to Count XI.

## L.    <u>Count XII</u>

Count XII is brought against all Defendants under ERISA § 405, 29 U.S.C. §
1105, for co-fiduciary liability.

Defendants argue that Count XII should be dismissed because it is a derivative
claim and Plaintiffs have not plausibly alleged breaches of fiduciary duty against any
Defendants.  (Moffatt Mem. at 14; Range Mem. at 9–10; GreatBanc Mem. at 21–22;
Republic Mem. at 19–20.)

Under § 405, the fiduciary of a plan is liable for the breach of fiduciary duty of
another fiduciary if he knowingly participates, conceals, enables, or fails to remedy his
co-fiduciary's breach.  29 U.S.C. § 1105(a).

As with Count XI, Count XII rises and falls with Plaintiffs' other claims.  Because
the Court finds that Plaintiffs have stated claims for breach of fiduciary duty as to all
Defendants, Plaintiffs have adequately pleaded Count XII.  The Republic Defendants'

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
      Committee et al.

arguments regarding whether Plaintiffs have adequately shown sufficient knowledge to
sustain this Count are not appropriate for resolution at the pleading stage, as evidenced by
the cases they cite.  (*See* Republic Mem. at 20, *citing Donovan v. Cunningham*, 716 F.2d
1455, 1467 (5th Cir. 1983) (post trial).)

Accordingly, Plaintiffs have adequately pleaded Count XII.

**M.**     **Count XIII**

Count XIII is brought against Republic under ERISA § 502(a)(3), 29 U.S.C.
§ 1132(a)(3), for knowing participation in breaches of fiduciary duty and prohibited
transactions.  (FAC ¶¶ 365–375.)  Specifically, Plaintiffs allege that Republic knew that
Moffatt, Snow, and Range were fiduciaries of the Plan and knew that the October 2014
transaction constituted a breach of their fiduciary duties, yet went forward with the sale
anyway.  (*Id.* ¶¶ 367, 371–373.)  Plaintiffs demand "disgorgement of any profits, having
a constructive trust placed on any proceeds received (or which are traceable thereto),
having the sale rescinded, requiring all of part of stock to be restored to the Rainbow
ESOP accounts, or … other appropriate equitable relief."  (*Id.* ¶ 375.)

The Republic Defendants argue that Republic cannot be liable for knowing
participation because it was not a party in interest to the Plan.  (Republic Mem. at 20–21.)
Second, they argue that mere knowledge is insufficient to establish liability.  (*Id.* at 21–
22.)  Third, they argue that Plaintiffs have not sought a proper equitable remedy.  (*Id.* at
23.)

Civil actions brought against non-fiduciaries must be brought under ERISA
§ 502(a)(3), 29 U.S.C. § 1132(a)(3), which authorizes participants to sue only for
"appropriate equitable relief."  *Chesemore v. All. Holdings, Inc.*, 948 F. Supp. 2d 928,
940 (W.D. Wis. 2013), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir.
2016).  "[T]o adequately allege a claim against nonfiduciaries under § 1132(a)(3),
plaintiffs must plead the defendants 'had actual or constructive knowledge of the
circumstances that rendered the transaction unlawful.'"  *Urakhchin v. Allianz Asset Mgmt.
of Am., L.P.*, No. SACV-15-1614-JLS (JCGx), 2016 WL 4507117, at *8 (C.D. Cal. Aug.
5, 2016) (*citing Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                      Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
         Committee et al.

_____

251 (2000)).  Moreover, the relief available is confined to "those categories of relief that, traditionally speaking … were typically available in equity."  *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011).  "This relief includes injunction, rescission, reformation, equitable estoppel and surcharge, which is monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Chesemore*, 948 F. Supp. 2d at 940.

    Here, Plaintiffs allege that Republic conducted a "due diligence investigation" prior to the October 2014 transaction that made them aware of the existence of the Plan and the fiduciary responsibilities of Moffatt and Snow.  (FAC ¶¶ 370–371.)  Moreover, Plaintiffs adequately allege that Republic actually participated in and facilitated breaches of fiduciary duty by Moffatt and Snow by offering them continued employment contracts in connection with the sale of Plan assets.  (*Id.* ¶ 372(d).)  Therefore, these allegations are sufficient to show "some orchestration" of the conflicted transaction that subjects Republic to liability.  (*See* Republic Reply at 4–5, Doc. 102.)

    Republic also argues that Plaintiffs' demands are not appropriate equitable relief because "what they actually seek is money damages from Republic's general assets." (Republic Mem. at 22–23.)  As to rescission specifically, Republic argues that this remedy is a "non-starter" because Plan Participants cannot return the consideration paid for the stock.  (*Id.* at 23.)  Plaintiffs respond that rescission is available even if restoration is not possible.  (Opp. at 56.)

    Rescission is an appropriate equitable remedy in the context of ESOP transactions. *See Eaves v. Penn*, 587 F.2d 453, 463 (10th Cir. 1978).  "Under true rescission, the plaintiff returns to the defendant the subject of the transaction, plus any other benefit received under the contract, and the defendant returns to the plaintiff the consideration furnished, plus interest."  *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031 (9th Cir. 1999).  "If true rescission is no longer possible (perhaps because the plaintiff no longer owns the subject of the sale), the court may order its monetary equivalent. This remedy entitles the plaintiff to the return of the consideration paid less any value received on the investment."  *Id.*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                                Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
         Committee et al.

Here, Plaintiffs have adequately alleged that rescission is an appropriate equitable remedy.  Even if true rescission is no longer possible because Plaintiffs have disposed of the consideration they received after termination of the Plan, the "monetary equivalent" is the actual value of the Plan's stock absent the alleged conflict, *i.e.* the price that Republic would have paid in the absence of the employment agreements secured by Moffatt and Snow.  *See Ambassador*, 189 F.3d at 1031.  Thus, the "recissionary measure of damages" would restore losses to the Plan caused by the conflict without entitling Plaintiffs to a windfall.  (*See* Republic Reply at 8–9.)  *See Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1208 (9th Cir. 2012).

Because Plaintiffs have adequately pleaded the elements of Count XIII and seek an appropriate equitable remedy, the Motions are DENIED as to Count XIII.

## N.      Count XIV

Count XIV is brought against all Defendants under ERISA § 410, 29 U.S.C. § 1110, and seeks to void as unlawful the indemnity provisions in the Plan Document and the Trustee Engagement Agreement to the extent that they purport to allow indemnification for breaches of fiduciary duty.  (FAC ¶¶ 376–384.)

Defendants argue that these provisions do not violate ERISA as a matter of law because they prohibit indemnification for breaches of fiduciary duties.  (GreatBanc Mem. at 23; Moffatt Mem. at 14–15; Range Mem. at 10–11; Republic Mem. at 23–24.)  Moreover, Defendants argue that indemnification will not be at the expense of Plan Participants because the Plan has been terminated and Republic now owns Rainbow.  (Republic Mem. at 24; GreatBanc Mem. at 24.)

Under § 410, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."  29 U.S.C. § 1110(a).  The Department of Labor has interpreted this statute to "render[ ] void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because "such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                     Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
         Committee et al.

plan's right to recovery from the fiduciary for breaches of fiduciary obligations."
*Johnson*, 572 F.3d at 1080.  "Under the majority view, indemnification by an ESOP
sponsor functionally equates to an impermissible indemnification by the ESOP itself."
*Pfeifer v. Wawa, Inc.*, 214 F. Supp. 3d 366, 373 (E.D. Pa. 2016) (*citing*, inter alia,
*Johnson*, 572 F.3d at 1079).

In *Johnson*, the Ninth Circuit held that indemnification agreements that purport to
provide indemnity "so long as the challenged acts or omissions do not involve deliberate
wrongful acts or gross general negligence" are void because they allow defendants to be
indemnified "even if they violated the ERISA 'prudent man' standard of care."  *Johnson*,
572 F.3d at 1078–1080.  Moreover, the Court considered and rejected the argument that
§ 410 does not apply where the indemnification "would be made from corporate, not plan
assets."  *Id.* at 1080.  The Court found that such a provision was "tantamount to asking
ESOP participants to pay for Defendants' defense costs."  *Id.*  Finally, the Court found
that limitations such as "to the extent not preempted by federal law" or "subject to the
relevant provisions of [ERISA]" did not, per se, render the subject indemnification
agreements enforceable.  *Id.* at 1074–75, 1081.

Beginning with the Plan Document, Section 17(g) provides that Rainbow will
"indemnify each member of the Committee (to the extent permitted by law) against any
personal liability or expense … resulting from his service on the Committee, except such
liability or expense as may result from his own willful misconduct."  (Plan Document
§ 17(g).)  Section 17(g) is nearly indistinguishable from the indemnification agreement
that the Ninth Circuit found unenforceable in *Johnson*, 572 F.3d at 1074–75.  *See also*
*Fernandez v. K-M Indus. Holding Co.*, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009)
(finding unenforceable an indemnification provision that was "[s]ubject to the applicable
provisions of ERISA").

As to the Trustee Engagement Agreement, the indemnification provision
contained in the 2014 Amendment specifically prohibits indemnification for breaches of
ERISA, though it does allow Rainbow to front defense costs for GreatBanc.  In *Johnson*,
the Ninth Circuit found that because the plaintiffs were likely to succeed in proving
breaches of fiduciary duty, the right to advancement of defense costs was void.  *Johnson*,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01605-JLS-DFM                          Date:  July 09, 2018
Title: Antonio Hurtado et al. v. Rainbow Disposal Co., Inc. v. Employee Stock Ownership Plan
        Committee et al.

572 F.3d at 1081.  At this stage in the case, the Court has not made any determination regarding Plaintiffs' likelihood of  success on the merits, and it is not clear whether Rainbow is currently fronting defense costs for GreatBanc.  Thus, the Court will not dismiss the claim at this juncture. [5]  *Pudela v. Swanson*, No. 91 C 3559, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995).

Nevertheless, Defendants contend that *Johnson* does not apply because the Plan has been terminated and so any defense costs will be borne by Republic, as the owner of Rainbow, rather than the Plan.  (GreatBanc Mem. at 24; Republic Mem. at 24.)  However, because the Court has found that Plaintiffs have stated claims against Rainbow and the Republic Defendants, any recovery that Plaintiffs obtain could, at least in part, also be paid by Republic.  Therefore, because the use of Republic assets to pay defense costs could jeopardize the ultimate recovery of Plan Participants, the same concerns apply here as in *Johnson*.  *See Fernandez*, 646 F. Supp. 2d at 1155 ("The rationale underlying [*Johnson*'s] holding supports the conclusion that indemnification agreements are invalid any time an ESOP would bear the financial burden of indemnification, whether directly or indirectly").

Thus, the Motions are DENIED as to Count XIV.

**IV.  CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' Motions in their entirety.

Initials of Preparer:  tg

---

[5] Defendants cite to *Harris v. GreatBanc Tr. Co.*, No. EDCV12-1648-R DTBX, 2013 WL 1136558, at *3 (C.D. Cal. Mar. 15, 2013) and repeatedly point to it as a decision by this Court in which a similar provision was held enforceable.  (*See* GreatBanc Mem. at 23; Moffatt Mem. at 14; Republic Mem. at 23–24.)  In fact, it is a decision by another judge in the Central District.  While this Court has great respect for the decisions of other judicial officers in the Central District, their rulings are *not* rulings by this Court and should not be referenced as such.