JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANTONIO HURTADO ET AL

v.

RAINBOW DISPOSAL CO., INC.
EMPLOYEE STOCK OWNERSHIP PLAN
COMMITTEE ET AL

Case No.: 8:17-cv-01605-JLS-DFM

**ORDER GRANTING (1) PLAINTIFFS'
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
(DOC. 219); (2) PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES,
AND LITIGATION EXPENSES (DOC.
221); AND (3) PLAINTIFFS' MOTION
FOR SERVICE AWARDS (DOC. 220)**

Before the Court are three unopposed Motions filed by Plaintiffs Antonio Hurtado, Christopher Ortega, Jose Quintero, Maritza Quintero, Maritza Quintero, Jorge Urquiza, Maria Valadez ("Plaintiffs") and the certified class: (1) a Motion for Final Approval of the Class Settlement; (2) a Motion for Attorneys' Fees and Costs; and (3) a Motion for Service Awards.  (Final Approval Mot., Doc. 219; Final Approval Mem., Doc. 219-1; Fees Mot., Doc. 221; Fees Mem., Doc. 221-1; Service Award Mot., Doc. 220.)  Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motions and APPROVES the settlement.

## I.  **BACKGROUND**

The Court has detailed the background facts of this action in two previous orders and does not repeat them here.  (*See* Class Certification Order, Doc. 177; Preliminary Approval Order, Doc. 214.)  In brief, this is a class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Plaintiffs filed this suit on September 15, 2017, asserting fourteen claims against Republic Services, Inc. and fiduciaries of the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan (the "ESOP" or "Plan") for their respective roles in alleged violations of ERISA in connection with the October 1, 2014 sale of ESOP assets to Republic.

On April 22, 2019, the Court granted Plaintiffs' motion for class certification, appointed Plaintiffs as Class Representatives, and appointed R. Joseph Barton ("Barton") of Block & Leviton LLP and Joseph A. Creitz ("Creitz") of Creitz & Serebin LLP as Class Counsel.  (Doc. 177 at 20.)[1]  The Court also certified the following Rule 23(b)(1) class:

All persons who were vested participants in the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan as of October 1, 2014 and the beneficiaries of any such participants, excluding Defendants and persons who were named fiduciaries of the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan, who are alleged in this action to have engaged in prohibited transactions or breaches of corporate fiduciary duties, or who had decision-making or administrative authority relating to

[1] This Order will refer to Barton and Creitz in the plural as "Class Counsel," unless context requires clarification that they are serving as co-lead Class Counsel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the administration, modification, funding, or interpretation of the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan, or who had such authority relating to the decision to sell assets of the Rainbow Disposal Co., Inc. Employee Stock Ownership Plan on or about October 1, 2014.

The parties engaged in substantial discovery, attended facilitated mediation sessions, and ultimately entered into a formal Settlement Agreement on July 23, 2020. (Doc. 193-1.)  The Settlement Agreement provides for a payment of $7.9 million, inclusive of payments to the Class, Class Counsel's attorneys' fees and litigation expenses, and service awards to the Class Representatives.  (Settlement Agreement, Doc. 209-3, §§ III.1, VII.1.)  Defendants were to pay $7.9 million into the Settlement Fund within 30 days of preliminary approval.  (*Id.* § III.1.)  In addition to the settlement payment, Republic will bear the costs associated with distributions from the Republic 401(k) Plan once funds are deposited into the Republic 401(k) Plan, as well as the cost of an independent fiduciary. (*Id.* §§ IV.6-7, IX.)  In exchange, the Class will dismiss the claims asserted in the Second Amended Complaint with prejudice and release Defendants from any and all claims that the Class could have asserted that relate to or arise out of the facts alleged or the claims set forth in the Second Amended Complaint.

After the Settlement Agreement was finalized, Plaintiffs filed a motion for preliminary approval of the class action settlement, which the Court granted on January 4, 2021.  (*See* Preliminary Approval Order.)  In the Preliminary Approval Order, the Court appointed CPT Group as Settlement Administrator and set the final fairness hearing for May 21, 2021.  Additionally, the Court required revisions to the proposed Class Notice; set forth certain deadlines for dissemination of notice to the Class and for filings related to the final fairness hearing; and required proof of compliance with the notice requirement of the Class Action Fairness Act ("CAFA").  Defendants timely filed proof of compliance with CAFA's notice requirement (Doc. 215), and Class Counsel timely filed a revised Class Notice (Doc. 216), incorporating the changes ordered by the Court.  On February 5, 2021, the Court approved Plaintiffs' revised Class Notice for dissemination. (Doc. 217.)

## II. **FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

### A. Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (numbering added) (citations and internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Servs. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (citations and internal quotation marks omitted).

### B. Discussion

In the Preliminary Approval Order, the Court evaluated each of the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Preliminary Approval Order at 6–9.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. (*Id.*)  The Court sees no reason to depart from its previous conclusion as to these factors.  The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order. (*Id.*)

However, at the time of preliminary approval, the Court noted that Plaintiffs had not provided evidence of Class Members' reactions to the Settlement Agreement, and the Court directed Plaintiffs to submit such evidence ahead of the final fairness hearing. (*Id.* at 9.)  Plaintiffs have submitted declarations from twenty-two class members in support of final approval. (*See* Doc. 18-1.)  Plaintiffs also proffer the declaration of Jackie Hitomi, Director of Settlement & Treasury Services with CPT Group, the Court-appointed Settlement Administrator.  Hitomi testified that CPT Group sent the Class Notice by first class mail to 462 individuals based on data provided to Class Counsel by the Republic Defendants, and that CPT Group was ultimately able to successfully mail Class Notices to all but one Class Member whose Notice was returned as undeliverable. (Hitomi Decl., Doc. 219-5, ¶¶ 3–4.)  Moreover, the deadline for Class Members to send in their objections to Class Counsel or the Class Administrator was April 30, 2021. (Class Notice, Doc. 216-1, at 8.)  On May 10, 2021, Class Counsel and the Settlement Administrator informed the Court that they have not received any objections from Class Members. (Doc. 223 at 2.)[2]

---

[2] Class Counsel inform the Court that one former ESOP beneficiary submitted a challenge to the settlement data, contending that he was a Class Member. (Doc. 223; *see also* Class Notice, Doc. 216-1, at 3 ("If you believe that the data about your shares is incorrect OR you believe that you are a class member but did not receive personalized notice sent to you, you can submit information explaining why the data needs to be corrected or why you are a Class Member.").)  This beneficiary was not in the Class Data provided to Class Counsel by the Rainbow Defendants and had not previously been sent a Class Notice. (Downes Decl., Doc. 223-1, ¶ 6.)  The parties have submitted enough evidence to establish that this beneficiary took a full and final distribution of his ESOP account during the plan year ending June 30, 2014, which was paid out as a lump sum on August 7, 2013. (Exs. 2 and 3 to Downes Decl, Docs. 223-3–223-4.)  Accordingly, the beneficiary is not a member of the Class, which is limited to vested participants in the ESOP as of October 1, 2014.

1    "It is established that the absence of a large number of objections to a proposed

2    class action settlement raises a strong presumption that the terms of a proposed class

3    settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559

4    F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted).  Given the lack of objections

5    this factor, too, weighs in favor of approval.  *See Rodriguez v. El Toro Limited P'ship*,

6    No. 8:16-cv-59-JLS-KES, Dkt. 98, at *7-8 (C.D. Cal. June 26, 2018) (Staton, J.)

7         In sum, having weighed the *Staton* factors and considered the settlement as a

8    whole, the Court finds the proposed settlement is fair, reasonable, and adequate.

9    Accordingly, Plaintiffs' Motion for Final Approval is GRANTED.  The Court now turns

10   to Plaintiffs' motions for attorneys' fees and costs, and for service awards.

11   **III.   LITIGATION AND ADMINISTRATION COSTS**

12        Class Counsel in common fund cases are entitled to "reasonable out-of-pocket

13   litigation expenses that would normally be charged to a fee-paying client." *Trustees of*

14   *Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d

15   1253, 1257 (9th Cir. 2006) (citations omitted); *see also* 42 U.S.C. § 2000e-5(k); Fed. R.

16   Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees

17   and nontaxable costs that are authorized by law or by the parties' agreement.").

18        Here, Class Counsel request reimbursement of a total of $200,644.83 in litigation

19   expenses, which is comprised of court fees, deposition costs, electronic research costs,

20   electronic discovery expenses, process server fees, expert fees, postage and courier fees,

21   printing costs, conference call costs, and travel/lodging.  (Fees Mem. at 23; *see also*

22   Barton Decl., Doc. 221-2, ¶ 25 (requesting $118,008.47 in out-of-pocket costs); Creitz

23   Decl., Doc. 221-7, ¶ 15 (requesting $76,761.53 in out-of-pocket costs).)  Creitz and

24   Barton, who are Co-Lead Class Counsel, each proffer sufficiently detailed evidence of

25   the litigation expenses they have incurred.  (*See* Barton Decl., Doc. 221-2, ¶ 25; Creitz

26   Decl. ¶ 15; "Creitz Costs Statement," Ex. B to Creitz Decl., Doc. 221-9.)  The Court finds

27   the expenses incurred by Class Counsel were reasonable out-of-pocket expenses that

28

would usually be charged to a fee-paying client and therefore GRANTS the request for litigation costs in the amount of $200,644.83.

Class Counsel also requests reimbursement of the Settlement Administrator's fees in the amount of $11,500.00.  (Fees Mem. at 23; Barton Decl. ¶ 27.)  At the preliminary approval stage, the Court appointed CPT Group as Settlement Administrator, citing favorably CPT Group's offer to conduct settlement administration for the discounted rate of $11,500.00.  (Preliminary Approval Order at 9–10.)  Notably, this figure is far lower than the $100,000 maximum set by the Settlement Agreement for notice costs that can be paid out of the Settlement Fund.  (Settlement Agreement § VII. 2.)  Having reviewed the work undertaken by CPT Group (*see* Hitomi Decl.), the Court finds the cost of administration was reasonable and therefore GRANTS the request for reimbursement of the Class Administrator's fees in the amount of $11,500.00.

## IV.   **ATTORNEYS' FEES**

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods.*, 654 F.3d at 941.  In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained.  *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").  Courts must "justify any increase or decrease from this amount based on circumstances in the record."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of

the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award."  *Id.* at 1050.

Here, Class Counsel request $2,370,000 in attorneys' fees, which is equivalent to 30% of the $7.9 million Settlement Fund.  (Fees Mem. at 1.)  For the reasons below, the Court finds that the requested upward departure from the 25% benchmark rate is warranted here, and awards Class Counsel 30% of the Settlement Fund, which equals $2,370,000.

### A.  Results Achieved

Class Counsel achieved a settlement that represents between approximately 23.4% and 34.0% of the maximum amount that the Class Members could recover if the liability were successfully litigated through trial on all counts, the trier of fact agreed with Plaintiffs on the proper measure of recovery, and the resulting judgment could be collected.  (Preliminary Approval Order at 8.)  Class Counsel represent that, although the specific amount of relief for each class member varies based on the number of shares held as of the October 2014 sale, assuming the Court approves the requested attorneys' fees award, the settlement will provide an average payout of $11,969 per participant, with some participants receiving as much as $180,000.  (Fees Mem. at 8.)

These monetary payouts represent a significant benefit to the Class.  And the percentage of total potential liability recovered here is an impressive result given that ERISA actions are generally complex.  Indeed, on final approval of the settlement of an ERISA fiduciary breach class action where the "settlement fund represent[ed] approximately 29% of Plaintiffs' claimed damages at trial," another court in this district concluded that the settlement was "an exceptional result" that "justifie[d] an attorney fee

1    award of one-third of the settlement fund." *Marshall v. Northrop Grumman Corp.*, 16-
2    CV-6794 AB (JCX), 2020 WL 5668935, *2–3 (C.D. Cal. Sept. 18, 2020).

3         Moreover, here, even though the ESOP had been terminated, Class Counsel
4    secured a Settlement Agreement that structures the monetary payment to Class Members
5    through a 401(k) plan, preserving the tax advantages that Class Members would have
6    enjoyed under their ESOP allocations. (Settlement Agreement § 5(a)-(b), (d).) And the
7    Settlement Agreement ensures that Class Members do not bear the costs of receiving
8    their distributions. (*Id.* § 6, 7.) Class Counsel's procurement of this additional benefit
9    also supports an upward departure from the 25% attorneys' fees benchmark.

10        **B. Risk of Litigation**

11        As the Court noted at the preliminary approval stage, ERISA actions are
12   notoriously complex cases, and ESOP cases are often cited as the most complex of
13   ERISA cases. (*See* Preliminary Approval Order at 6 (citing *Pfeifer v. Wawa, Inc*., No. CV
14   16-497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018)).) Class Counsel argued
15   convincingly, both at the preliminary approval stage and again in support of the
16   attorneys' fees motion, that despite their expertise, Plaintiffs would face significant
17   hurdles if this action were to continue to trial. (*See* Preliminary Approval Order at 7;
18   Fees Mem. at 10–13.) Specifically, Class Counsel argue that had litigation continued,
19   Defendants would almost certainly have brought motions for summary judgment on most
20   or all of the claims. (Fees Mem. at 11.) In sum, Class Counsel represent that Plaintiffs
21   would have faced significant risks from continued litigation because some of their claims
22   could be dismissed and, even if they prevailed on all claims, the potential range of
23   recovery could vary widely depending on this Court's determination of the appropriate
24   measure of loss. This settlement eliminates the uncertainty Plaintiffs and Class Members
25   would have faced had the action proceeded to trial.

26        Accordingly, this factor also weighs in favor of an upward departure from the 25%
27   benchmark.

28

### C. Skill Required and Quality of Work

Class Counsel provided skillful, quality work, including winning a contested class certification motion; participating in mediation sessions; negotiating a comprehensive Settlement Agreement that, as discussed, structures payouts through a 401(k) plan; and providing a round of supplemental briefing at the Preliminary Approval stage.  The settlement outcome achieved here is the result of years of investigation and discovery by Class Counsel, which commenced prior to filing of this suit.  Accordingly, this factor too weighs in favor of an upward departure from the benchmark amount.

### D. Contingent Nature of the Fee

Class Counsel invested approximately 3,527.5 hours in this case.  (Fees Mem. at 21; "Barton Billing Statement," Ex. B to Barton Decl., Doc. 221-2; "Creitz Billing Statement," Ex. A to Creitz Decl., Doc. 221-8.)  During the past four years, Counsel have received no compensation for their efforts on behalf of class members.  (Fees Mem. at 14-15.)  "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).  However, standing alone this factor does not justify an upward departure from the benchmark.  *See, e.g., Clayton v. Knight Transp.,* 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action].").  As discussed below, the Court conducts the lodestar crosscheck by applying Class Counsel's current, rather than historic, hourly rates to all hours reasonably billed.  This higher billing rate effectively compensates Class Counsel for any delay in receiving payment.

Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### E.  Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.  As discussed, the Court appointed Barton and Creitz as Co-Class Counsel.  Barton and Creitz each proffer billing statements from their respective firms, representing that the total attorney and staff time expended on this action was 3,521.5 hours.  (Barton Billing Statement at 81 (showing a total of 3226.56 hours billed); Creitz Decl., Doc. 221-7, ¶ 14 (testifying to a total of 331.4 hours worked and attaching the Creitz Billing Statement in support).)[3]

#### 1.      Reasonable Rates

The lodestar cross-check first requires the Court to determine whether the hourly rates sought by counsel are reasonable.  "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  As a general

---

[3] The Court subtracts from the hours submitted by Creitz 6 hours that he anticipated working for participation in two scheduled "town hall" meetings with the class (one in English, one in Spanish), and virtual attendance at the final approval hearing scheduled on May 21, 2021. (Creitz Decl. ¶ 14.)

1  rule, the forum district represents the relevant legal community.  *See Gates v.*

2  *Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

3        Class Counsel have both proffered declarations in support of the reasonableness of

4  their requested rates, setting forth their relevant skill and experience, and proffering other

5  decisions that have approved the hourly rates proposed here.  (*See* Creitz Decl.; Barton

6  Decl.)  Specifically, Barton declares that his hourly rate of $900 per hour—and the rates

7  between $260 and $600 per hour billed for work performed by paralegals and attorneys

8  junior to him—have been approved by numerous courts in this district and other districts.

9  (Barton Decl. ¶¶ 14, 21 (citing *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794

10  AB (JCX), 2020 WL 5668935, *7 (C.D. Cal. Sept. 18, 2020) (approving rates and

11  awarding fees for successful representation of objector in ERISA class action challenge

12  the scope of the proposed release); *Wilcox v. Swapp*, No. 17-cv-275 Order Granting Final

13  Approval of Class Action Settlement (E.D. Wa. July 23, 2020) (Ex. A); *see also, Pfeifer*

14  *v. Wawa*, Civ. No. 16-497, 2018 WL 4203880, *13 (finding rates between $235 and $910

15  per hour, including Barton's, reasonable in ESOP litigation given "skill and experience of

16  the attorneys").  Creitz, who has twenty-five years of ERISA experience, proposes a

17  current billing rate of $800 an hour.[4]  (Fees Mem. at 17 (Creitz Decl. ¶¶ 13–14).)  Creitz

18  also points to decisions from other district courts, albeit not from courts in this judicial

19  district, approving his current rates as reasonable. (*Id.* ¶ 13 (citing *Devers v. Carpenters*

20  *Fund for California*, No. 3:18-cv-04215-EMC (N.D. Cal Aug. 29, 2019) (although the

21  hourly rates were not discussed, the court's calculation was based on an hourly rate of

22  $800 an hour for Creitz).)

23        The Court is familiar with the legal market and is therefore satisfied that Class

24  Counsel's proffered rates are reasonable in light of the complexity of ERISA actions.

25  Indeed, in an order issued three years ago in an ERISA action, the Court approved hourly

26  billing rates between $600 and $825 per hour for attorneys with more than ten years of

27  experience, between $325 to $575 per hour for attorneys with 10 or fewer years of

28

---

[4] No other timekeepers appear on Creitz's Billing Statement.

experience, and $250 per hours for paralegals and clerks.  *Urakhchin v. Allianz Asset Mgmt. of Am.*, L.P., No. 8:15-CV-01614-JLS-JCG, 2018 WL 8334858, at *6 (C.D. Cal. July 30, 2018)(Staton, J.)  The rates proffered here are in the same range, with minor increases typical of rising market rates, and therefore reasonable.

### 2.    Reasonable Hours

Next, the Court finds that the detailed Billing Statements that Class Counsel have attached to their declarations offer a satisfactory accounting of the attorney work hours on this case.  (*See* Barton Billing Statement, Doc. 221-2; Creitz Billing Statement, Doc. 221-8.)  Of special importance to the Court's assessment is the presence of both partners and an associate on the matter—at least on Barton's Billing Statement, which contains the bulk of the hours billed in this case—demonstrating a tendency toward efficient billing.  Moreover, a review of the records shows that administrative tasks were appropriately delegated to legal support staff and billed at a lower rate.  Although Creitz did not delegate work to any junior attorneys or paralegals, a review of his Billing Statement confirms that he generally engaged in partner level work and billed reasonable hours for the work performed.  The Court subtracts, however, 3.9 hours Creitz spent on clerical tasks, including filing documents and mailing courtesy copies of documents to the Court.  Such clerical tasks are part of firm overhead and would not ordinarily be billed to a paying client, even at the "clerical rate" of $200–$225 an hour that Creitz attributes to them here.  (*See* Creitz Billing Statement).  As noted above, the Court also subtracts 6 hours of anticipated work Creitz added to his Billing Statement.

### 3.    Lodestar Calculations and Multiplier

Combined, Class Counsel's total lodestar is $2,235,315.35.[5]  Class Counsel's requested $2,370,000 amount is not much higher than the lodestar amount.  Indeed, the

---

[5] This figure represents $1,973,315.35 reasonably billed by Barton's firm (3226.56 hours billed at hourly rates between $275 to $900) and $262,000 reasonably billed by Creitz (327.5 hours billed at an hourly rate of $800).

lodestar multiplier is only 1.06, which is on the very low end.

Accordingly, taking into account the *Vizcaino* factors and lodestar crosscheck, the Court GRANTS the request for attorneys' fees and awards Class Counsel $2,370,000, which amounts to 30% of the Settlement Fund.

## V.   CLASS REPRESENTATIVE SERVICE AWARD

Finally, the six named Plaintiffs move for service awards totaling $18,000. Specifically, the Motion for Service Awards seeks $5,000 each for Plaintiffs Maritza Quintero and Chris Ortega, and $2,000 each for Plaintiffs Antonio Hurtado, Jose Quintero, Jorge Urquiza, and Maria Valadez.  (Service Award Mot. at 9.)

Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)).

Here, Plaintiffs proffer their own declarations, as well as declarations by Class Counsel, indicating that they devoted substantial time and effort to the litigation.  For example, Ortega estimates that between the October 2014 ESOP sale and the filing of the Motion for Service Awards, he devoted between 250 and 500 hours to the preparation and prosecution of the litigation.  (Ortega Decl., Doc. 220-1, ¶ 2.)  Each of the other Plaintiffs estimates that they devoted between 70 and 100 hours. (Plaintiffs' Declarations, Docs. 220-2 to 220-4, ¶ 2.)

Moreover, the Plaintiffs initiated the litigation, reaching out to their attorneys to raise their concerns about the Rainbow ESOP sale.  (Plaintiffs' Declarations ¶¶ 2–3; Creitz Decl. ¶¶ 18–19.)  Before the suit was filed, Plaintiffs collected documents and information about Rainbow and the ESOP; identified important witnesses; signed a letter to the IRS regarding the tax qualification of the ESOP sale; and participated in numerous

phone calls and meetings with Class Counsel.  (*Id*.)  After the litigation commenced, all Plaintiffs attended court hearings, participated in calls and meetings with their attorneys, and personally attended two full days of mediation in the case.  (*Id*.)  Additionally, all Plaintiffs, other than Quintero, were Rainbow employees at the time the suit was filed and faced the additional hardship of suing a current employer and fielding questions from co-workers.  Accordingly, the Court finds that a service award is appropriate here.

As for the amount of the service awards, the Court finds Plaintiffs' requested rates to be reasonable.  As noted, Ortega and Maritza Quintero request $5,000 each whereas the other Plaintiffs request $2,000.  As an initial matter, the Court finds that the higher service awards for Ortega and Maritza Quintero are justified because, even though Ortega's share of the class settlement will be quite small, and Quintero's will be zero, they continued to litigate on behalf of the class like the other Plaintiffs.  (Ortega Decl. ¶ 3; M. Quintero Decl., Doc. 220-4, ¶ 3.)  Moreover, Ortega and Maritza Quintero had raised individual document penalty claims that they are waiving as part of the settlement. (Creitz Decl. ¶ 19; M. Quintero Decl. ¶ 3; Ortega Decl. ¶ 3.)

The Court also finds that the requested service awards are otherwise appropriate. Class Counsel represent that, assuming the Court grants the request for attorneys' fees and costs, and the requested service awards, the average recovery for each Class Member is approximately $12,000. (Service Awards Mot. at 8.)  Thus, the service award requested by each Plaintiff is about 16% to 33% of the Class Members' average recovery. Moreover, the aggregate of the requested Service Awards ($18,000) represents only 0.2% (two tenths of one percent) of the Settlement Funds.

In sum, the Court finds Plaintiffs' requested service awards to be reasonable under the circumstances.  Accordingly, Ortega and Maritza Quintero are each awarded $5,000 and Hurtado, Jose Quintero, Jorge Urquiza, and Maria Valadez are each awarded $2,000.

## VI.    **CONCLUSION**

The Court finds the settlement to be fair, adequate, and reasonable.  Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement.

The Court also GRANTS the Motion for Award of Attorneys' Fees and Costs.  The Court approves the request for litigation costs in the amount of $200,644.83 and reimbursement of the Settlement Administrator's fees in the amount of $11,500.00.  The Court awards Class Counsel $2,370,000 in attorneys' fees.

Finally, the Court GRANTS the Motion for Service Awards.  Ortega and Maritza Quintero are each awarded $5,000 and Hurtado, Jose Quintero, Jorge Urquiza, and Maria Valadez are each awarded $2,000.

Distributions to Class Members shall be made in accordance with the method outlined in the Settlement Agreement.  Class Counsel is ORDERED to file a proposed final judgment within five (5) days of entry of this Order.

**It is so ORDERED.**

DATED: May 21, 2021

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE